Statement of Facts Attachment to Pro Se 1983 Complaint

**GENERAL FACTS RELATED TO ALL CLAIMS:**

**The pronoun "I" refers to Plaintiff Michael C. Sternberg in the below facts.**

1. E.W. was born in Las Vegas, NV in 2009.
2. N.W. was born in San Jose, CA in 2010.
3. I am the natural father of E.W. and N.W. I am listed as the father on their birth certificates.
4. Shelley Warneck is the natural mother of E.W. and N.W. She is listed as the mother on their birth certificates.
5. Shelley Warneck and I moved to San Jose, CA shortly after E.W.'s birth and resided their together.
6. On 7/10/12, Shelley Warneck and I agreed, with the help of an LFMT, that we would end our intimate relationship and that I would move out of the family home.
7. On 7/13/12, Shelley Warneck surreptitiously filed a family court action in Santa Clara County Superior Court, Case No. 2012-1-CP-020194.
8. After filing the family court action, Shelley Warneck violated our private agreements and withheld E.W. and N.W. from me.
9. On 7/23/12, I retained Michelle Brenot to represent me in the family court action.
10. On 8/3/12, I filed an ex parte emergency motion asking the Santa Clara court to enforce our agreement.
11. On 8/14/12, Shelley Warneck and I attended the hearing on my ex parte motion.
12. On 8/14/12, I stipulated in open court that I was the father of E.W. and N.W. and to temporary joint legal custody. The court issued temporary visitation orders.
13. On 8/28/12, the Santa Clara County Family Court filed a Finding and Order After Hearing, which accurately reflected the court's orders at the 8/14/12 hearing.
14. On 8/28/12, I signed: 1) "Stipulation for Entry of Judgement RE: Establishment of Parental Relationship," 2) "Advisement and Waiver of Rights RE: Establishment of Parental Relationship," and 3) "Appearance, Stipulation, and Waivers." All other issues were reserved pending litigation. The three forms I reviewed and signed were then transmitted to Warneck's attorney.
15. In 09/2012, Shelley Warneck and I discussed dismissing the action in favor of operating by private agreement.
16. In 10/2012, Shelley Warneck and I agreed to dismiss the family law action by executing a request for dismissal.
17. On 10/4/12, a so-called "stipulated judgement" that I did not stipulate to was entered in the court with no notice to me and without my consent. Attached to it was an FL-341 temporary custody order that I never agreed to, that was not presented to me, and was not included with the paperwork I did sign. The filed judgment is for joint legal and joint physical custody. It does not give either party the presumptive right to relocate the children without the other parent's consent.

18. From about 10/2012 to 01/2013, Shelley Warneck and I tried unsuccessfully to get answers from our attorneys as to the status of our dismissal.
19. In 01/2013, we were advised that the Request for Dismissal had been lost. We executed a new Request for Dismissal.
20. From 01/2013 to 07/2019, Shelley Warneck and I co-parented as if the case was properly dismissed. I believed the case was dismissed.
21. In 08/2018, Shelley Warneck and I agreed that the children would permanently reside in Las Vegas, NV.
22. In 08/2018, Shelley Warneck and I agreed that I would be the primary parent until she returned from inpatient rehabilitation after a DUI, and after conclusion of her criminal DUI case in El Dorado County, CA.
23. In 08/2018, Shelley Warneck and I agreed that once her rehabilitation and DUI criminal case obligations concluded, she would move permanently to Las Vegas, NV, and we would return to a more equal and scheduled custody arrangement.
24. In approximately 11/2018, Shelley Warneck reached a plea agreement with the El Dorado County, CA District Attorney regarding her DUI criminal case.
25. Shortly after executing her plea agreement, Shelley Warneck plotted to relocate the children from Las Vegas, NV back to California without my consent and without warning to me.
26. From approximately 11/2018, Shelley Warneck met with various California family law attorneys and did not tell me.
27. On 1/30/19, Derek Austin filed a Substitution of Attorney into the Santa Clara County family law case that Shelley Warneck and I had agreed to dismiss in 2012.
28. On 2/1/19, Derek Austin filed another Substitution of Attorney removing himself from the case.
29. Derek Austin served by mail the 1/30/19 and the 2/1/19 Substitution of Attorney forms to an address that Shelley Warneck knew was not mine.
30. Shelley Warneck consulted with Santa Clara County, CA family lawyer Tristan Aeschleman in 03/2019, and did not tell me.
31. In 05/2019, Shelley Warneck and I agreed to a summer visitation schedule.
32. In 05/2019, Shelley Warneck and I agreed she could remove E.W. and N.W. from Las Vegas, NV to spend specific time periods with her and their grandparents in California and Hawaii.
33. In 05/2019, Shelley Warneck did not disclose to me that she had discovered that the 2012 parentage case was not properly dismissed.
34. In 05/2019, Shelley Warneck did not disclose to me that she had plans to withhold the E.W. and N.W. in California.
35. In 05/2019, Shelley Warneck and I agreed she was to return E.W. and N.W. to Las Vegas, NV on 7/7/19.
36. On 7/1/19, Shelley Warneck filed a motion in the Santa Clara County, CA family court and did not tell me. She did not serve it on me in 2019.
37. On 7/7/19, Shelley Warneck did not return the children to Las Vegas, NV.

38. On 7/7/19, I got an email from California attorney Tristan Aeschleman claiming to represent Shelley Warneck.
39. On 7/7/19, Tristan Aeschleman informed me in his email that he was aware of my custody agreements with Shelley Warneck, but that he and Warneck would not return my children unless I modified the agreements or until a court ordered them to do so.
40. On 7/7/19, Tristan Aeschleman advised me that he and Warneck were resurrecting the Santa Clara County, CA case.
41. Tristan Aeschleman did not substitute into the Santa Clara County, CA case prior to emailing me on 7/7/19.
42. Tristan Aeschleman did not obtain the Santa Clara court record prior to emailing me on 7/7/19.
43. On 7/7/19, Shelley Warneck withheld E.W. and N.W. in El Dorado County, CA and Santa Clara County, CA.
44. On 7/7/19, I went to Las Vegas Police Headquarters to file a parental abduction report. A civilian gatekeeper named Ellie (P#9393) refused to allow me to make a report.
45. On 7/10/19, I filed a child custody case in Clark County, NV. I asked for an order shortening time and an emergency pick up order.
46. On 7/22/19, Shelley Warneck filed another motion in the Santa Clara County, CA family court, and did not tell me. She did not serve it on me in 2019.
47. On 7/23/19, I contacted the South Lake Tahoe, CA Police to report the abduction. At first they refused to take a report claiming it was a civil matter, but eventually I was able to report the abduction to Officer Kallstrom.
48. On 7/24/19, I reported the abduction of my children and Tristan Aeschleman's professional misconduct to the State Bar of California.
49. On 7/30/19, Shelley Warneck filed an answer to the Clark County, NV custody case.
50. On 7/30/19, Tristan Aeschleman executed a Request to Continue Hearing in the Santa Clara, CA court for his motion filed on 7/1/19.
51. On 7/30/19, Tristan Aeschleman did not disclose to the court in his Request to Continue Hearing that Shelley Warneck had been served a child custody lawsuit in Nevada.
52. On 7/31/19, Shelley Warneck and I attended a hearing in the Clark County, NV case.
53. On 7/31/19, Shelley Warneck admitted to having an apartment in Henderson, NV.
54. On 7/31/19, Shelley Warneck admitted she registered to vote in Henderson, NV, "to partake in the 2018 midterm elections."
55. On 7/31/19, Shelley Warneck admitted to certifying, under penalty of perjury, the voter registration from, which stated on its face, "The residential address listed herein is my sole legal place of residence and I claim no other place as my legal residence."
56. On 7/31/19, Shelley Warneck admitted she entered into the summertime visitation agreement with me under false pretenses.
57. On 7/31/19, Shelley Warneck admitted she understood I would not let the children out of Nevada without an agreement.
58. In 7/2019, Shelley Warneck defended the Clark County, NV custody case by arguing that California had exclusive continuing jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act.

59. In 7/2019, Shelley Warneck defended the Clark County, NV custody case claiming to have never given up California residency.
60. On 7/31/19, Clark County, NV Judge Forseburg decided to hold a jurisdictional conference with the Santa Clara County, CA court.
61. On 8/6/19, Tristan Aeschleman filed a sworn declaration in the Santa Clara County, CA court, which he did not serve on me.
62. On 8/7/19, there were no noticed motions in the Santa Clara County, CA case.
63. On 8/7/19, I had not been served with anything filed in 2019 in the Santa Clara County, CA case.
64. On 8/7/19, Michelle Brenot attended the jurisdictional conference in the Santa Clara County, CA Superior Court.
65. On 8/7/19, Michelle Brenot announced on the record that she was specially appearing on my behalf.
66. On 8/7/19, Michelle Brenot did not have my consent to represent me.
67. On 8/7/19, I had no contract or other agreement for Michelle Brenot to represent me.
68. On 8/7/19, Judge Roberta Hayashi of the Santa Clara County Superior Court started the jurisdictional conference by admitting to having read ex parte declarations sent to her by Tristan Aeschleman and Shelley Warneck just before the conference. These documents were never served on me.
69. On 8/7/19, Judge Roberta Hayashi aggressively advocated for Shelley Warneck for the entire conference based on the ex parte declarations.
70. On 8/7/19, Las Vegas lawyer objected to the lack of notice of the ex parte declarations and asked for a chance to file a response.
71. On 8/7/19, Judge Hayashi refused to allow me to file a response to the ex parte documents she had read.
72. On 8/7/19, Nevada Judge Forsburg acquiesced to Judge Hayashi's aggressive demeanor and ceded jurisdiction to Santa Clara County, CA where neither the parties nor the children lived.
73. On 8/8/19, I hired California family lawyer Magdalena Chattopadhya for the explicit purpose of challenging the jurisdiction of the Santa Clara County, CA pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act.
74. On 8/8/19, I hired California family lawyer Magdalena Chattopadhya to challenge jurisdiction of the Santa Clara County, CA Superior Court on three grounds: 1) All parties left California, 2) Inconvenient Forum, and 3) Unjustifiable Conduct.
75. In 08/2019, I spoke on the phone with Deputy District Attorney Erica Engin of the Santa Clara County DA's office.
76. In 8/2019, I reported to Erica Engin the abduction of my children and also the frauds upon the Santa Clara County Court by Tristan Aeschleman and Shelley Warneck.
77. In 8/2019, Erica Engin confirmed that what I was reporting would be a crime, but that I would have to convince the El Dorado County, CA DA to prosecute it, because that is where the kids were.
78. On 8/8/19, I made contact with Rich Horn, Investigator, El Dorado County District Attorney's Office.

79. On 8/8/19, Rich Horn emailed me a list of preliminary requests to determine "if a child abduction has occurred."
80. On 8/13/19, Rich Horn acknowledged that El Dorado County had jurisdiction to investigate crimes I reported to him, but claimed the abduction of my children was a civil matter.
81. Throughout 08/2019 and 09/2019, I made numerous attempts to get the South Lake Tahoe Police to properly investigate the abduction and the frauds upon the court. I escalated all the way up to Chief Uhler who proclaimed that the situation was complicated, and then refused to investigate.
82. On 8/14/19, Scott Karpf closed my State Bar complaint against Tristan Aeschleman without investigation.
83. On 8/21/19, Tristan Aeschleman sent an ex parte communication with Judge Hayashi by mail.
84. On 8/21/19, Tristan Aeschleman's ex parte communication to Judge Hayashi included a proposed Finding and Order After Hearing (FOAH) for signature.
85. On 8/21/19, the proposed FOAH was for the 8/7/19 jurisdictional conference.
86. On 8/21/19, Tristan Aeschleman asserted he was ordered by Hayashi to initiate the ex parte communication and to draft the FOAH.
87. The Nevada produced video of the 8/7/19 hearing documents no such order being given to Tristan Aeschleman.
88. The California produced transcript of the 8/7/19 hearing documents no such order being given to Tristan Aeschleman.
89. On 8/21/19, the proposed FOAH made finding of facts and conclusions of law.
90. On 8/27/19, Chief Assistant District Attorney Joe Alexander called me after I left a message with the El Dorado County DA's office stating that I wanted to speak to a supervisor about the South Lake Tahoe Police Department's and Rich Horn's failure to investigate and their claims that the crimes I was reported were a "civil matter."
91. On 8/27/19, Joe Alexander gave me his email address, and then promised he would look into the abduction of my children. However, he promptly disappeared and didn't get back to me.
92. On 8/28/19, Magdalena Chattopadhya refused to address Tristan Aeschleman's proposed order sent to Hayashi ex parte.
93. On 8/28/19, Magdalena Chattopadhya refused to notify Tristan Aeschleman that she was representing me
94. On 8/28/19, I sent Aeschleman an email asking him to rescind the proposed FOAH he sent to Hayashi on 8/21/19.
95. On 8/29/19, Aeschleman executed another Request to Continue Hearing in the Santa Clara County, CA court for his motions filed 7/1/19 and 7/22/19.
96. On 8/29/19, Tristan Aeschleman checked box 5d "Other good cause as stated," on his Request to Continue Hearing.
97. On 8/29/19, Tristan Aeschleman swore under penalty of perjury, that his good cause was his inability to serve me.

98. On 8/29/19, Tristan Aeschleman did not disclose to the court in his Request to Continue Hearing, that I had been standing next to Shelley Warneck's Nevada attorney in the Nevada court on 7/31/19 and 8/7/19, and that he had substantial notice that I would be there.
99. On 9/6/19, Magdalena Chattopadhya finally substituted into the Santa Clara County, CA case on my behalf.
100. On 9/10/19, Chattopadhya sent Aeschleman an email asking if he had rescinded the jurisdictional FOAH he had sent ex parte to Hayashi on 8/21/19.
101. On 9/11/19, Chattopadhya sent Aeschleman a follow up email asking if he had rescinded the jurisdictional FOAH he had sent ex parte to Hayashi on 8/21/19.
102. On 9/11/19, my motion to cede jurisdiction was filed with the Santa Clara, CA family court.
103. On 9/18/19, we had the hearing on my motion to cede jurisdiction.
104. On 9/18/19, Hayashi described Aeschleman's inability to serve me as "ludicrous."
105. On 9/18/19, Hayashi stated, "***I've already made decisions that the California court is not going to cede jurisdiction. I will transfer the case to El Dorado county, because that's where the children are currently located***."
106. On 9/18/19, Shelley Warneck admitted in open court that she entered into an agreement with me under false pretenses to remove the children from Nevada.
107. On 9/18/19, Shelley Warneck admitted in open court to knowing that I would not have allowed the children out of Nevada without the agreement.
108. On 9/18/19, Shelley Warneck admitted that she did not disclose to me her intent to resurrect the California case and to file motions in that court.
109. On 9/18/19, towards the end of the hearing, Hayashi conceded that she needed to entertain ceding jurisdiction to Las Vegas, NV, and "***it may well be that on the recommendation of the brief focused assessment if the recommendation is that the best interest of the children be that they return to Las Vegas that it would then make sense for me to cede jurisdiction of this matter back to Las Vegas, because that's where the children are located.***"
110. On 9/18/19, Magdalena Chattopadhya asked Hayashi, "***And then all other issues reserved. The request for change of venue is reserved for now.***"
111. On 9/18/19, Hayashi responded to Chattopadhya, "***Well, I've indicated to you what I intend to do with regard to venue; and that is, to find out what the recommendation is from the brief focused assessment as to where the children should be whether it's in Las Vegas or in El Dorado County.***"
112. On 9/18/19, Hayashi further elaborated to Aeschleman, "***…my tentative is going to be that if the brief focused assessment recommends that the children be in El Dorado county then I will transfer venue to El Dorado County. If the brief focused assessment is that it's in the best interest of the children to be in Las Vegas then I will transfer — <u>I will cede jurisdiction back to the Las Vegas court…</u>***"
113. On 9/19/19, based on Hayashi's representations, and in order to quickly see my abducted children, I mediated a temporary custody arrangement in good faith.



—

114. On 9/19/19, a Request and Order Regarding Partial Mediated Agreement was entered with the court's notation, "***This is a temporary order pending further order of the court following a brief focused assessment***."
115. On 9/27/19, Hayashi signed the void FOAH Aeschleman sent to her ex parte on 8/21/19. It was filed on 10/1/19.
116. On 10/30/19, I sent Chattopadhya into court with a stipulation for Tim Rood to do the Brief Focused Assessment.
117. On 10/30/19, Hayashi, Chattopadhya, and Aeschleman conspired to change the track of this case from a brief focused assessment and a jurisdictional analysis to a full blow custody evaluation **without notice to me as a party to this case and without my consent.**
118. On 10/30/19, Hayashi, Chattopadhya, and Aeschleman altered my agreement for Tim Rood to do the Brief Focused Assessment **without notice to me and without my consent**.
119. On 12/10/19, Aeschleman stated in open court, "***The other issue of concern is that the mediated agreement said that this was going to be a temporary order pending further court order following a brief focused assessment.***"
120. On 12/10/19, Hayashi admitted she did not anticipate the Brief Focused Assessment to go past January.
121. On 12/10/19, Hayashi refused to return my abducted children to Las Vegas.
122. On 12/10/19, Hayashi refused to issue temporary orders protecting my access to my children.
123. On 12/10/19, Hayashi, Aeschleman, and Chattopadhya set trial dates for 7/1/19 and 7/2/19 on unclear issues, and without notice to me or my informed consent.
124. On 1/15/20, I signed a stipulation under duress as to visit with my children.
125. The 1/15/20 stipulation I signed outlines visitation dates "pending the Custody Settlement Conference in March 11, 2020." The document states that I am specially appearing.
126. On 1/22/20, Judge Hendrickson signed a FOAH for a hearing on 1/7/20 that was heard by Hayashi. The FOAH states on its face that I am specially appearing.
127. On 2/14/20, I filed a motion for attorney fees and sanctions.
128. On 3/5/20, while visiting my abducted children and staying at the Lake Tahoe Resort Hotel, I noticed the El Dorado County, CA DA's office was holding a training event in the hotel.
129. On 3/5/20, I approached a man who identified himself as Jeff Draher, Chief Investigator, El Dorado District Attorneys Office.
130. On 3/5/20, Jeff Draher gave me his card.
131. On 3/5/20, I reported the abduction of my children and Shelley Warneck's and Tristan Aeschleman's frauds upon the Santa Clara County, CA court to Jeff Draher.
132. On 3/5/20, Jeff Draher told me he would look into what I reported to him and discuss it with Joe Alexander.
133. On 3/11/20, the custody settlement conference (CSC) was continued to 5/13/20. At some point the CSC was continued to June.

134. On 3/23/20, I fired Chattopadhya, and hired Gina Policastri.
135. From 3/20/20 thru 6/24/20 and beyond, the COVID pandemic put California on severe lockdown causing numerous delays in the court.
136. On 4/11/20, Tim Rood issued his final report concluding that the children should be returned to Las Vegas.
137. On 5/8/20, Tim Rood sent an ex parte letter to Judge Hendrickson.
138. On 5/8/20, Tim Rood, in his letter, proclaimed urgent concern for the children given the uncertainty of a custody settlement conference and trial actually occurring due to pandemic court closures.
139. On 5/8/20, Tim Rood, in his letter, quotes several statements by E.W. and N.W. that exist nowhere in his complete file.
140. On 5/20/20, Aeschleman filed a motion to quash subpoenas Policastri had issued. The court set the hearing date for after the 7/1/20 and 7/2/20 trial dates.
141. On 6/17/20, because I did not have needed discovery, the trial issues were unclear, I had no experts, and it wasn't certain I was even going to get a trial during the pandemic, I signed a conditional stipulation to continue the trial in order to protect my access to my children.
142. On 6/24/20, I sent Policastri into a hearing with Judge Hendrickson without me, but with the stipulation.
143. On 6/24/20, Hendrickson went into a lengthy soliloquy based on the heresy letter from Rood dated 5/8/20 about her concern for my children.
144. On 6/24/20, Hendrickson ambushed the attorneys by stating if they did not go forward with trial, she would seize my children for another entire school year.
145. On 6/24/20, Hendrickson stated, "***So I guess it's up to father to decide whether he wants to withdraw his request for the continuance or not,***" despite knowing that I was not present for this hearing.
146. On 6/24/20, Hendrickson, Policastri, and Aeschleman conspired to alter my stipulation to continue the trial **without notice to me and without my consent.**
147. On 6/24/20, Policastri lied to me about the nature of the hearing, and that she had objected to the alteration of my stipulation.
148. On 7/23/20, I fired Policastri.
149. On 8/17/20, while representing myself, I filed my emergency ex parte motion asking for my abducted children to be returned to Las Vegas and reminding the court that I had challenged jurisdiction pursuant to the UCCJEA. I detailed numerous due process violations and the void orders that had been issued as a result of them.
150. On 8/20/20, Hendrickson denied the motion stating, "***Father's objections to 2019 court rulings will not be entertained in the trial court.***"
151. On 8/20/20, Hendrickson denied the motion falsely stating, "***The referenced 2020 order was agreed to by the parties as a condition to the Court's granting of their mutual request to continue the custody and visitation trial in this matter,***" knowing full well I was not present at that hearing to agree to anything.
152. On 9/13/20, I finally acquired a transcript of the 6/24/20 hearing. Santa Clara, CA court staff intentionally made it difficult for me to track down the reporter.

153. On 11/20/20, I filed a Petition for Writ of Mandamus asking the California 6th District Court of Appeals to order Hendrickson to vacate void orders and to rule on my jurisdictional challenge.
154. On 12/2/20, there was a status conference in this case. I was given no advance warning that there would not be a court reporter present. Prior to this conference, there had always been a court supplied reporter present.
155. On 12/2/20, Hendrickson proclaimed (referring to my pending 8/20/20 motion and Petition for Writ of Mandamus) that she looked into the history of this case and it was never a move-away case.
156. On 12/8/20, I executed Standing Objections to due process violations and a notice of recession of agreements and stipulation which I made under duress after my children had been abducted.
157. On 12/13/20, I sent a certified letter to DA Vern Pierson, El Dorado County, CA, complaining about Joe Alexander, Jeff Draher, and Rich Horn's refusal to investigate, and again reported the abduction of children. I cited testimony recorded in official transcript and outlined the elements of the crime under Penal Code 278.5. I also attached illicit emails between Tristan Aeschleman and Joe Alexander. I asked DA Pierson to provide an investigator to help me build a timeline and take evidence.
158. On 12/15/20, I executed and filed written objections to the 12/2/20 status conference regarding Hendrickson's assertion about the nature and history of this case, which were clearly contradicted by the self-authenticating record.
159. On 12/29/20, the 6th District Court of Appeals summarily denied my Petition for Writ of Mandamus without explanation.
160. On 1/11/21, we had a hearing on my motion for contempt against Warneck for visitation violations outlined in the 2012 judgement that both Warneck and the court claimed had been in "full force and effect" pursuant to the void jurisdictional FOAH filed on 10/1/19.
161. Just prior to the 1/11/21 contempt hearing, Aeschleman prepared a declaration in opposition to the contempt, which he filed and delivered ex parte to Hendrickson without ever having served me.
162. At the hearing on 1/11/21, Hendrickson went into a long bizarre line of questioning about the best interests of the children, which is not an element of contempt.
163. On 1/11/21, Hendrickson dismissed the contempt action on her own motion.
164. On 1/11/21, I raised with Hendrickson my inability to access my own court file. Hendrickson refused to listen to my concern and forcefully ended the hearing.
165. On 2/1/21, we had a hearing on my motion to vacate void orders, to cede jurisdiction, and to return custody of my abducted children back to me in Las Vegas.
166. On 2/1/21, I requested a Statement of Decision as required by law. Hendrickson refused.
167. On 2/1/21, Hendrickson went on a bizarre tirade about the number of pages in my filings, which comported with the California Rules of Court.
168. On 2/1/21, Hendrickson stated that she had read my moving papers, but then suddenly announced during her tirade that she had not read them all. She then refused to allow me to supplement my argument.

169. On 2/1/21, Hendrickson denied my motion to vacate void orders despite the clear, self-authenticating evidence, in the court's own file, documenting that I had been repeatedly denied notice and opportunity to be heard.
170. On 2/1/21, Hendrickson sanctioned me $12,657.25.
171. On 2/13/21, I reported the abduction of my children, and numerous other crimes, including constitutional rights violations to Nevada Attorney General Aaron Ford by certified mail.
172. On 3/31/21, I sent another certified letter to Nevada Attorney General Aaron Ford. I complained about Agents Dave Monroe and Gina Lovero refusing to investigate the abduction of my children and other crimes I reported to them, and asked for investigations and/or assistance with other agencies who were refusing to investigate crimes, especially California law enforcement agencies. This letter was also emailed to Dave Monroe.
173. On 4/3/21, I again complained about Joe Alexander to DA Vern Pierson in a certified letter, and again demanded an investigation and a way to hand in my evidence. I closed the letter by stating that since I was being given no other option, I would email my evidence to Joe Alexander, and I requested that he not be allowed to conceal it in his email account, but instead centrally file it. This same day I sent a few emails of evidence of perjury, fraud upon the court, filing of false sworn documents, and constitutional rights violations as well as a case law citation to Joe Alexander, Jeffrey Draher, Rich Horn, and Dave Monroe. Joe Alexander confirmed receipt.
174. On 4/6/21, Joe Alexander confirmed receipt of the emails I sent on 4/3/2021. He stated he reviewed them, **"however, I want you to be aware that if the alleged perjury or the alleged filing of false documents occurred in the County of Santa Clara as part of the Family Law Proceedings there, then you should be addressing that information to the Santa Clara DA's Office as they would have jurisdiction over crimes committed in that county."**
175. On 4/7/21, I spoke with Sherry Diamond, , CEO of the Santa Clara County Bar Association, on the phone.
176. On 4/7/21, Sherry Diamond told me she would email me the policy on how Local General Rule 3B complaints are processed.
177. On 4/7/21, Sherry Diamond emailed me the policy on Local General Rule 3B complaints.
178. On 4/8/21: I mailed DA Jeff Rosen, Santa Clara County, a complaint about Tristan Aeschleman's and Shelley Warneck's frauds upon the Santa Clara County Superior Court, and I pointed to where in the record he could find evidence of such. I also advised him of Joe Alexander's opinion that these crimes were in DA Rosen's jurisdiction. I asked DA Rosen to coordinate with the El Dorado County DA since that is where my abducted children were being withheld. I never received a response from DA Rosen. I emailed a copy of this letter to Joe Alexander, Jeffrey Draher, Rich Horn, and Dave Monroe.
179. From 4/6/21 to 4/12/21, I sent numerous emails to Joe Alexander, Jeffrey Draher, Rich Horn, and Dave Monroe documenting perjury, fraud upon the court, filing of false sworn

documents, the abduction of my children and constitutional rights violations. Joe Alexander confirmed receipt.

180. On 5/27/21, I filed a second State Bar of California complaint against Tristan Aeschleman.
181. On 6/1/21, I filed a Statement to Disqualify Hendrickson for bias pursuant to California Civil Procedure 170.3(c)(1).
182. On 6/3/21, I emailed Sherry Diamond to confirm she was still CEO of the Santa Clara Bar and the address to which I could send my 3B complaint. She confirmed the same day.
183. On 6/7/21, I mailed a letter, dated 6/5/21 to Presiding Judge Theodore Zayner, Santa Clara County Superior Court. I reported the abduction of my children, other constitutional rights violations, and Tristan Aeschleman's fraudulent filings with the court. I also complained of bias under Local General Rule 3B.
184. On 6/7/21, I mailed a copy of the 6/5/21 Zayner letter to Sherry Diamond.
185. On 6/7/21, I emailed a copy of the 6/5/21 Zayner letter to Sherry Diamond.
186. On 6/7/21, I emailed Joe Alexander, Jeffrey Draher, Rich Horn, and Dave Monroe the 6/5/21 Zayner letter.
187. On 6/10/21, I filed a third State Bar of California complaint against Tristan Aeschleman.
188. On 6/10/21, I sent several emails to Joe Alexander, Jeffrey Draher, Rich Horn, and Dave Monroe informing them I had just caught Tristan Aeschleman, filing yet another fraudulent motion with the Santa Clara County Family Court. I also caught him serving me a different version of the motion than what he filed in the court. I attached evidence.
189. On 6/11/21, I sent Presiding Judge Zayner a complaint about Aeschleman's fraudulent ex parte filings with the court.
190. On 6/11/21, I emailed Joe Alexander, Jeffrey Draher, Rich Horn, and Dave Monroe a copy of the 6/11/21 Zayner letter.
191. On 6/11/21, I emailed Sherry Diamond the 6/11/21 Zayner letter.
192. On 6/14/21, I filed a Declaration of Facts constituting contempt against Aeschleman for filing a fraudulent ex parte motion with the court.
193. On 6/17/21, I filed a Notice of Appeal for the order that came out of the 2/1/21 hearing.
194. On 6/18/21, Hendrickson filed an Order Striking her own disqualification in violation of the civil procedure.
195. On 6/30/21, I filed a Request to Waive Court fees.
196. On 7/1/21, a stipulation was filed outlining summer break visitation.
197. On 7/6/21, Judge Blecher denied my fee waiver request.
198. On 7/15/21, Hendrickson stuck my second attempt to disqualify her in violation of the civil procedure.
199. On 7/20/21, Judge Zayner sent me a letter confirming he had received my 6/5/21 and 6/11/21 complaints.
200. On 7/23/21, Aeschleman filed another fraudulent ex parte.
201. On 7/26/21, I filed a second Declaration of Facts constituting contempt against Aeschleman for filing yet another fraudulent ex parte with the court.

202. On 7/28/21, I filed an emergency ex parte order requesting a restraining order disallowing Aeschleman to file any more ex parte motions pending further order of the court. I also asked for an emergency order directing the clerk to give a copy of the register of actions for my case. Concurrently, I filed a motion for an order to show cause RE: the two statements of contempt I filed against Aeschleman. Judge Kuhnle denied the emergency orders. Judge Kuhnle set my motion for hearing on 8/11/21.
203. On 7/30/21, Melanie Dorian closed my State Bar of California complaint against Tristan Aeschleman without investigation.
204. On 8/5/21, I filed a Petition for Writ of Mandate on the issue of Hendrickson striking her own disqualification.
205. On 8/9/21, the 6th DCA denied my request for a fee waiver and did not tell me why.
206. On 8/11/21, Judge Kuhnle did not appear, instead Judge Blecher presided. Belcher admitted to not having read my filings.
207. On 8/11/21, Blecher refused to issue a Statement of Decision claiming she didn't have to at a law and motion hearing.
208. On 8/11/21, Blecher refused to follow the procedure outlined in Family Code 7605 for need based attorney fees.
209. On 8/11/21, Aeschleman lacked candor with the court when he tried to rely on the partially mediated agreement filed on 9/19/19 as the basis for why Warneck was the primary custodian of the children during the school year when he knew he had conspired with Hayashi **to void and alter the agreement without my consent.**
210. On 8/11/21, over my repeated objections, Blecher allowed Aeschleman to testify.
211. On 8/11/21, I objected to declarations filed by Aeschleman and Warneck for violations of the court rules on admissible declarations. Blecher overruled the objections.
212. On 8/11/21, I objected to the court's attempted enforcement of a temporary move away as a violation of California law and the due process clauses of the state and federal constitutions.
213. On 8/11/21, I raised the issue of the repeated due process violations and unnoticed motions, and I demanded a trial if Aeschleman wanted to dispute the procedural history of the case.
214. On 8/11/21, Blecher continued my restraining order request on ex parte filings and my OSC for contempt to 10/5/21.
215. On 8/11/21, Belcher continued my request for access to my court file until 10/5/21.
216. On 8/11/21, Blecher order another illegal temporary move-away demanding that I return my kids into abduction on 8/22/21.
217. On 8/23/21, at midnight, I filed a Statement to Disqualify Blecher for bias, and to provoke a written response from her given her refusal to issue a statement of decision.
218. On 8/23/21, Blecher signed a FOAH sent to her ex parte by Aeschleman in violation of California Rule of Court 5.125. She signed it after she lost jurisdiction due to my statement to disqualify her.
219. On or about 8/24/21, Aeschleman filed yet another fraudulent ex parte with the court. Judge Kuhnle, who had never presided at a hearing in this case, stripped me of all legal and physical custody of my children without any notice whatsoever.

220. On 8/26/21, Rich Horn opened an investigation against me for parental abduction. This investigation is memorialized in at least two reports. In those reports, he barely mentions my regular and ongoing contact with him and his office, and does not mention any of the numerous crimes I accused Shelley Warneck and Tristan Aeschleman of committing and which I reported to him.
221. On 8/31/21, Blecher struck her own disqualification. In the order, she fabricated an agreement I never made.
222. On 9/2/21, El Dorado County District Attorney Investigator Rich Horn drafted an investigative report.
223. On 9/3/21, Rich Horn called me and accused me of violating secret family court orders. Suspecting law enforcement foul play, I did not answer his questions, ended the conversation, and immediately emailed Joe Alexander, Jeffrey Draher, Rich Horn, and Dave Monroe a California Penal Code 278.7 notice. Attached to the notice were the two letters I sent to the Santa Clara Presiding Judge Zayner detailing Tristan Aeschleman's frauds upon the court, which I had already emailed to Joe Alexander, Jeffrey Draher, Rich Horn, and Dave Monroe. I also attached my Writ Petition to the California 6th District Court of Appeals regarding Santa Clara Judge Hendrickson illegally striking her own disqualification. Attached to the petition were exhibits in which I pointed to the record where mother admitted to fraud on the court. Nowhere in his investigative reports does Rich Horn discuss this notice or its attachments. He produced these documents later during discovery in the criminal proceeding he initiated.
224. On 9/7/21, Nevada Attorney General Agents Dave Monroe and Gina Lovero came to my home to discuss my kids. I again reported to them the numerous frauds upon the court by Tristan Aeschleman and Shelley Warneck as well as the due process violations including the secret orders. Dave Monroe admitted to having read the numerous emails I sent to him, Joe Alexander, Rich Horn, and Jeffrey Draher, but advised me that California corruption was not his problem. The encounter was recorded on my Ring doorbell.
225. On 9/8/21, I emailed Dave Monroe and asked for the name, title, and phone number of his supervisor. He responded the same day with the following information: "His name is Shaun Bowen. He is the Deputy Chief Investigator of our unit and his phone number is (775)684-1100."
226. On 9/8/21, I called and left a message for Shaun Bowen. His outgoing voice message said to call Sheryl Curtis at 775-684-1152 if immediate service is requested.
227. On 9/8/21, I spoke to Sheryl Curtis. I advised her I wanted to file a complaint against Dave Monroe and Gina Lovero for failure to investigate. She said Shaun Bowen was the correct person to talk to. I asked for the names of the entire chain of command up to Attorney General Aaron Ford. She said Chief Scott was above Shaun Bowen and CJ Brady was above Chief Scott.
228. On 9/14/21, after getting no call back from Shaun Bowen, I called and left a message for William Scott.

229. On 9/20/21, Kuhnle continued the Santa Clara court's pattern and practice of allowing Aeschleman to testify and entertaining inadmissible declarations over my objections and in violation of the court rules.
230. On 9/20/21, Kuhnle did not want to let me argue Aeschleman's fraud on the court. I objected, and reminded Kuhnle about the repeated fraudulent ex parte motions.
231. On 9/20/21, I reminded Kuhnle that I had two pending contempt actions against Aeschleman for filing fraudulent ex parte motions.
232. On 9/20/21, Kuhnle refused to issue a Statement of Decision despite me citing the mandate in Family Code 3022.3.
233. On 9/20/21, Kuhnle refused to obey Family Code 7605 relating to need based attorney fees.
234. On 9/20/21, Kuhnle refused to set an evidentiary hearing.
235. On 9/20/21, I testified about Hayashi signing the secret order sent to her ex parte by Aeschleman as well as Aeschleman's other frauds upon the court.
236. On 9/20/21, I testified about Blecher falsifying an agreement I never made in her order striking her own disqualification.
237. On 9/20/21, I objected about the court's refusal to waive fees.
238. On 9/20/21, Kuhnle solicited Aeschleman to email him a pre-drafted order.
239. On 9/20/21, I objected to the proposed order on due process grounds.
240. On 9/20/21, Kuhnle made several edits to the order and then signed it.
241. On 9/20/21, I moved Kuhnle to stay the order, but he denied the stay.
242. On 9/20/21, I moved Kuhnle for an order granting me access to my court file; he refused.
243. On 9/20/21, Kuhnle ordered me to return my children into abduction based solely on the unnoticed and fraudulent assertions of Aeschleman.
244. On 9/20/21, El Dorado County, CA District Attorney Investigator Rich Horn witnessed the hearing.
245. On 9He subsequently filed a fraudulent investigative report in which he concealed my whole history with him, all the exculpatory evidence I had given him, and what he witnessed at this hearing.
246. On 9/20/21, I spoke to Dianne Buckley, constituent services, Nevada Attorney General's Office, and told her I wanted to file a complaint against Dave Monroe's entire chain of command for failure to investigate the abduction of my children and other crimes, including colluding to violate my constitutional rights.
247. On 9/21/21, William Scott called me. He refused to investigate and said, "who are you to say whether this is a crime." The conversation ended within 5 minutes.
248. On 9/23/21, the 6th DCA denied my Writ Petition RE: Hendrickson's disqualification.
249. On 9/24/21, El Dorado Deputy District Attorney Brittany Griffith executed, under penalty of perjury, a Declaration in Support of Warrant of Arrest.
250. On 9/24/21, Brittany Griffith swore in her warrant application, under penalty of perjury, that she read and reviewed two investigative reports generated by El Dorado District Attorney Investigator Rich Horn.

251. On 9/24/21, Brittany Griffith swore in her warrant application, under penalty of perjury that, "…this strong suspicion [that I committed felony offenses] is in part derived from the occurrences and statements of percipient witnesses reasonably believed by your declarant to be truthful and reflects the true belief of this declarant…"
252. On 9/24/21, Brittany Griffith executed a criminal complaint, under penalty of perjury, for two counts of felony child custody deprivation.
253. On 9/24/21, El Dorado Deputy District Attorney Brittany Griffith applied for a warrant for my arrest. She withheld from the judge my two year history with her office, and all the exculpatory evidence I supplied them, including mounds of evidence of Aeschleman's frauds on Santa Clara Superior Court.
254. On 9/24/21, Deputy District Attorney Brittany Griffith executed and filed a Declaration in Support of Arrest and a criminal complaint against me in El Dorado County, CA Superior Court. In the arrest warrant application, she swears to have read the two investigative reports by Rich Horn. She makes no mention of the large amount of exculpatory evidence in her office's possession.
255. On 9/27/21, I filed a Petition for Review RE: Hendrickson's disqualification and an emergency stay request with the California Supreme Court.
256. On 9/27/21, the California Supreme Court denied my fee waiver request and did not tell me why.
257. On 9/28/21, Judge Charles Adams, Supervising Judge, Family Division, Santa Clara County Superior Court sent me a letter.
258. On 9/28/21, Judge Adams closed my complaints to Judge Zayner without action.
259. On 9/29/21, Nevada Attorney Agents Dave Monroe and Gina Lovero orchestrated my arrest on the California warrant that they knew had been obtained by fraud.
260. On 9/29/21, Dave Monroe, Gina Lovero, and other unknown individuals coordinated with the Clark County School District Police (CCSD) to pull my car over in front of Canarelli Middle School while E.W., N.W., and I were driving home.
261. On 9/29/21, after pulling me over, CCSD police, Dave Monroe, Gina Lovero, Brent Foster, and other unknown individuals removed me from my car and gunpoint and handcuffed me. They then escorted my children away from the scene. I heard several individuals mention Tristan Aeschleman by name in the background.
262. On 9/29/21, Dave Monroe and Gina Lovero arrested me in Las Vegas, NV on an El Dorado County, CA warrant that they knew was obtained by fraud. They booked me into the Clark County Detention Center.
263. Some time prior to the arrest, Dave Monroe and Gina Lovero told the CCSD police that I was a "suspected child kidnapper."
264. On 9/29/21, after arresting me, Dave Monroe and Gina Lovero seized my children and my firearm.
265. On 10/4/21, the California Supreme Court denied my Petition for Review and for an emergency stay.
266. On 10/05/21, Clark County Deputy District Attorney Caroline Morales filed a sworn criminal complaint against me in Las Vegas Justice Court falsely alleging that I had been "duly and regularly charged" in California and that I "fled from justice from the State of

California…" California made no allegations that I fled from justice. She did not disclose to the court the State of Nevada's knowledge that the warrant for my arrest had been obtained by fraud.

267. On 10/11/21, I was released from jail. The Las Vegas judge refused to grant bail until California said it would allow it.
268. On 10/15/21, Griffith sent me letter telling me how to avoid a warrant being issued.
269. On 10/15/21, Brittany Griffith filed a letter in the El Dorado County, CA criminal case, advising me that a criminal complaint had been filed and how I could avoid a warrant being issued. She mailed me a copy.
270. On 10/18/21, I sent the California Supreme Court a letter asking for an explanation on the fee waiver denial.
271. On 10/19/21, Brittany Griffith filed for a criminal protection order against me.
272. On 10/21/21, the California Supreme Court responded and refused to explain the fee waiver denial or give me a chance to cure.
273. On 10/28/21, I filed another complaint against Tristan Aeschleman with the State Bar of California.
274. I spoke by phone with Bret Foster several times in 10/2021 and 11/2021. I reported the false arrest and unlawful seizure of my firearm and children several times. He did not disclose to me that he had participated in the arrest, and I did not know he did until I obtained a copy of the CCSD police report.
275. On 12/1/21, I moved Hendrickson for an order granting me remote access to my court file. She refused.
276. On 3/11/22, I called and left a message for Chief Scott stating I wanted to file a complaint against Dave Monroe and Gina Lovero for false arrest, unlawful seizure of my children, and unlawful seizure of my firearm. He did not call me back.
277. On 3/16/22, I filed a motion with the 6th DCA asking it to vacate its order denying me a fee waiver or to explain why it was denied. I also asked for an order granting me access to my superior court file, so that I could prepare an appellate brief.
278. On 5/3/22, Hendrickson labeled a vexatious litigant without notice and opportunity to be heard.
279. On 7/19/22, I sent a certified letter to the Nevada Attorney General's Public Integrity Unit. I reported my false arrest by Dave Monroe and Gina Lovero, their unconstitutional seizure of my children, and their refusal to return my firearm. I also reported the refusal of the Nevada judge to grant bail, and Rich Horn's fraud upon the California court.
280. On 7/21/22, I filed a police report with the Clark County School District Police about my false arrest, and the unlawful seizure of my children and of my firearm.
281. On 7/27/22, I wrote to the Presiding Justice of the 6th DCA and requested permission to appeal Hendrickson's vexatious litigant order. I also requested a ruling on the motion filed on 3/16/22 in another appeal.
282. On 8/11/22, the 6th DCA denied my motion to vacate the fee waiver denial and refused to explain why. The appellate court also refused to issue an order granting me access to my superior court file, but invited me to file a Writ Petition (for another $800).

283. On 8/4/22, I hand delivered a copy of the Clark County School District Police report to two Nevada Attorney General agents at the Grant Sawyer Building in Las Vegas. One identified himself as Daniel Ulloa. The other refused to identify herself. I told them the report was for the Public Integrity Unit. They told me they never heard of the Public Integrity Unit. I told them it was listed on their website. I filmed this encounter.
284. On 8/11/22, I spoke with Second Assistant Attorney General Christine (CJ) Brady by phone. I reported the false arrest, unlawful seizure of my children, and unlawful seizure of my firearm to her. She said she would order the return of my firearm. She asked me to file an online complaint against the agents.
285. On 8/11/22, I filed the complaint online that CJ Brady had requested. The complaint was labeled as "Pattern and Practice, Public Integrity, False Arrest, Kidnapping, Refusing to Enforce Statute."
286. On 8/16/22, Daniel Ulloa and his boss returned my firearm to me at the Grant Sawyer Building.
287. On 9/18/22, at the request of SGT Stark, LVMPD, Missing Persons, I went to police headquarters with evidence to report crimes including the second abduction of my children. Lopez #9495, Ohr #17719, Johnson #15889, and an unknown employee refused to allow me to make a report or to deliver evidence..
288. On 9/19/22, the 6th DCA dismissed one of pending appeals for failure to obtain the record on appeal despite know that I had no access to my court file.
289. On 9/19/22, I hand delivered a letter to CJ Brady at the Grant Sawyer Building complaining that no investigator had contacted me about my accusations against her agents. I also reported LVMPD's refusal to take my report.
290. On 9/20/22, Chief Scott called me and told me he investigated himself and that he did nothing wrong. I told him I was accusing him of conspiracy to deprive me of constitutional rights, and I did not want to talk to him and did not understand why he was calling me.
291. On 10/7/22, the 6th DCA dismissed my other pending appeal for failure to file an appellate brief despite knowing that I had no access to my court file.
292. On 10/22/2022, I attended my preliminary hearing in the criminal case at the El Dorado County, CA Superior Court in South Lake Tahoe.
293. On 10/22/22, under oath, Rich Horn initially claimed not to recall the Penal Code 278.7 notice I sent to him, Joe Alexander, Jeffrey Draher, and Dave Monroe. After it was shown to him in court, he admitted he had seen it before. He admitted to not contacting me to discuss my allegations that the children were in danger of great emotional harm. He admitted to conducting no further investigation regarding the 278.7 notice or domestic violence I alleged.
294. On 10/22/22, under oath, Rich Horn admitted that I previously reported to his office that Shelley Warneck had abducted my children. He admitted he did not do an investigative report after I reported the abduction to him.
295. On 10/22/22, under oath, Rich Horn admitted that I told him that if secret and illegal California court orders were domesticated in Nevada, I would appear and lawfully challenge them in court.

296. On 10/22/22, under oath, Rich Horn admitted he sought an arrest warrant for me. When asked, "Did you indicate to the judge in seeking that warrant for arrest any mitigating circumstance evidence or exculpatory circumstance evidence that you recall?" He answered, "I advised the attorney that we should get an arrest warrant for him. I believe they completed the paperwork based upon my reports." When further pressed on this issue and the duty of the DA's office to produce exculpatory evidence to the judge in the warrant application, Brittany Griffith objected and they refused to answer the question. Notwithstanding these admissions, Brittany Griffith urged the court to proceed on felonies instead of misdemeanors. The judge agreed.
297. Notwithstanding Rich Horn's testimony at my preliminary hearing, and after having conspired with Shelley Warneck and Tristan Aeschleman to seize and abduct E.W. and N.W. from Nevada for a second time when they concocted my false arrest, Brittany Griffith and the El Dorado DA's office coerced me into a nolo contendere plea deal under duress, while my children were seized and withheld from me, for one misdemeanor count under Penal Code 278.5 in exchange for dropping the two felony charges. At that point, I had not seen my children in a year and a half.
298. On 10/31/22, I hand delivered a letter for Nevada Attorney General Aaron Ford. I detailed my history with his office and again reported numerous crimes by his agents. I requested a meeting. AG Ford has never responded.
299. On 12/28/22, I hand delivered a complaint for Steve Wolfson at his office at the Regional Justice Center. The complaint detailed Caroline Morales' filing of false sworn documents with the court, and also crimes committed against me by Nevada Attorney General Agents. I asked for an investigation, and expressed that I wanted to hand over evidence. Nobody ever responded to my complaint.
300. On 3/2/23, Investigator Shenk, LVMPD, revoked my CCW permit.
301. On 3/14/23, I emailed Steve Wolfson's office to follow up on my complaint against Caroline Morales. I attached the 12/28/22 complaint. I received an auto-reply confirming receipt, but nobody from his office ever contacted me.
302. On 8/17/23, I hand delivered a letter to LVMPD General Counsel detailing the revocation of my CCW permit, and again attempted to report numerous crimes and constitutional rights violations committed my LVMPD employees.
303. On 10/5/23, Hendrickson issued a sua sponte order revoking her order labeling me a vexatious litigant, and admitting she has denied me due process. It is unclear why. Her order stated her alleged desire to provide me with due process, and she set a hearing, which was then continued to 12/12/23.
304. On 10/27/23, Sherry Diamond admitted to the State Bar of California that she had shredded, and did not read, the 6/2021 complaints I had sent to her and Judge Zayner pursuant to Local General Rule 3B.
305. From approximately 9/2023 to 1/2024, David Aigboboh, Arianna Le, Drew Aresca, Sandra Hernandez, and Chelsea Smith closed several of my State Bar of California complaints without investigation.
306. As of the writing of this complaint, I have not seen my E.W. and N.W. for over two years. I have not spoken to them in a year.

307. I have been denied all fundamental due process rights in the Santa Clara County, CA family court. I have had no trial in four years. The court refuses to enforce my discovery rights, and refuses to issue temporary orders protecting my fundamental constitutional rights to the care, custody, and control of my children.