Marc J. Randazza, NV Bar No. 12265
RANDAZZA LEGAL GROUP, PLLC
4974 S. Rainbow Blvd., Ste. 100
Las Vegas, NV 89118
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Defendant
Shelley Warneck

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL C. STERNBERG,<br><br>Plaintiff,<br><br>v.<br><br>SHELLEY WARNECK, *et al.,*<br><br>Defendants. | Case No. 2:23-01466-APG-EJY<br><br>**DEFENDANT SHELLEY WARNECK'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND SPECIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO NRS 41.660** |
| MICHAEL C. STERNBERG,<br><br>Plaintiff,<br><br>v.<br><br>SHELLEY WARNECK, *et al.,*<br><br>Defendants. | Case No. 2:23-cv-02022-APG-EJY |

Defendant Shelley Warneck ("Defendant Warneck") hereby moves to dismiss the claims asserted against her in the First Amended Complaint filed by Plaintiff Michael C. Sternberg pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. This Court does not have subject matter jurisdiction over Claim No. 1 in Sternberg's First Amended Complaint, and Mr. Sternberg has failed to state claims upon which relief can be granted with regard to Claims No. 2 through 7, 9, and 11 through 17. The Court should dismiss the claims identified below with prejudice. Defendant invokes the Nevada Anti-SLAPP law in seeking dismissal of Sternberg's

claims for abuse of process and civil conspiracy. While these are also to be dismissed under 12(b)(6), Warneck also invokes the substantive protections of NRS 41.660, including substantive immunity from suit on these claims as well as an award of attorney's fees upon the motion being granted.

This Motion is made pursuant to Fed. R. Civ. P. 12(b)(6) and is based upon the attached memorandum of points and authorities and any oral argument permitted by this Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## MOTION TO DISMISS

### 1.0 INTRODUCTION AND RELEVANT FACTUAL BACKGROUND

Plaintiff Michael Sternberg's First Amended Complaint (ECF No. 86), which names 75 Defendants and 29 Claims for Relief, deals with a custody dispute between Warneck and Sternberg, who separated in or around 2012 with two children. This resulted in a civil case filed in California family court, *Warneck v. Sternberg*, No. 2012-1-CP-020194.[1] Despite having a long-term relationship and two children together, Warneck and Sternberg never married. When they separated, both Warneck and Sternberg lived in California. At some point, after they separated, Sternberg moved to Nevada.

Seven years after they separated, in 2019, Sternberg alleges that Warneck agreed to move to and raise their children in Nevada and that she abducted these children from Nevada to California by falsely claiming that she wanted custody of the children so that they could visit her family in California. ECF No. 86-3 at ¶¶ 21, 32. Sternberg alleges that this was a false pretense to remove the children from Nevada and not return. ECF No. 86 at ¶ 34.

Upon learning of this alleged "kidnapping," Sternberg filed, or attempted to file, a number of police reports in Nevada and California, claiming that Warneck kidnapped their children. ECF No. 86 at ¶ 44. This resulted in a child custody case in Clark County, Nevada, *Sternberg v.*

---

[1] Mr. Sternberg's conduct in the California courts caused him to be named a vexatious litigant. He is now engaging in the same vexatious conduct here, seeking to evade the prohibitions that the California courts have placed on him.

*Warneck*, No. D-19-592622-C, where Sternberg alleges that Warneck admitted that she was registered to vote in Nevada and that she took the children to California under false pretenses. ECF No. 86 at ¶¶ 45, 54-56.

Sternberg also alleges a vast conspiracy among various law enforcement officers and departments to stymie any investigations of Warneck's actions and to arrest Sternberg for alleged kidnapping based upon supposedly false allegations in the 2012 California family court matter. While Sternberg's "General Facts Related to All Claims" filing (ECF No. 86-3) contains over 300 paragraphs of factual allegations, including various conclusory allegations of unspecified fraudulent conduct, he barely mentions Warneck after recounting the background of the dispute and the 2019 alleged kidnapping.

Missing from these allegations is any attempt to define what any of this alleged fraudulent conduct is, how it was fraudulent, any of the circumstances around this alleged fraudulent conduct, or any agreement among Warneck and her alleged co-conspirators. Sternberg has not asserted claims against Warneck that can survive a motion to dismiss. This is particularly true with respect to the claims for alleged violations of his state and federal constitutional rights. Warneck is not a government agent or employee and is thus incapable of acting under color of law. The First Amended Complaint should be dismissed against Warneck for lack of subject matter jurisdiction as to Claim No. 1 and failure to state a claim as to Claims No. 2 through 7, 9, and 11 through 17.

## 2.0 LEGAL STANDARD

This Court should dismiss the First Claim in the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. A motion brought under Fed. R. Civ. P. 12(b)(1) may be a facial or factual challenge to the existence of federal jurisdiction. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Here, Defendant Warneck makes a factual challenge to the Court's subject matter jurisdiction, alleging that there is no actual existence of jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In such cases, the party asserting that the court has subject matter jurisdiction bears the burden to prove such jurisdiction, regardless of whether it is the moving party. *See In re Dynamic Random Access*

*Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008). When a party makes a factual challenge, the court does not need to presume the truth of the plaintiff's allegations and may consider other properly introduced evidence in the record for purposes of making the determination. *See Safe Air for Everyone*, 373 F.3d at 1039.

Warneck asks this Court to dismiss the remainder of the claims discussed in this Motion pursuant to Fed. R. Civ. P. 12(b)(6). Under Fed. R. Civ. P. 12(b)(6), a court accepts all factual allegations as true, but not legal conclusions couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The plausibility standard requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Leave to amend a complaint should not be granted if it is clear that the deficiencies in the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

Though Sternberg brings claims for violation of his constitutional rights, the allegations against Warneck appear to sound like fraud, as he repeatedly alleges that she engaged in fraudulent conduct. Fed. R. Civ. P. 9(b) provides that when a party alleges fraud, the party must "state with particularity the circumstances constituting fraud," that is, "the who, what, when, where, and how of the misconduct charged." *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019). Rule 9(b) applies to state-law claims that "sound in fraud" and "are 'based on a unified course of fraudulent conduct.'" *Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F. Supp. 3d 1168, 1174 & n.3 (D. Nev. 2021) (quoting *Vess v. Ciba-Geigy Corp. USA*, 217 F.3d 1097, 1104-05 (9th Cir. 2003)). "Fraud" is not a Constitutional claim when brought against another citizen.

## 3.0 LEGAL ARGUMENT

Warneck notes that she is only addressing the claims that include her, as Sternberg has asserted nearly 30 claims against 75 Defendants. Given that the First Amended Complaint and the documents filed with it do not specify which claims implicate which Defendants, Warneck is employing her best guess as to which claims include her. If Plaintiff Sternberg alleges that there are claims against her that are not discussed in this Motion, then the allegations contained in the claims not addressed are too vague for Warneck to realize that she was meant to be included in them. Warneck assumes that any claims that mention her are cited against her.

### 3.1 The Constitutional Claims (Claims No. 6, 7, 9, and 11 through 17)

In general, there can be no liability to a private individual for violation of the federal or any state constitution; a violation by an individual requires them to act under color of state law. *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961) (noting that a plaintiff does not enjoy Fourteenth Amendment protections against "private conduct abridging individual rights"). Liability under 42 U.S.C. § 1983 attaches only to those "who carry a badge of authority of a state and represent it in some capacity." *Monroe v. Pape*, 365 U.S. 167, 172 (1961) (overruled in part by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

It is immediately apparent that Sternberg's claims against Warneck for constitutional violations all have a fatal defect. The First Amended Complaint does not allege that Warneck is a government employee or at any time represented the state. In short, she never had the ability to act under color of law, and thus is legally incapable of violating Sternberg's constitutional rights, whether under the federal, California, or Nevada constitutions.

Interpreting Sternberg's First Amended Complaint generously, however, he may be attempting to allege that Warneck is liable despite her status as a private citizen because she was heavily involved in state action that deprived him of his constitutional rights. In such circumstances, there must be significant state involvement in the alleged deprivation to be actionable, and there are four tests to determine whether a private individual's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and

(4) the governmental nexus test. *Johnson v. Knowles*, 113 F.3d 114, 118 (9th Cir. 1997). Only the second test is potentially relevant here.

For the joint action test, "'courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.'" *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) (quoting *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453 (10th Cir. 1995)). The inquiry is focused on whether the state has "'so far insinuated itself into a position interdependence with [the private actor] that it must be recognized as a joint participant in the challenged activity.'" *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 507 (9th Cir. 1989) (quoting *Burton*, 365 U.S. at 725). Joint action may be shown by proving the existence of a conspiracy or that the private individual was "a willful participant in joint action with the State or its agents." *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989).

The First Amended Complaint attempts to allege a conspiracy between Warneck and state actors (namely, members of law enforcement and prosecutors) to deprive Sternberg of his constitutional rights. However, to show a conspiracy, the plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989). A court will "require a substantial degree of cooperation before imposing civil liability for actions by private individuals that impinge on civil rights." *Fox*, 312 F.3d at 445. Sternberg must also show, for the conduct of state actors, that Warneck was the proximate cause of this conduct. *King v. Masarweh*, 782 F.2d 825, 829 (9th Cir. 1986). Specifically, Sternberg would have to show that Warneck "had some control over state officials' decision" to commit the challenged act to be the proximate cause of it. *Id*.

The First Amended Complaint falls well short of these standards, as it does no more than make unsupported, vague allegations of Warneck conspiring with state actors.[2] There are no facts

---

[2] Admittedly, the Complaint is more detailed as to Warneck allegedly kidnapping her and Sternberg's children, but this does not help Sternberg's claims because there is no allegation that this alleged kidnapping was the product of a conspiracy between Warneck and government officials.

giving rise to an inference of an agreement between Warneck and any other Defendant, nor is there any allegation that Warneck had any degree of control over them. Making vague references to Warneck making "fraudulent" filings and motions and perpetrating a "fraud upon the … courts" in the California Case (ECF No. 86 at ¶¶ 179, 183, 188, 189, 192, 200, 201, 219, 230, & 231), without any detail as to what or how it was fraudulent or how such alleged conduct caused any injury, fails to state a claim for relief. Nor do completely unsupported and conclusory allegations of Warneck conspiring with an investigator to "concoct" Sternberg's arrest. ECF No. 86 at ¶ 297. These are the kind of legal conclusions couched as factual allegations that cannot defeat a motion to dismiss. This is to say nothing of how deficient these allegations are under Rule 9(b)'s particularity requirement. Sternberg premises his claims on Warneck's allegedly fraudulent conduct, but the Complaint lacks any particulars as to when such conduct occurred, how it occurred, or what was fraudulent about it. The Constitutional claims asserted by Sternberg should be dismissed with prejudice.[3]

### 3.2 Violation of NRS 125C.0075 (Claim No. 1)

NRS 125C.0075 provides that "[i]f a parent with primary physical custody or joint physical custody relocates with a child in violation of NRS 200.359," then the non-relocating parent can file an action in response to the violation. Sternberg asserts a claim against Defendant Warneck for an alleged violation of this section in his First Amended Complaint. ECF No. 86-4 at ¶ 1. In his Prayer for Relief, Sternberg asks this Court to find that he has a right to the "custody, care, and control of [his] children." ECF No. 86 at ¶ VII.1.

In the Statement of Facts, filed in conjunction with the First Amended Complaint, Sternberg admits that there are currently pending cases in the States of California and Nevada regarding the custody of his and Warneck's children. ECF No. 86-3 at ¶¶ 7, 33, 45. In fact, he

---

[3] An award of attorneys' fees is also proper under 42 U.S.C. § 1988 because Plaintiff's § 1983 claims against Warneck were frivolous, unreasonable, and without foundation. *See Garcia v. Gateway Hotel Ltd. P'ship*, 82 F.4th 750, 756-57 (9th Cir. 2023); *Nguyen v. Regents of the Univ. of Cal.*, 823 F. App'x 497, 502-03 (9th Cir. 2020); *Hughes v. Rowe*, 449 U.S. 5, 15 (1980). Upon dismissal, Warneck anticipates seeking fees under this authority.

admits that he personally filed the case pending in Clark County, Nevada family court. *See id.* Given this, Sternberg's claim pursuant to NRS 125C.0075 must be dismissed with prejudice.

In Nevada, the state's family courts have "original, exclusive jurisdiction in any proceeding" involving child custody. NRS 3.223(1)(a). As such, this Court should dismiss this claim pursuant to the *Burford* abstention doctrine, which "is concerned with protecting complex state administrative procedures from undue federal influence." *New Orleans Pub. Serv., Inc. v. Council of New Orleans (NOPSI)*, 491 U.S. 350, 362 (1989). "'Where timely and adequate state review is available,' district courts sitting in equity should abstain from 'interfer[ing] with the proceedings or orders of state administrative agencies." *Peridot Tree, Inc. v. City of Sacramento*, 2024 U.S. App. LEXIS 5149, at *25-26 (9th Cir. March 4, 2024) (*quoting NOPSI*, 491 U.S. at 361). Courts in this Circuit have required three factors to exist before a court can abstain under *Burford*: (1) the state has concentrated suits involving the local issue to a particular court; (2) federal issues are not easily separable from complicated state law issues with which the state courts may have special competence; and (3) federal review may disrupt the state's attempts to establish a coherent policy. *Peridot Tree,* 2024 U.S. App. LEXIS 5149, at *26 (internal citations omitted).

Here, even just considering the Nevada custody case, the State has chosen to concentrate all cases involving child custody to its family courts. The federal issues and state issues are not easily separable, as Sternberg's primary purpose in this lawsuit as it relates to Warneck is to regain custody of the children he had with Warneck. Nevada's family courts unquestionably have special competence to decide issues related to child custody, as it is one of the only issues that concern Nevada's family courts. Finally, it is within the interests of the State of Nevada to have a coherent policy regarding child custody issues. Parents in the State dealing with child custody issues are entitled to have a predictable, consistently enforced policy.

Given that all of the facets of the *Burford* abstention doctrine apply, Sternberg cannot maintain this claim for relief. His first claim, and his First Amended Complaint, should be dismissed with prejudice.

### 3.3 Abuse of Process (Claim No. 2)

To assert a cognizable claim for abuse of process, the plaintiff must show (1) an ulterior purpose by the party abusing the process other than resolving a legal dispute; and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding. *See Land Baron Invs., Inc. v. Bonnie Springs Family Ltd. P'ship*, 356 P.3d 511, 519 (Nev. 2015). The plaintiff must provide facts, rather than conjecture, showing that the party intended to use the legal process to further an ulterior purpose. *See id.* The tort of abuse of process requires a willful act, and merely filing a complaint does not meet this requirement. *See id.* at 520.

Plaintiff Sternberg alleges that Warneck committed abuse of process when "she initiated or caused to be initiated, proceedings in the Santa Clara Superior Court (2019 – Civil) and the El Dorado County Superior Court (2021 – Criminal)." ECF No. 86-4 at ¶ 2. He claims that, in both cases, Warneck "willfully used irregular conduct in the proceedings, when she knowingly filed false documents, made false statements to the court, county investigators, and/or Nevada Attorney General agents, and when she allowed Tristan Aeschleman to do the same for the purpose of obstructing the due course of justice, conspiring to violate [Sternberg's] constitutional rights, enriching Tristan Aeschleman and Adames and Ash LLP, and retaining the children from [Sternberg] in another state." *Id.*

While Sternberg has submitted over 300 paragraphs of factual allegations to the Court, he does not identify a single incident suggesting that Defendant Warneck was using either proceeding for any purpose other than to settle her custody dispute with Sternberg. In fact, he makes no attempt to connect Warneck to the initiation or prosecution of the 2021 El Dorado criminal action at all. Warneck is not a law enforcement official and has no means of ensuring someone is charged with a crime or of directing the prosecution of a criminal proceeding. Sternberg relies entirely on conjecture in his allegations concerning this claim. He does not provide any alleged facts aside from alleging Warneck initiated legal proceedings, which cannot constitute abuse of process.

Furthermore, any statements made by Warneck in the California civil proceeding or the California criminal proceeding are absolutely protected by the litigation privilege. *See* Cal Civ.

Code 47(b); *Rusheen v. Cohen*, 128 P.3d 713, 718 (Cal. 2006) (noting that the litigation privilege "has been applied specifically in the context of abuse of process claims alleging the filing of false or perjurious testimony or declarations"); *see also Jacobs v. Adelson*, 325 P.3d 1282, 1285 (Nev. 2014). California's litigation privilege applies to any communication: "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Rusheen*, 128 P.3d at 718.

Here, any statements made by Warneck in the civil or criminal California cases were made in a judicial proceeding. In the civil case, Warneck was a party, while she would be a witness in the criminal case. Any statement made in either case was made to achieve the object of the litigation, and Sternberg has not alleged any statements made by Warneck at all, let alone statements unconnected to the civil or criminal actions. The litigation privilege applies, and Sternberg's claim for abuse of process should be dismissed with prejudice.

### 3.4 Tortious Interference with Parental Rights (Claim No. 3)

Plaintiff's Third Cause of Action is for Tortious Interference with Parental Rights, a claim for relief that has never been recognized, cited, or discussed in the State of Nevada. However, while applying Nevada law, this Court has declined to recognize it. *See Doyle v. Jones*, No. 3:13-cv-540-LRH-WGC, 2014 U.S. Dist. LEXIS 108979, at *12-13 (D. Nev. Aug. 6, 2014) ("Nevada does not recognize a separate claim for interference with parental rights").

Further, from what little caselaw exists from other states, most states that have considered the issue have declined to recognize tortious interference with parental rights as a valid claim for relief. *See, e.g., Zappin v. Schorr*, No. 22-cv-2034 (ER), 2023 U.S. Dist. LEXIS 48960, at *28-29 (S.D. N.Y. March 22, 2023) (holding that "there is no state law claim for tortious interference with parental rights"); *Allen v. Richard Winn Acad.*, 2023 S.C. App. Unpub. LEXIS 152, at *1-2 (S.C. App. March 29, 2023) (South Carolina declining to recognize the tort); *Carlton v. Brown*, 2014 UT 6, 40 (Utah 2014) (Utah, same); *Hunter v. Ferebauer*, 980 F. Supp. 2d 1251, 1262 (E.D. Wash. 2013) (Washington, same). Even states that have recognized the tort recognize that it is disfavored.

*See, e.g., Elmore v. Mansfield*, 2013 U.S. Dist. LEXIS 18763, at *3 (W.D. Mo. Feb. 12, 2013) ("the trend in Missouri law is to restrict the availability of this tort, if not abolish it").

Sternberg's Third Claim does not exist . Sternberg has not provided this Court with any reason to adopt it as a new tort. Claim No. 3 should be dismissed with prejudice.

### 3.5 California Civil Code § 49 (Claim No. 4)

California Civil Code § 49 provides, in pertinent part: "The rights of personal relations forbid: [t]he abduction or enticement of a child from a parent, or from a guardian entitled to its custody." Cal. Civ. Code § 49(a). Plaintiff asserts this claim against Defendant Warneck in his First Amended Complaint. No basis exists for this claim, and it must be dismissed.

In this Court, "a tort's location is determined by where the injury occurs." *Ferguson v. Horizon Lines, Inc.*, 602 Fed. Appx. 664, 665-66 (9th Cir. 2015) (*citing Solano v. Beilby*, 761 F.2d 1369, 1371 (9th Cir. 1985)). Here, Sternberg alleges that he and the children reside in Nevada and that the children were taken from Nevada. (*See* ECF No. 86-3 at ¶¶ 21, 32, 37; ECF No. 86-4 at ¶ 4) Sternberg's injury (if any) occurred in Nevada. The California statute does not apply.

Further, as the mother of the children, Warneck cannot be liable for violation of Cal. Civ. Code § 49. In long-standing precedent, the California court of appeal held that "Section 49 of the Civil Code forbids the abduction of a child from a parent." *Rosefield v. Rosefield*, 221 Cal. App. 2d 431, 433-34 (1st Dist. 1963). In that case, a child's mother brought an action against the child's father and grandfather for abducting and concealing her child. The court held that the section applied to the grandfather, who had no custodial rights over the child, but that the section did not apply to the father. *See id.* Here, as the mother of the child, Warneck did not kidnap the children and cannot be subject to liability under Section 49(a). The claim should be dismissed.

### 3.6 Civil Conspiracy (Claim No. 5)

In Nevada, an actionable claim for civil conspiracy consists of two or more persons in concerted action to accomplish an unlawful objective for the purpose of harming another, resulting in damage. *See Consol. Generator-Nevada v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998). As the agent of his client, an attorney "is not distinct from the client and therefore cannot

engage in a conspiracy with the client." *Southern Union co. v. Southwest Gas Corp.*, 165 F. Supp. 2d 1010, 1016 (D. Ariz. 2001) (*citing Macke Laundry Serv. Ltd. P'ship v. Jetz Service Co., Inc.*, 931 S.W.2d 166, 176 (Mo. App. 1996). An attorney and client may be liable for conspiracy if the attorney acts out of self-interest that goes beyond the attorney-client relationship. *See id.* In such cases, the attorney must act out of fraud or collusion, which must be pled with particularity. *See id.* (*citing* Fed. R. Civ. P. 9(b)).

Sternberg has not pled any facts that rise above the level of the typical attorney-client relationship. The allegations made in the First Amended Complaint do not suggest fraud or collusion by Warneck or her lawyers. Specifically, Sternberg alleges fraud but provides no specifics (because he cannot). *See, e.g.,* ECF No. 86-3 at ¶¶ 76, 188, 192, 200, 201, 219, 220, 224. Sternberg has not, and cannot, meet the pleading standard required to assert that Warneck and her counsel engaged in any conspiracy or anything beyond the standard attorney-client relationship. Furthermore, as this claim appears to be premised entirely on litigation conduct, the litigation privilege precludes and liability here, as discussed above. The Court should dismiss this claim with prejudice.

## SPECIAL MOTION TO DISMISS PURSUANT TO NRS 41.660

### 1.0 INTRODUCTION

In a classic SLAPP[4] suit, the plaintiff sues the defendant for exercising her First Amendment right to petition the government. Plaintiff filed an ill-considered *pro se* First Amended Complaint. Given that Plaintiff has sued Warneck for abuse of process and civil conspiracy specifically for statements that she allegedly made in litigation (that he does not identify), this is clearly a SLAPP suit.

Plaintiff Sternberg has asserted an abuse of process claim against Defendant Warneck because she allegedly "initiated, or caused to be initiated, proceedings in the Santa Clara County

---

[4] "SLAPP" is an acronym for "Strategic Lawsuit Against Public Participation."

Superior Court (2019 – Civil) and the El Dorado County Superior Court (2021 – Criminal)." ECF No. 86-4 at ¶ 2. With regard to both cases, Sternberg alleges that Warneck:

> willfully used irregular conduct in the proceedings, when she knowingly filed false documents, made false statements to the court, county investigators, and/or Nevada Attorney General agents, and when she allowed Tristan Aeschleman [Warneck's California attorney] to do the same for the purpose of obstructing the due course of justice, conspiring to violate [Sternberg's] constitutional rights, enriching Tristan Aeschleman and [his firm] Adames and Ash LLP, and retaining the children from [Sternberg] in another state.

*Id.*

He additionally accuses Warneck and her counsel of engaging in a civil conspiracy to deprive him of his rights and to "obstruct the due course of justice." ECF No. 86-4 at ¶ 5. While he does not state in this First Amended Complaint that the claim relates to the civil custody case pending against him in California, the wording of the claim makes clear that this so-called "civil conspiracy" solely relates to Warneck's and her counsel's conduct in the California litigation.

Sternberg provides no factual support for his abuse of process and civil conspiracy claims. As noted above, his allegations do not demonstrate that Warneck used the California cases for any purpose other than resolving a custody dispute. In fact, with regard to the criminal matter, he makes no allegations concerning Warneck at all. With regard to civil conspiracy, he makes no allegations against Warneck or her lawyers indicating that their relationship went beyond the boundaries of a typical attorney-client relationship, which is required for an attorney and his client to "conspire" with each other. Sternberg asserted these claims simply to punish Warneck for taking legal action against him.

Plaintiff Warneck made no knowingly false statements in any of the cases currently pending between her and Sternberg. Declaration of Shelley Warneck ("Warneck Decl."), attached as **Exhibit 1**, at ¶¶ 6-7.[5] Even if some of her statements end up being false, her filing of a Complaint

---

[5] A district court ordinarily will not consider documents outside the complaint when deciding a motion to dismiss. This declaration, however, is provided solely in connection with Warneck's request for relief under Nevada's Anti-SLAPP law, and not to challenge any of the factual allegations in the First Amended Complaint.

in the California civil case, her filing of an accurate police report in California in good faith, and her cooperation with the legal authorities in the California criminal case enjoy an *absolute privilege*. The Court should dismiss these claims with prejudice and award Warneck her attorneys' fees and costs incurred in defending herself against Sternberg's claims.

## 2.0 LEGAL STANDARD

Evaluating an Anti-SLAPP motion is a two-step process. First, the defendant must show, by a preponderance of the evidence, that the plaintiff's claim is "based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a).

Second, once the defendant meets her minimal burden on the first prong, the plaintiff must make a *prima facie* evidentiary showing that he has a probability of prevailing on his claims. *See* NRS 41.660(3)(b); *see also John v. Douglas County School Dist.*, 125 Nev. 746, 754 (2009). In federal court, however, the second prong of the analysis is simply viewed as a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the discussion of which is provided above. *Whittemore v. Vast Holdings Grop., LLC*, No. 2:19-cv-01951-GMN-EJY, 2023 U.S. Dist. LEXIS 35628, *10 (D. Nev. Mar. 2, 2023) (citing *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

Nevada courts look to case law applying California's Anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16, which shares many similarities with Nevada's law. *See John*, 125 Nev. at 756 (stating that "we consider California case law because California's anti-SLAPP statute is similar in purpose and language to Nevada's anti-SLAPP statute"); *see also Shapiro v. Welt*, 389 P.3d 262, 268 (Nev. 2017) (same); *Coker v. Sassone*, 432 P.3d 746, 749 n.3 (Nev. 2019) (finding that "California's and Nevada's statutes share a near-identical structure for anti-SLAPP review … Given the similarity in structure, language, and the legislative mandate to adopt California's standard for the requisite burden of proof, reliance on California case law is warranted"); *and see* NRS 41.665(2) (defining the plaintiff's *prima facie* evidentiary burden in terms of California law).

### 2.1 Warneck Satisfies the First Prong

The Anti-SLAPP statute protects:

1. Communication[s] that [are] aimed at procuring any governmental or electoral action, result or outcome;

2. Communication[s] of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity;

3. Written or oral statement[s] made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law; or

4. Communication[s] made in direct connection with an issue of public interest in a place open to the public or in a public forum,

Which [are] truthful or [are] made without knowledge of its falsehood.

NRS 41.637. The merits of a plaintiff's claims, and the legality of the defendant's actions, are not relevant to the first prong analysis. If relevant at all, they should only be considered during the second prong analysis. *See Coretronic v. Cozen O'Connor*, 192 Cal. App. 4th 1381, 1388 (2d Dist. 2011); *see also Taus v. Loftus*, 40 Cal. 4th 683, 706-07, 713, 727-299 (2007). **The moving party must make only a *threshold* showing as to the first prong of the analysis, while questions going to the merits of the plaintiff's claims are reserved for the second prong**. *See John*, 125 Nev. 746, 750 (2009); *see also City of Costa Mesa v. D'Alessio Investments, LLC*, 214 Cal. App. 4th 358, 371 (4th Dist. 2013) (stating that "[t]he merits of [the plaintiff's] claims should play no part in the first step of the anti-SLAPP analysis").

#### 2.1.1 Plaintiff's claims are based upon protected conduct

Sternberg acknowledges that his claims for abuse of process and civil conspiracy are based upon Warneck's alleged conduct in litigation pending in the State of California. Her conduct in both the civil and criminal cases was aimed at procuring government action, namely awarding her custody of her children based upon the dissolution of her relationship with Sternberg. Thus, her statements and conduct in both cases clearly fall under NRS 41.637(1)-(3). NRS 41.637(1) is satisfied. *See LHF Prods., Inc. v. Kabala*, No. 2:16-cv-02028-JAD-NJK, 2018 U.S. Dist. LEXIS

148256, *5-8 (D. Nev. Aug. 23, 2018) (finding that filing of complaint and other litigation conduct was protected under Nevada's Anti-SLAPP law against abuse of process claim).

Second, filing a complaint and providing requested information to law enforcement in California were communications of information to the government regarding Sternberg's improper conduct with regard to the custody dispute. Given that courts have the ability to make decisions regarding custody disputes and that law enforcement has an interest in receipt of information regarding illegal activity, she has satisfied the requirements of NRS 41.637(2).

With respect to NRS 41.637(3), statements made in a lawsuit or to law enforcement officials are made in direct connection with issues designed to be under consideration by a judicial body or any other official proceeding. Courts are, of course, a judicial body, while law enforcement are tasked with enforcing the laws of the state and are part of the executive branch. *See U.S. v. Lujan*, 504 F.3d 1003, 1007 (9th Cir. 2007) (stating that "law enforcement functions [are] vested in the executive branch"). Thus, NRS 41.637(3) is satisfied.

### 2.1.2 Warneck made her statements in good faith

The "good faith" analysis under Nevada's anti-SLAPP statute is simple and clearly defined in the statute. A statement is made in good faith if it is "truthful … or made without knowledge of its falsehood." NRS 41.637. That is the beginning and end of the Court's analysis. Under the first prong of the anti-SLAPP, even a recklessly false statement is insufficient to defeat a prong one showing, and by the anti-SLAPP's plain language, the "good faith" analysis is completely unrelated to a defendant's motivations in making a statement. *Williams v. Lazer*, 495 P.3d 93, 98 (Nev. 2021) (holding that defendant's declaration attesting she did not know any statements at issue were false was sufficient to meet burden of showing good faith where the plaintiff only provided evidence that the statements were false, rather than that the defendant *knew* the statements were false).

With regard to this matter, Warneck did not knowingly make any false statements in the California civil case and believes that all of the statements she made in that case were true. *See* Warneck Decl. at ¶ 6. Given that Sternberg does not try to relate the California criminal case to

- 16 -
Shelley Warneck's Motion to Dismiss and Special Motion to Dismiss
2:23-cv- 01466-APG-EJY

Warneck, with the exception of blaming her for an unidentified reason for it existing at all, she does not know how to respond to Sternberg's accusations regarding that case. However, to the extent that she was involved in that case beyond filing police reports, which she filed in good faith and which contains accurate and truthful information, and cooperating with law enforcement, she did not, and would not, make any false or fraudulent statements. *See id.* at ¶ 7. Even without this declaration, the Court should find Warneck has satisfied prong one. Sternberg at no point alleges that Warneck knew any of the statements in connection with either piece of litigation were false. At most, he only alleges in conclusory fashion that Warneck engaged in fraudulent activity, but that is a far cry from alleging knowing falsity (or even attempting to identify what was allegedly false).

As noted, while Sternberg accuses Warneck (and her California counsel) of making false statements to the court and to law enforcement, he does not identify what those allegedly false statements were, despite filing over 300 paragraphs of factual allegations with his First Amended Complaint leaving Warneck to guess and confirming that Sternberg filed these claims against her to punish her for pursuing her rights in a California court. Likewise, he does not identify any conduct by Warneck and her California counsel that shows they went above and beyond the boundaries of a typical attorney-client relationship, which is required for the Court to even entertain the possibility of a civil conspiracy between a lawyer and his client. This lack of detail and these unexplained accusations are telling. This is a SLAPP suit. It should be dismissed, and Warneck is entitled to reimbursement of her attorneys' fees and costs.

### 2.2 None of Sternberg's Claims Have Merit Under Prong Two

As mentioned previously, the prong two analysis in federal court is identical to the Fed. R. Civ. P. 12(b)(6) analysis. For the reasons discussed above, Sternberg has failed to state a claim for either conspiracy or abuse of process. The Court should grant relief under Nevada's Anti-SLAPP statute as to these claims, dismissing them with prejudice and awarding her attorneys' fees incurred in connection with these claims.

## CONCLUSION

For all of the reasons identified, herein, Sternberg's Claim No. 1 should be dismissed with prejudice for lack of subject matter jurisdiction, and Claims 2 through 7, 9, and 11-17 should be dismissed with prejudice for failure to state a claim. Additionally, Sternberg's claims for abuse of process (Claim No. 2) and civil conspiracy (Claim No. 5) should be dismissed with prejudice pursuant to the Nevada anti-SLAPP statute, and Warneck should be awarded her attorneys' fees incurred in connection with them (to be substantiated by separate motion).

Dated: March 12, 2024.

Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, NV Bar No. 12265
RANDAZZA LEGAL GROUP, PLLC
4974 S. Rainbow Blvd., Ste. 100
Las Vegas, NV 89118

Attorney for Defendant
Shelley Warneck

Case No. 2:23-cv-01466-APG-EJY

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 12, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Marc J. Randazza
MARC J. RANDAZZA