# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MICHAEL C. STERNBERG,

    Plaintiff

v.

SHELLEY WARNECK, et al.,

    Defendants

Case No.: 2:23-cv-01466-APG-EJY

**Order Granting in Part Defendant Shelley Warneck's Motion to Dismiss**

[ECF Nos. 124, 135]

Plaintiff Michael Sternberg sues 75 individuals and entities regarding events arising out of a custody dispute with the mother of his children, defendant Shelley Warneck. In this order, I address Warneck's motion to dismiss the claims against her on a variety of grounds. She also moves to dismiss the abuse of process and civil conspiracy claims and seeks attorney's fees under Nevada's anti-SLAPP statute, Nevada Revised Statutes (NRS) § 41.660. Warneck also joined a motion to dismiss filed by the Policastri Defendants regarding the application of the *Rooker-Feldman* and *Noerr-Pennington* doctrines. ECF Nos. 131; 135. Sternberg opposes dismissal, requests leave to amend, and requests leave to conduct discovery to oppose the anti-SLAPP motion.

The parties are familiar with the first amended complaint's (FAC) allegations, so I repeat them here only as necessary to resolve the motion to dismiss. I grant the motion to dismiss in part, with leave to amend.

/ / / /

/ / / /

/ / / /

/ / / /

1  **I.  ANALYSIS**

2      **A.  *Rooker-Feldman***

3      Warneck argues that Sternberg's claims in counts 6, 7, 9, 11, and 12[1] are barred by the

4  *Rooker-Feldman* doctrine because Sternberg effectively seeks to overturn state court rulings.

5  Sternberg responds that the doctrine does not apply because he did not lose in state court, as none

6  of his claims against the defendants has been adjudicated previously and there are no final

7  judgments in the custody proceedings.  He also contends that the doctrine does not apply because

8  he is pursuing independent claims.

9      The *Rooker-Feldman* doctrine arises from two Supreme Court decisions defining federal

10  district court jurisdiction and the relationship between federal district courts and state courts.

11  Federal district courts possess "strictly original" jurisdiction and thus have no power to exercise

12  subject matter jurisdiction over a de facto appeal from a state court judgment. *See Rooker v.*

13  *Fidelity Trust Co.*, 263 U.S. 413, 414-17 (1923); *Dist. of Columbia Ct. of Appeals, et al. v.*

14  *Feldman*, 460 U.S. 462, 482 (1983); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir.

15  2004).  Only the Supreme Court of the United States has jurisdiction to review such judgments.

16  *Feldman*, 460 U.S. at 482; *see also* 28 U.S.C. § 1257.  The *Rooker-Feldman* doctrine "is

17  confined to cases of the kind from which the doctrine acquired its name: cases brought by state-

18  court losers complaining of injuries caused by state-court judgments rendered before the district

19  court proceedings commenced and inviting district court review and rejection of those

20  judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  If the

21

22

23

---

[1] Count 6, 7, 9, 11, and 12 assert claims under 42 U.S.C. §§ 1983 and 1985, and state and federal constitutions. ECF No. 86-4 at 2-3, 5-8.

1  *Rooker-Feldman* doctrine applies, I must dismiss for lack of subject matter jurisdiction.

2  *Kougasian*, 359 F.3d at 1139.

3      The *Rooker-Feldman* doctrine does not deprive federal district courts of subject matter

4  jurisdiction in every case in which a party attempts to litigate in federal court a matter previously

5  litigated in state court. *Exxon Mobil*, 544 U.S. at 293.  If a plaintiff presents an "independent

6  claim, albeit one that denies a legal conclusion that a state court has reached in a case to which

7  he was a party . . ., then there is jurisdiction and state law determines whether the defendant

8  prevails under principles of preclusion." *Id.* (quotation omitted).  For example, where a plaintiff

9  asserts an adverse party committed extrinsic fraud on the state court, *Rooker-Feldman* does not

10  bar the suit because the plaintiff states an independent claim. *Kougasian*, 359 F.3d at 1141.

11  "Extrinsic fraud on a court is, by definition, not an error by that court.  It is, rather, a wrongful

12  act committed by the party or parties who engaged in the fraud." *Id.*  "*Rooker-Feldman* therefore

13  does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for

14  extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that

15  fraud." *Id.*

16      If there is a de facto appeal, the federal plaintiff "may not seek to litigate an issue that is

17  'inextricably intertwined' with the state court judicial decision from which the forbidden de facto

18  appeal is brought." *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003).  A claim is "inextricably

19  intertwined with the state-court judgment if the federal claim succeeds only to the extent that the

20  state court wrongly decided the issues before it." *Cooper v. Ramos*, 704 F.3d 772, 779 (9th Cir.

21  2012) (quotation omitted).  Thus, a claim is inextricably intertwined "where the relief requested

22  in the federal action would effectively reverse the state court decision or void its ruling." *Id.*

23  (quotation omitted).

Sternberg's allegation that Warneck removed the children from Nevada in 2019 is not barred by *Rooker-Feldman* because it is not based on a state court error. *See* ECF Nos. 86-3 at 2-3; 86-4 at 1-2. Rather, he alleges Warneck engaged in wrongful conduct relocating the children to California in contravention of Warneck and Sternberg's agreement that the children would live in Nevada. Absent further factual development, it is unclear whether his allegations related to Warneck's alleged participation in Sternberg's arrest and the seizure of the children is barred by *Rooker-Feldman*. Sternberg has leave to amend to allege facts related to this incident if he can allege an independent claim.

But the rest of Sternberg's allegations against Warneck are de facto appeals of state court rulings because he asserts harm from the California state court's alleged legal errors and seeks to overturn, void, or otherwise necessarily imply the invalidity of those orders. For example, he challenges decisions relating to the custody matter being decided in California rather than Nevada, denying his motion for the children's return, denying his motion for contempt, sanctioning him, ordering him to return the children to Warneck, and declaring him a vexatious litigant. ECF Nos. 86-3 at 4, 8, 10; 86-4 at 7-9. And he requests as relief declarations that some of the California state court orders are void, and specifically that Judge Hayashi's jurisdictional order is void, rendering all the following orders in the custody case void as well. ECF No. 86 at 3-6. Sternberg also seeks an injunction barring Warneck from enforcing money judgments the California court ordered. *Id.* at 6. Sternberg's contention that he is not a "state court loser" because these orders are not final, and thus *Rooker-Feldman* does not apply, is incorrect. *Rooker-Feldman* is not limited to final orders. It also applies to a state court's interlocutory orders and non-final judgments. *Doe & Assoc. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001). And it "applies even where the challenge to the state court decision involves

federal constitutional issues, including section 1983 claims." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1142 (9th Cir. 2021) (quotation omitted).

Sternberg contends that he is alleging independent claims. For his claim regarding Warneck removing the children from Nevada, he is correct. And he may be correct regarding his allegation about his arrest and the seizure of his children, but I cannot discern that from the allegations as currently pleaded. Although Sternberg alleges extrinsic fraud on the state court during the custody proceedings, he does so only in conclusory terms. For example, he alleges that there was "perjury, fraud upon the court, [and] filing of false sworn documents" in the custody case, and that Warneck's attorney made "fraudulent filings with the court." *See, e.g.,* ECF No. 86-3 at 10-11. However, Sternberg also alleges that the state court judges participated in the allegedly fraudulent conduct. *See, e.g.*, ECF Nos. 86-4 at 2-9. Thus, he is still asserting harm from state court errors, rather than extrinsic fraud in the form of Warneck and her attorney committing wrongful acts to fool the state court into its decisions.

His claims against Warneck, at least as presently pleaded, thus are inextricably intertwined with his de facto appeals. Consequently, I dismiss Sternberg's claims against Warneck for lack of subject matter jurisdiction under *Rooker-Feldman* except for his claims based on Warneck relocating the children in 2019.

Because Sternberg may be able to plausibly allege other claims against Warneck that are not barred by *Rooker-Feldman*, I grant him leave to do so if he can allege facts supporting independent claims against her. I advise Sternberg that if his theory is grounded in fraud, he must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for pleading fraud with particularity. Under that Rule, "the circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they

1    can defend against the charge and not just deny that they have done anything wrong." *Vess v.*

2    *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation omitted).  The complaint

3    must identify "the who, what, when, where, and how of the misconduct charged" and "must set

4    forth what is false or misleading about a statement, and why it is false." *Id.* (quotation omitted).

5    Merely describing filings, statements, or other acts as "fraudulent" or "illicit" is insufficient.

6         Because I am granting Sternberg leave to amend, I address Warneck's other arguments to

7    determine if amendment would be futile and to provide guidance if I allow amendment.

8         **B.  Failure to State a Claim**

9         In considering a motion to dismiss, I take all well-pleaded allegations of material fact as

10   true and construe the allegations in a light most favorable to the non-moving party. *Kwan v.*

11   *SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not "assume the truth of

12   legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation*

13   *v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).  A plaintiff must make sufficient

14   factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550

15   U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a

16   formulaic recitation of the elements of a cause of action." *Id.* at 555.

17        1.  Sections 1983 and 1985 and State Constitutional Claims[2]

18        Warneck argues that Sternberg's claims under 42 U.S.C. § 1983 fail because she is not a

19   state actor.  Warneck argues that to the extent the FAC attempts to allege a conspiracy between

20   her and state actors, it does so in only conclusory fashion.

21

22

23

___

[2] The parties do not distinguish between the federal and state constitutional claims, so I address those claims together.

6

Sternberg responds that Warneck did not move to dismiss his § 1985 claims, so those claims remain pending.  As for his § 1983 claims, he argues that because this is the pleading stage, he need only allege that each participant in the conspiracy shared a common objective, and he has alleged that Warneck and state actors conspired to seize his children without due process. Sternberg contends that fraud is not an element of a § 1983 claim, so he need not meet a heightened pleading standard, but he could do so on amendment if needed, although some of the facts he needs are exclusively in the defendants' control because he has been denied access to the custody case court file.  In reply, Warneck argues that a § 1985 claim is a conspiracy to interfere with civil rights, so if there is no valid § 1983 claim, then there is no valid § 1985 claim.

### a.  State Action

To state a claim under § 1983, a plaintiff must plausibly allege that the defendant deprived him of a right secured by the Constitution and acted under color of state law. *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1166-67 (9th Cir. 2021).  Traditionally, "acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quotation omitted).

Conduct by a private actor presumptively is not state action. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011).  However, a private person or entity can, "in certain circumstances," be a state actor. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 954 (9th Cir. 2008) (en banc).  One way a private individual or entity may be liable under § 1983 is by engaging in joint action with a state actor. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012).  The joint action test is met if "state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* (quotation

1  omitted).  A plaintiff can show joint action "either by proving the existence of a conspiracy or by

2  showing that the private party was a willful participant in joint action with the State or its

3  agents." *Id.* (quotation omitted).  To state a conspiracy between Warneck and state actors under

4  § 1983, Sternberg must plausibly allege "an agreement or meeting of the minds to violate

5  constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (quotation omitted).

6  "Ultimately, joint action exists when the state has so far insinuated itself into a position of

7  interdependence with [the private entity] that it must be recognized as a joint participant in the

8  challenged activity." *Tsao*, 698 F.3d at 1140 (quotation omitted).  "Joint action therefore requires

9  a substantial degree of cooperative action." *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir.

10  1989).  For example, "merely complaining to the police" does not suffice to make the

11  complaining party a state actor. *Id.* at 1155.

12       Warneck is a private citizen who presumptively is not a state actor.  Sternberg has not

13  plausibly alleged facts to support a conspiracy or joint action theory to make her conduct

14  attributable to the State.  Rather, the FAC alleges that Warneck brought a custody dispute in

15  California court and her attorney submitted declarations and proposed orders to the court in

16  California.  Initiating a custody proceeding and asking a court for relief do not amount to state

17  action.  The FAC also alleges that Warneck and her attorney "conspired" with a judge and

18  Sternberg's own attorney to change the custody case from a "brief focused assessment" to a full

19  custody evaluation without Sternberg's consent. ECF No. 86-3 at 7.  He makes a similar

20  allegation that another attorney of his, a different judge, and Warneck's attorney "conspired" to

21  alter a stipulation to continue trial without his consent. *Id.* at 8.  And he alleges that Warneck

22  "conspired" with an investigator for the El Dorado County District Attorney's Office to have

23  Sternberg arrested and the children seized and returned to Warneck. *Id.* at 4, 18.  Labeling

1  something a conspiracy is insufficient to plausibly allege an agreement to violate constitutional

2  rights.  The factual allegations do not support the conclusion that the State has so far insinuated

3  itself into a position of interdependence with Warneck that these private actors' conduct is

4  attributable to the State.  In sum, the FAC does not plausibly allege that Warneck is a state actor,

5  so the § 1983 claims fail as a matter of law.  However, I grant Sternberg leave to amend if he can

6  allege facts to support a § 1983 claim against Warneck.

7                                   *b. Section 1985*

8          Sternberg does not identify under what section or clause of § 1985 he brings his claims.

9  He appears to be relying on the second clause of § 1985(2) that prohibits conspiring for the

10  purpose of obstructing "the due course of justice" in a State "with intent to deny to any citizen

11  the equal protection of the laws."  He also appears to be relying on the first clause of § 1985(3)

12  that prohibits conspiring to deprive "any person or class of persons of the equal protection of the

13  laws."

14          As discussed above, Sternberg has not plausibly alleged a conspiracy.  I therefore dismiss

15  his § 1985 claims.  Although Warneck does not raise the issue, as discussed in my order relating

16  to her attorney's motion to dismiss, both of the § 1985 provisions under which Sternberg is suing

17  require "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind

18  the conspirator's action." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001),

19  *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (quotation omitted).  The

20  Ninth Circuit requires a showing either that the courts have designated the class in question a

21  suspect or quasi-suspect class or that congressional legislation has established that the class

22  requires special protection. *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985).  Sternberg

23  has not alleged that he belongs to a protected class or that Warneck conspired with others to

1  deprive him of equal protection based on his membership in that class.  It appears unlikely that

2  Sternberg could plausibly allege a § 1985 claim because his oppositions to Warneck's and her

3  attorney's motions to dismiss do not suggest he could make these types of allegations.  I

4  nevertheless will allow Sternberg leave to amend his § 1985 claims if he can allege facts in

5  support of them.

6  *2. Noerr-Pennington Doctrine*

7       Warneck argues that counts 6, 7, 9, and 11-17[3] are barred by the *Noerr-Pennington*

8  doctrine because Sternberg sues her for protected First Amendment petitioning activity related to

9  filing motions and briefs in court, reporting Sternberg to law enforcement, and cooperating with

10  the criminal investigation into Sternberg.

11       Sternberg responds that "abducting children is not a petitioning activity." ECF No. 139 at

12  5.  He also argues that the doctrine should not apply where he alleges violations of his

13  constitutional rights because applying the doctrine would defeat the purpose of the civil rights

14  laws.

15       The *Noerr-Pennington* doctrine "is a rule of statutory construction that requires courts to

16  construe statutes to avoid burdening conduct that implicates the protections of the Petition

17  Clause of the First Amendment." *United States v. Koziol*, 993 F.3d 1160, 1171 (9th Cir. 2021).

18  While the doctrine was initially rooted in antitrust law, it now extends to the petitioning of any

19  branch of government and to state common law claims. *Theme Promotions, Inc. v. News Am.*

20  *Mktg. FSI*, 546 F.3d 991, 1006-07 (9th Cir. 2008).  Thus, parties who petition the government

21  are generally immune from liability for that activity. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929

22

23  ---

[3] Counts 6, 7, 9, 11-17 assert claims under 42 U.S.C. §§ 1983 and 1985, and state and federal constitutions. ECF No. 86-4 at 2-3, 5-14.

1  (9th Cir. 2006).  This includes "[c]onduct incidental to the prosecution of [a] suit," such as

2  "presuit demand letters and discovery communications." *B&G Foods N. Am., Inc. v. Embry*, 29

3  F.4th 527, 535 (9th Cir. 2022) (quotation omitted).

4        To assess whether *Noerr-Pennington* applies, I employ "a three-step analysis to

5  determine: (1) whether the lawsuit imposes a burden on petitioning rights, (2) whether the

6  alleged activities constitute protected petitioning activity, and (3) whether the statute at issue

7  may be construed to avoid that burden." *Id.* (simplified).  "If the answer at each step is 'yes,'

8  then a defendant's conduct is immunized under *Noerr-Pennington*." *Id.*

9                    *a.  Step One:  Burden*

10        To determine whether the success of the plaintiff's lawsuit would burden petitioning

11  rights in the litigation context, I ask whether the lawsuit burdens the defendant's ability to

12  prosecute its suit. *Id.*  Only some of Sternberg's allegations would burden Warneck's petitioning

13  activity in the custody suit.  Sternberg's allegations related to Warneck's conduct during and in

14  relation to court proceedings, such as her attorney filing documents, submitting proposed orders,

15  and making arguments during court proceedings would burden her petitioning rights if Sternberg

16  succeeded in this lawsuit.  To the extent Warneck requested law enforcement to act against

17  Sternberg, that petitioning activity likewise would be burdened.  And although Sternberg

18  contends that applying *Noerr-Pennington* in this context undermines the civil rights statutes, the

19  Ninth Circuit has held that pursuing a § 1983 suit can burden a defendant's petitioning rights

20  under step 1. *Id.*

21        However, Sternberg asserts that Warneck took actions beyond petitioning a court or law

22  enforcement agency.  Sternberg plausibly alleges that despite their agreement that the children

23  would live in Nevada, Warneck relocated the children by deceiving him into agreeing to a

11

1  temporary visit.  Additionally, to the extent Sternberg can allege Warneck did something more

2  than merely request law enforcement assistance in relation to his arrest, then allowing this suit to

3  proceed would not burden petitioning activity.

4  *b. Step Two:  Protected Petitioning Activity*

5  At step two, I determine whether the Petition Clause protects the defendant's activity. *Id.*

6  at 535-36.  "Sham petitioning is not protected." *Id.* at 536; *see also Pyankovska v. Abid*, 65 F.4th

7  1067, 1077 (9th Cir. 2023) (stating that filing and arguing a custody motion was protected

8  petitioning activity but the defendant "was not free to support [his] motion with illegal

9  evidence").  Petitioning activity is a sham in the litigation context if: (1) "the lawsuit is

10  objectively baseless and the defendant's motive in bringing it was unlawful;" (2) "the conduct

11  involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without

12  regard to the merits and for an unlawful purpose;" or (3) the defendant's "knowing fraud upon,

13  or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *B&G*

14  *Foods N. Am., Inc.*, 29 F.4th at 537-38 (quotation omitted).

15  Whether the sham exception applies is a question of fact. *Rock River Commc'ns, Inc. v.*

16  *Universal Music Grp., Inc.*, 745 F.3d 343, 352-53 (9th Cir. 2014).  At the motion to dismiss

17  stage, I decide only whether the plaintiff has plausibly pleaded that the sham exception applies,

18  accepting all well-pleaded facts as true. *See Kearney v. Foley & Lardner, LLP*, 590 F.3d 638,

19  647-48 (9th Cir. 2009) (holding the district court erred by requiring more than plausible pleading

20  of a sham exception at the motion to dismiss stage).

21  Taking Sternberg's allegations as true, he may be able to plausibly allege that the sham

22  exception applies.  If he is able to do so, then Warneck's actions would not be protected

23  petitioning conduct.  However, he has not done so yet.  Sternberg alleges that Warneck, either

1  personally or through her attorney, made numerous false or fraudulent statements to the court

2  during the custody proceedings, and he appears to allege that those false statements were either

3  repeated to law enforcement or formed the basis of law enforcement's actions against him.

4  However, Sternberg does not plausibly allege what false statements Warneck or her attorneys

5  made, why they were false, or how those misrepresentations deprived the state court custody

6  proceeding or the law enforcement actions against him of their legitimacy.  As discussed above,

7  if Sternberg is making allegations grounded in fraud, he must plead those allegations with

8  particularity.  I therefore grant Warneck's motion to dismiss on this basis.  But because it is

9  possible that Sternberg could cure these defects through amendment, I grant him leave to amend.

10                    3.  Section 125C.0075

11         Warneck argues that I do not have subject matter jurisdiction to address Sternberg's

12  claim under Nevada Revised Statutes (NRS) § 125C.0075 because Nevada's family courts have

13  exclusive jurisdiction over child custody disputes.  She thus requests that I dismiss under *Burford*

14  abstention.  Sternberg responds that I have subject matter jurisdiction due to the federal claims,

15  so I have supplemental jurisdiction over this claim.  He also argues that *Burford* abstention does

16  not apply to claims for monetary relief, which is what he seeks for this claim.  Warneck replies

17  that the statute does not allow for damages; rather it allows for an award of attorney's fees and

18  costs in an action in family court.

19         NRS § 125C.0075 provides that if a parent with primary or joint physical custody

20  relocates with a child under certain wrongful or criminal circumstances and the non-relocating

21  parent "files an action in response to the violation," then "the non-relocating parent is entitled to

22  recover reasonable attorney's fees and costs incurred as a result of the violation."  This section is

23  contained within NRS Title 11 relating to domestic relations and under Chapter 125C related to

1  custody and visitation.  Nevada has statutorily provided that "the family court has original,

2  exclusive jurisdiction in any proceeding . . . [b]rought pursuant to . . . chapter . . . 125C . . . of

3  NRS, except to the extent that a specific statute authorizes the use of any other judicial or

4  administrative procedure to facilitate the collection of an obligation for support." NRS

5  § 3.223(a).  Consequently, Sternberg's claim under § 125C.0075 must be brought in the family

6  court.  I therefore dismiss it with prejudice to reasserting it in this court, but without prejudice to

7  Sternberg pursuing relief in family court.

8                          4.  Tortious Interference with Parental Rights

9          Warneck argues that Nevada does not recognize a tort for interference with parental

10  rights.  Sternberg responds by requesting that I certify to the Supreme Court of Nevada whether

11  this claim exists.  Warneck replies that I should not certify the question because Nevada has a

12  statutory remedy, so the Supreme Court of Nevada is unlikely to recognize a common law tort

13  for the same conduct.  She also contends that any such claim would have to be brought in

14  Nevada family court, even if it exists.

15          The Supreme Court of Nevada has not addressed whether a claim for tortious interference

16  with parental rights exists under Nevada law or, if it does, whether it can be brought by one

17  parent against the other, or whether the family court has exclusive jurisdiction over any such

18  claim. "Where the state's highest court has not squarely addressed an issue, [I] must predict how

19  the highest state court would decide the issue using intermediate appellate court decisions,

20  decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Judd v.*

21  *Weinstein*, 967 F.3d 952, 955-56 (9th Cir. 2020) (quotation omitted).

22          Another judge in this district has ruled that Nevada does not recognize such a claim and

23  instead provides for a statutory remedy under NRS Chapter 125C. *Doyle v. Jones*, No. 3:13-CV-

540-LRH-WGC, 2014 WL 3887906, at *5 (D. Nev. Aug. 7, 2014). The statute that *Doyle* cites

states that if physical custody has been established pursuant to a court order and the custodial

parent seeks to relocate the child out of Nevada or at a distance within the state that would impair

the other parent's relationship with the child, then the custodial parent must attempt to get the

other parent's or the court's permission to relocate. *Id.* (citing NRS § 125C.200, now codified at

NRS § 125C.006). A parent with court-ordered custody who relocates with a child without the

other parent's or the court's permission may be subject to criminal charges and be liable to pay

the other parent's reasonable attorney's fees and costs. NRS §§ 125C.006(3), 125C.0065(3)

125C.0075, 200.359.

Sternberg alleges that when Warneck first removed the children from Nevada, he and

Warneck had informally agreed to Sternberg being the "primary parent" while Warneck dealt

with a criminal DUI charge against her in California, and that the children would live in Nevada.

ECF No. 86-3 at 1-2. Under Nevada law, parents have joint legal and physical custody of a child

"until otherwise ordered by a court of competent jurisdiction." NRS § 125C.0015. It is unclear

whether the statutory remedies listed above are a parent's only remedies when the other parent or

a third party interferes with the parent-child relationship. And it is unclear what remedies apply

where, as here, there is no court-ordered custody arrangement that was allegedly violated.

In my discretion, "[w]hen state law issues are unclear, [I] may certify a question to a

state's highest court to obtain authoritative answers." *Potter v. City of Lacey*, 46 F.4th 787, 791

(9th Cir. 2022) (quotation omitted). Certification may be appropriate for state law issues that

carry "significant policy implications" and "will have broad application." *Id.*; *Kremen v. Cohen*,

325 F.3d 1035, 1038 (9th Cir. 2003). Nevada Rule of Appellate Procedure 5 permits me to

certify a question of Nevada law "which may be determinative of the cause then pending" in my

1  court when "it appears to [me] there is no controlling precedent in the decisions of the Supreme

2  Court or Court of Appeals of [Nevada]."  The certified question does not have to resolve or

3  conclude the entire case; it only needs to be determinative of "part of the federal case." *Volvo*

4  *Cars of N. Am., Inc. v. Ricci*, 137 P.3d 1161, 1164 (Nev. 2006) (en banc).

5        Given the lack of authority on point, the importance of whether such a tort exists and its

6  parameters, and the state court's expertise with domestic relations law, I am inclined to certify to

7  the Supreme Court of Nevada the question of whether such a claim exists, under what

8  circumstances, against whom it can be maintained, and in what courts it may be pursued.  I

9  therefore deny Warneck's motion to dismiss this claim.  Once Sternberg has completed

10 amending his complaint as to Warneck, any party may move to certify questions to the Supreme

11 Court of Nevada related to this claim.

12               5.  Abuse of Process

13        Warneck contends the abuse of process claim fails because Sternberg has not alleged an

14 improper purpose other than resolving the custody dispute.  She also argues that initiating legal

15 proceedings cannot constitute an abuse of process.  And she asserts that any statements she made

16 in the California custody case or the criminal action against Sternberg are protected by the

17 absolute litigation privilege.  Sternberg responds that Warneck abducted his children before they

18 brought or renewed the custody dispute in California, and "[a]bducting children and taking them

19 across state lines is not proper in the regular conduct of family court proceedings." ECF No. 132

20 at 8.  He also argues that the litigation privilege does not apply to her non-communicative acts of

21 deceiving him into allowing her to temporarily take the children out of Nevada and then

22 relocating them against his wishes.  He argues that "[a]bduction is a predicate, independent, non-

23

communicative act . . ., as are false statements and filings in a court to prolong the abduction." *Id.* at 9.

To state an abuse of process claim under Nevada law, Sternberg must plausibly allege (1) that Warneck had an ulterior purpose other than resolving a legal dispute, and (2) she engaged in a willful act in the use of judicial process not proper in the regular conduct of the proceeding. *LaMantia v. Redisi*, 38 P.3d 877, 880 (Nev. 2002); *see also Land Baron Inv. v. Bonnie Springs Fam. LP*, 356 P.3d 511, 519 (Nev. 2015). For example, the Supreme Court of Nevada found abuse of process when a city attorney charged a police officer with a criminal violation to obtain the officer's voluntary resignation. *Posadas v. City of Reno*, 851 P.2d 438, 445 (Nev. 1993). However, "filing a complaint does not constitute abuse of process." *Land Baron Inv.*, 356 P.3d at 520.

Sternberg has not plausibly alleged an abuse of process claim because he does not allege that Warneck used judicial process in a manner that is not proper in the regular conduct of court proceedings, nor does he allege an ulterior purpose. Sternberg's reference to Warneck relocating the children does not identify a use of judicial process to accomplish the relocation, much less misuse of that process for an ulterior purpose. As for the alleged false statements in court documents, Sternberg does not identify any false statements, why they are false, how they constitute an abuse of process, or an ulterior purpose other than resolving the custody dispute. Although he characterizes the false statements in court documents as non-communicative for purposes of the litigation privilege, he does not explain how the unidentified statements would be non-communicative. Even knowingly false statements in court proceedings are protected by the absolute litigation privilege. *See Greenberg Traurig v. Frias Holding Co.*, 331 P.3d 901, 903 (Nev. 2014) (en banc). And the privilege applies to abuse of process claims. *See Rogoff v.*

17

*Marsh*, No. 80870-DOA, 482 P.3d 1221, 2021 WL 1100374, at *2 (Nev. Ct. App. 2021).

Although it seems unlikely that Sternberg can amend to plausibly allege an abuse of process

claim, I grant Sternberg leave to amend this claim if he can assert facts in support that do not run

afoul of the litigation privilege.

### 6.  Civil Conspiracy

Warneck contends that the civil conspiracy claim fails because she cannot conspire with

her own attorney unless Sternberg alleges something beyond a typical attorney-client

relationship, which he has not done.  She also argues that Sternberg's allegations regarding

fraudulent filings in the custody case are not pleaded with particularity as required under Rule

9(b).  Finally, she argues this claim is based on her litigation conduct, so it is barred by the

litigation privilege.  Sternberg responds that he does not have access to the court file in his

custody case, which he needs to plead his claim with particularity.  He also argues the litigation

privilege does not apply because the claim encompasses conduct beyond filing documents in

court, such as abducting the children from Nevada.  And he argues that kidnapping is not in the

normal scope of an attorney-client relationship.

Under Nevada law, "[a]n actionable civil conspiracy consists of a combination of two or

more persons who, by some concerted action, intend to accomplish an unlawful objective for the

purpose of harming another, and damage results from the act or acts." *Consol. Generator-Nev.,

Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998) (quotation omitted).  The

unlawful objective does not necessarily have to amount to a tort. *Cadle Co. v. Woods &

Erickson, LLP*, 345 P.3d 1049, 1052 (Nev. 2015) (en banc).  A plaintiff must allege an explicit or

tacit agreement among the conspirators. *Guilfoyle v. Olde Monmouth Stock Transfer Co., Inc.*,

335 P.3d 190, 198-99 (Nev. 2014) (en banc).  Direct evidence of an agreement to harm the

plaintiff is not required, but the plaintiff must allege facts from which to infer such an agreement existed. *See id.* at 199.  An agent cannot conspire with its principal when the agent acts in its official capacity on behalf of the principal. *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983).  A lawyer is his or her client's agent. *Estate of Adams by and through Adams v. Fallini*, 386 P.3d 621, 625 (Nev. 2016); *see also C.I.R. v. Banks*, 543 U.S. 426, 436 (2005) (describing the lawyer-client relationship as "a quintessential principal-agent relationship").

As I have discussed with respect to some of Sternberg's other claims, his conspiracy allegations are conclusory.  Additionally, he cannot base this claim on a conspiracy between Warneck and her attorney unless he is able to allege facts showing that Warneck's attorney was not acting on her behalf as her attorney, but instead was acting for his own "individual advantage." *Cap. Advisors, LLC v. Cai*, 548 P.3d 1202, 1211 (Nev. 2024).  But I grant Sternberg leave to amend to add facts from which an agreement to accomplish an unlawful objective could plausibly be inferred.  A conspiracy to deceive Sternberg into allowing a temporary visit outside Nevada to relocate the children in contravention of the parents' agreement would not be barred by the absolute litigation privilege, so amendment would not be futile.  Likewise, depending on what facts Sternberg alleges about what Warneck's attorney did to assist her in the relocation, those facts may suffice to support a conspiracy claim despite the agency relationship.

### 7.  California Civil Code § 49

Warneck argues that Sternberg's claim under California Civil Code § 49 fails because Sternberg alleges that she abducted the children from Nevada, so this California statute regarding the abduction of a child does not apply to her conduct.  Alternatively, she contends that § 49 does not apply to a person like her who had custodial rights over the child allegedly abducted.

1  Sternberg responds that Warneck relies on a maritime case that is inapplicable to this lawsuit.

2  He also argues that the abduction is ongoing because the children are now located in California.

3  And he contends that he is bringing this claim on behalf of his children, who can sue the

4  abducting parent.  Finally, he argues that a parent who abducts a child may be liable under the

5  statute.  In reply, Warneck withdraws her argument that a § 49 claim cannot be brought against a

6  parent. ECF No. 137 at 10 n.2.  But she argues that Sternberg was injured in Nevada, not

7  California, so the statute does not apply, and that the FAC pleads this claim is being brought by

8  Sternberg, not the children.

9        California Civil Code § 49(a) forbids the "abduction or enticement of a child from a

10  parent, or from a guardian entitled to its custody."  To determine whether this law applies in this

11  case, I must determine what choice of law rules to apply: federal common law or the law of the

12  forum state, which here is Nevada.  This case is ostensibly based on federal question jurisdiction

13  due to Sternberg's assertion of various federal claims.  When a case is brought in federal court

14  based on federal question jurisdiction but "state law supplies the substantive rule of decision"

15  and "there is no federal interest in supplanting the otherwise applicable choice-of-law rule," then

16  I apply the forum state's choice-of-law principles. *Cal. Dep't of Toxic Substances Control v. Jim*

17  *Dobbas, Inc.*, 54 F.4th 1078, 1089 (9th Cir. 2022) (simplified).

18        Warneck's motion relies on maritime cases for her choice-of-law argument. ECF No. 124

19  at 11 (citing *Ferguson v. Horizon Lines, Inc.*, 602 Fed. Appx. 664, 665-66 (9th Cir. 2015);

20  *Solano v. Beilby*, 761 F.2d 1369, 1371 (9th Cir. 1985)).  In those cases, the courts were

21  determining whether the cases fell within the court's admiralty jurisdiction, and the courts used

22  federal common law to make that determination.  That is different than determining what law

23  applies as between two states.  Because Warneck's motion did not cite the correct law, neither

1    she nor Sternberg have adequately addressed whether Sternberg can pursue this claim under

2    California law.  I therefore deny Warneck's motion to dismiss it, without prejudice to refiling a

3    motion to dismiss this claim.  However, as I explain in orders addressing other defendants'

4    motions to dismiss, Sternberg cannot bring this claim on behalf of his children unless he obtains

5    counsel. *See Grizzell v. San Elijo Elementary Sch.*, 110 F.4th 1177, 1181 (9th Cir. 2024)

6    (acknowledging potential concerns but concluding that controlling Ninth Circuit law "holds that

7    a parent may not proceed pro se on her children's behalf").  Consequently, this claim is brought

8    on Sternberg's behalf only.

9        **C. Amendment**

10       Sternberg requests leave to amend if I find he has not plausibly alleged a claim.  Warneck

11   argues that amendment would be futile because Sternberg does not identify facts that he could

12   plead to state plausible claims.  A pro se litigant should generally be notified of his complaint's

13   deficiencies and given at least one opportunity to cure them. *Cato v. United States*, 70 F.3d 1103,

14   1106 (9th Cir. 1995).  I therefore have granted Sternberg leave to amend where it would not be

15   futile for him to do so.

16       The amended complaint must be a complete document in and of itself and will supersede

17   the original complaint in its entirety.  Any allegations, parties, or requests for relief from prior

18   papers that are not carried forward in the amended complaint will no longer be before the court.

19   Sternberg is advised to support each claim with factual allegations because all complaints "must

20   contain sufficient allegations of underlying facts to give fair notice and to enable the opposing

21   party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  When

22   claims are alleged against multiple defendants, the complaint should clearly indicate which

23   claims apply to which defendant. *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).

1  Sternberg also should specifically identify each defendant and support each claim with factual

2  allegations about each defendant's actions.  Where multiple claims are alleged, the complaint

3  should identify which factual allegations give rise to each particular claim.  I discourage

4  Sternberg from breaking up his amended complaint into four documents as he did with the FAC.

5  Having to flip between multiple documents to attempt to discern what claims he is asserting

6  against which defendants based on what facts is burdensome.  As discussed in this order and

7  orders on motions to dismiss filed by other defendants, if any of Sternberg's claims are grounded

8  in fraud, he must plead those claims with particularity even if they are not labeled as fraud

9  claims.  Finally, I caution Sternberg to proceed carefully to avoid facing another anti-SLAPP

10  motion like the one filed by Warneck.

11  **D.  Anti-SLAPP Motion**

12  Warneck filed a special motion to dismiss under Nevada's Anti-SLAPP statute, NRS

13  § 41.660.  Warneck argues that Sternberg's abuse of process and civil conspiracy claims are

14  based on statements she made in litigation or to law enforcement, she made those statements in

15  good faith, and her conduct is absolutely privileged, so Sternberg's claims are meritless.  She

16  therefore seeks attorney's fees for having to defend against these claims.

17  Sternberg responds that he sues her for the "non-communicative predicate act of the

18  felony abduction of [the] children," so he is not suing her for statements she made in litigation.

19  ECF No. 132 at 11.  Alternatively, he contends that if I conclude this is a SLAPP suit, then I

20  should grant him the opportunity to conduct discovery to oppose the anti-SLAPP motion because

21  the information he needs is in other people's custody and control, including the custody case file

22  to which he does not have access, as well as any statements Warneck made to law enforcement.

23

1    Warneck replies that the FAC's allegations show that the abuse of process and civil

2    conspiracy claims are based on Warneck's actions and statements in the custody case, not the

3    alleged pre-suit kidnapping.  She contends that Sternberg cannot recharacterize these claims

4    through his opposition to avoid dismissal.  She also argues that Sternberg's request for discovery

5    is procedurally improper because he did not meet Rule 56(d)'s requirements.

6    Under Nevada's anti-SLAPP statute, a "person who engages in a good faith

7    communication in furtherance of the right to petition or the right to free speech in direct

8    connection with an issue of public concern is immune from any civil action for claims based

9    upon the communication." NRS § 41.650.  A defendant may file a special motion to dismiss if

10   the defendant can show "by a preponderance of the evidence, that the claim is based upon a good

11   faith communication in furtherance of the right to petition or the right to free speech in direct

12   connection with an issue of public concern." *Id.* § 41.660(3)(a).  To meet this burden, the

13   defendant must show that his or her communications "fall into one of the four categories of

14   good-faith communications enumerated in NRS 41.637," and that the communications are

15   truthful or were made without knowledge of their falsity. *Panik v. TMM, Inc.*, 538 P.3d 1149,

16   1152-53 (Nev. 2023).

17   As relevant here, a good faith communication in furtherance of the right to petition

18   means:

19       [c]ommunication that is aimed at procuring any governmental or electoral action,
         result or outcome;
20       [c]ommunication of information or a complaint to a Legislator, officer or
         employee of the Federal Government, this state or a political subdivision of this
21       state, regarding a matter reasonably of concern to the respective governmental
         entity; [or]
22       [a w]ritten or oral statement made in direct connection with an issue under
         consideration by a legislative, executive or judicial body, or any other official
23       proceeding authorized by law . . .

1     which is truthful or is made without knowledge of its falsehood.

2 NRS §§ 41.637(2)-(3). "Absent contradictory evidence in the record," the defendant's sworn

3 declaration that she believes her statements were true is sufficient to meet the defendant's burden

4 of showing the communication was in good faith. *Stark v. Lackey*, 458 P.3d 342, 347 (Nev.

5 2020) (en banc).

6     If the defendant makes this initial showing, the burden shifts to the plaintiff to show

7 "with prima facie evidence a probability of prevailing on the claim." *Id.* at 345; NRS

8 § 41.660(3)(b). If a plaintiff can show that information necessary to meet his burden "is in the

9 possession of another party or a third party and is not reasonably available without discovery, the

10 court shall allow limited discovery for the purpose of ascertaining such information." NRS

11 § 41.660(4).

12     <u>1. Civil Conspiracy</u>

13     Warneck has not met her burden at step one of showing that the civil conspiracy claim is

14 based on a communication in furtherance of the right to petition. Sternberg's civil conspiracy

15 claim, as currently pleaded, alleges that Warneck and her attorney "planned, coordinated, and

16 executed the unlawful relocation of [the] children from Nevada as outlined in this complaint for

17 the purpose of harming and interfering with [Sternberg's] rights to [his] children, [and] to

18 ambush [him] in order to obstruct the due course of justice." ECF No. 86-4 at 2. This claim is

19 not based on a communication at all, much less a communication protected under Nevada's anti-

20 SLAPP statute. I therefore deny Warneck's anti-SLAPP motion based on the civil conspiracy

21 claim.

22 ////

23 ////

### 2.  Abuse of Process

Warneck has met her burden of showing that Sternberg's abuse of process claim is based on communications in furtherance of Warneck's petitioning rights.  The abuse of process claim alleges that Warneck initiated the custody and criminal cases in California, filed false documents in those proceedings, and made false statements to the courts and to law enforcement. ECF No. 86-4 at 1.  Those are communications in direct connection with an issue under consideration by a judicial body or statements designed to prompt law enforcement to act.  She also met her burden of establishing that her communications were in good faith because she states in a sworn declaration that she did not knowingly make any false statements in the custody case or to law enforcement. ECF No. 124-1 at 3-4.

Because Warneck met her burden, the burden shifts to Sternberg to show with prima facie evidence a probability of prevailing on his abuse of process claim.  Sternberg has not attempted to do so, instead asserting that he needs discovery because information necessary to rebut the motion is in the possession of others and is not reasonably available without discovery. Specifically, he contends that he has no access to the custody court case file in California.  He asserts that he has caught Warneck and her attorney filing a different version of a document than what was served on him, and he contends that he therefore needs discovery to compare what is in the official court record versus what was served on him.  He also argues that he needs discovery to obtain Warneck's statements to law enforcement.

Warneck asserts that Sternberg's request for discovery is procedurally improper because he did not meet Rule 56(d)'s requirements.  But Warneck cites no authority for the proposition that Rule 56(d) applies to a request for discovery under Nevada's anti-SLAPP statute.  The Supreme Court of Nevada has stated that the showing for discovery under § 41.660(4) "should

include, at the minimum, a description of the facts the plaintiff expects to uncover, and how those facts will enable the plaintiff to demonstrate a prima facie case on any of its claims." *Anderson Bus. Advisors, LLC v. Foley*, Nos. 82633, 82949, 83326, 84499, 84975, 540 P.3d 1055, 2023 WL 8663677, at *4 (Nev. 2023) (declining to address an argument regarding an affidavit requirement under Nevada Rule of Civil Procedure 56(d)). I therefore decline to hold Sternberg to Rule 56(d)'s dictates and instead apply the Supreme Court of Nevada's test.

Sternberg states that he expects to find Warneck (or her attorney on her behalf) made false statements in the custody proceedings. Any such communications are subject to the absolute litigation privilege, even if Warneck knowingly and maliciously made false statements in the court proceedings. *Fink v. Oshins*, 49 P.3d 640, 643 (Nev. 2002). Sternberg thus cannot show a probability of prevailing on his abuse of process claim based on false statements in the custody case because the absolute litigation privilege precludes Warneck's liability. *Williams v. Lazer*, 495 P.3d 93, 99 (Nev. 2021) (en banc) (holding that if the absolute litigation privilege applies, then a plaintiff facing an anti-SLAPP motion cannot meet its burden of showing its claim has minimal merit). Further discovery on the alleged false statements would not change this result. I therefore deny Sternberg's request for further discovery on this issue and grant Warneck's anti-SLAPP motion to dismiss the abuse of process claim based on allegedly false statements in the custody proceedings.

In his request for discovery, Sternberg states that he also would like Warneck's statements to law enforcement, presumably because he believes she made false statements to law enforcement. He also states that he would like to compare the custody court record with his own copies because he previously caught Warneck's attorney serving him with a copy of a filing that did not match the document filed with the court. Sternberg alleges in his FAC that he caught

Warneck's attorney filing a different document than what he was served with, so presumably Sternberg should have been able to state at least one specific example of this, but he did not. *See* ECF No. 86-3 at 11. Sternberg does not describe what false statements or incorrect filings he expects to find, nor does he articulate how those facts will enable him to demonstrate a prima facie case on his abuse of process claim. I therefore deny his request for discovery and grant Warneck's anti-SLAPP motion on the abuse of process claim.

## II. CONCLUSION

I THEREFORE ORDER that defendant Shelley Warneck's motion to dismiss **(ECF No. 124) is GRANTED in part** as set forth in this order.

I FURTHER ORDER that by January 16, 2025, plaintiff Michael Sternberg may file a second amended complaint curing the deficiencies identified in this order if facts exist to do so. If Sternberg does not amend, his claims against defendant Shelley Warneck for tortious interference with parental rights and violation of California Civil Code § 49 will proceed.

DATED this 14th day of November, 2024.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE