# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL C. STERNBERG, | Case No.: 2:23-cv-01466-APG-EJY |
| Plaintiff | **Order Granting in Part and Denying in Part the Nevada Attorney General Defendants' Motion to Dismiss** |
| v. | |
| SHELLEY WARNECK, et al., | [ECF No. 155] |
| Defendants | |

Plaintiff Michael Sternberg sues 75 individuals and entities regarding events arising out of a custody dispute with the mother of his children, defendant Shelley Warneck. In this order, I address the motion to dismiss filed by Nevada Attorney General Aaron Ford and Nevada Attorney General's Office employees William Scott, Gina Lovero, Dave Monroe, Brent Foster, Christine Brady, and Daniel Ulloa (collectively, the NV AG Defendants). The NV AG Defendants move to dismiss the claims against them on a variety of grounds. They also joined defendant City of South Lake Tahoe's motion to dismiss with respect to arguments that a non-discriminatory failure to investigate does not give rise to a claim and punitive damages cannot be recovered against them under Nevada Revised Statutes (NRS) § 41.035. Sternberg opposes dismissal and requests leave to amend. I grant in part the motion to dismiss, with leave to amend.

## I. BACKGROUND

The parties are familiar with the first amended complaint's (FAC) allegations, so I repeat them here only as necessary to resolve the motion to dismiss. According to the FAC, Sternberg sent two certified letters to Ford in February and March 2021 to complain about the removal of his children from Nevada and that NV AG agents Monroe and Lovero refused to investigate the

children's abduction. ECF No. 86-3 at 10.  Sternberg sent one of these letters to Monroe as well. *Id.*  Over the next few months, he sent emails to various individuals, including several to Monroe, relating to the alleged abduction of his children and fraud on the California court. *Id.* at 10-11.

Sternberg alleges that on September 3, 2021, Rich Horn, an investigator with the El Dorado County District Attorney's Office, called him and accused him of violating family court orders. *Id.* at 13.  In response, Sternberg emailed Horn, Monroe, and others a notice under California Penal Code 278.7[1] and attached letters he had previously sent regarding alleged fraud upon the California court as well as alleged misconduct by a California judge. *Id.* at 13.  A few days later, Monroe and Lovero came to Sternberg's home. *Id.*  Sternberg told them about the alleged fraud Warneck and her attorney committed on the California court and that he had been subject to due process violations. *Id.*  According to the FAC, Monroe stated that he had read the emails Sternberg had sent him but told Sternberg that "California corruption was not [Monroe's] problem." *Id.*

The next day, Sternberg emailed Monroe and asked for the name and contact information for his supervisor. *Id.*  Monroe responded that Shawn Bowen was his supervisor. *Id.*  Sternberg later learned that the chain of command from Monroe to Ford was Monroe, Bowen, Scott, Brady, and then Ford as the AG. *Id.*  Sternberg left a message for Scott in mid-September 2021, which Scott returned about a week later. *Id.* at 13-14.  Scott allegedly told Sternberg he would not investigate and told Sternberg, "who are you to say whether this is a crime." *Id.* at 14.

---

[1] Section 278.7 requires a person who may be subject to criminal punishment under § 278.5 for withholding a child from a lawful custodian to file a notice with the district attorney's office explaining the reason the child was "taken, enticed away, kept, withheld, or concealed." Cal. Penal Code § 278.7(c).

According to the FAC, Monroe, Lovero, and others coordinated with the Clark County School District Police to pull over Sternberg's car while he and the children were in it. *Id.* Monroe, Lovero, Foster, and other individuals removed Sternberg from the car at gunpoint, handcuffed him, seized his children, and took his firearm. *Id.* at 14.  Monroe and Lovero arrested Sternberg based on a California warrant despite allegedly knowing that it was obtained by fraud and booked him into the Clark County Detention Center. *Id.*

According to the FAC, Sternberg spoke with Foster in October and November 2021 and told him about the false arrest and seizure of the children and firearm. *Id.* at 16.  Sternberg alleges that Foster did not disclose at that time that he had been involved in Sternberg's arrest, a fact that Sternberg did not learn until he obtained a copy of the police report. *Id.*

Sternberg called Scott again in March 2022 and left a message stating that he wanted to file a complaint against Monroe and Lovero related to his arrest and the seizure of his children and his firearm. *Id.* at 16.  Scott did not call him back. *Id.*  Sternberg thereafter sent a letter to the NV AG's integrity unit complaining about Monroe and Lovero. *Id.*  In early August 2022, Sternberg delivered a copy of the police report from his arrest to two NV AG agents, one of who was Ulloa. *Id.* at 17.  Later that month, Sternberg spoke to Brady by phone, at which time he reported to her his false arrest and the unlawful seizure of his children and firearm. *Id.* at 17. Brady told him she would order the return of the firearm and stated he could file an online complaint against the agents, which Sternberg subsequently filed. *Id.* at 17.  A few days later, Ulloa returned the firearm to Sternberg. *Id.*  After Sternberg delivered a letter to Brady complaining that no one had investigated his complaints, Scott called to tell Sternberg that Scott had investigated and found no wrongdoing. *Id.* at 17.

1      In October 2022, Sternberg delivered a letter to Ford detailing his history with the

2 office, reporting alleged misconduct by Ford's agents, and requesting a meeting. *Id.* at 18.  Ford

3 did not respond. *Id.*

4      Based on these allegations, Sternberg alleges that Monroe, Lovero, Scott, and Ford

5 violated various constitutional rights by impeding him from reporting the abduction of his

6 children, refusing to investigate, refusing to arrest the perpetrators, and withholding his firearm

7 without a warrant. ECF No. 86-4 at 12.  He also alleges that Monroe and Lovero falsely arrested

8 him and seized his children and firearm "based on a California warrant that they knew had been

9 obtained by fraud." *Id.*  He alleges Monroe, Lovero, and Foster violated his rights by using

10 excessive force to effect the arrest because they pointed guns at Sternberg or allowed others to do

11 so.[2] *Id.*  And he alleges Foster, Ulloa, Scott, Brady, and Ford violated his rights by failing to

12 investigate and impeding the report and prosecution of his false arrest and the seizure of his

13 children and property. *Id.*  He further alleges these defendants withheld his firearm for almost a

14 year without a warrant. *Id.*  According to the FAC, Brady and Ford violated the Nevada Rules of

15 Professional Conduct by not reporting each other's misconduct. *Id.*  He also alleges that Monroe,

16 Lovero, Foster, Scott, Brady, and Ford conspired with Warneck and others to obstruct his

17 constitutional rights by coordinating his false arrest based on "fraudulent information." *Id.* at 13.

18 **II.  ANALYSIS**

19      **A.  Judicial Notice**

20      The NV AG Defendants request that I take judicial notice of a court filing in the

21 California custody case, court dockets in the California criminal case, the warrant for Sternberg's

22

23

---

[2] Sternberg alleges that the agents also pointed guns at the children, but as discussed below, Sternberg cannot represent his children pro se in this case.

arrest, and the docket for the Las Vegas Justice Court.  The NV AG Defendants argue that judicial notice is appropriate because these documents are matters of public record.  Sternberg opposes.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  When "a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001) (quotation omitted).  I "may not take judicial notice of a fact that is "subject to reasonable dispute." *Id.* at 689 (quoting Fed. R. Evid. 201(b)).

### 1.  Exhibit A

Exhibit A appears to be an order out of the Santa Clara County family court in which Judge Thomas Kuhnle found that the court previously ordered Sternberg to return the children to Warneck by August 22, 2021, but Sternberg did not do so. ECF No. 155-2 at 3-4.  Judge Kuhnle thus awarded Warneck temporary sole legal and physical custody and ordered Sternberg to return the children immediately. *Id.* at 4.  He also ordered the El Dorado and Santa Clara County District Attorney's Offices to "take all necessary steps to locate and return" the children to Warneck. *Id.* at 5.

Sternberg objects to me taking judicial notice of this document because he does not know how the NV AG Defendants obtained a copy of an order from the custody court when he has been denied access to his own court file in that case for years.  He argues that until he gets access to the court record, he disputes the authenticity of any document from that docket.

1    I decline to take judicial notice of this document because it has no bearing on my

2    resolution of the NV AG Defendants' motion to dismiss.

3        2.  Exhibits B and E

4        Exhibits B and E purport to be portions of the docket from the Superior Court in El

5    Dorado County relating to Sternberg's nolo contendere plea to the criminal charge against him.

6    Sternberg objects because he contends the exhibits are erroneous.  He specifically notes that

7    exhibit E is "missing key entries from the Register of Action [that he] personally obtained from

8    the courthouse." ECF No. 167 at 7.  Additionally, he argues that the NV AG Defendants did not

9    ask me to take judicial notice of the actual criminal complaint and arrest warrant application

10   because, he contends, they know those documents contain false statements and omissions.  And

11   he contends that the NV AG Defendants have documents that he gave to them prior to the

12   warrant being issued that show the warrant for his arrest on criminal charges was obtained by

13   fraud.

14       I decline to take judicial notice of these document because they are not necessary to the

15   resolution of this motion.  Sternberg alleges in the FAC that he was criminally charged and

16   entered a nolo contendere plea. ECF No. 86-3 at 18.

17       3.  Exhibit C

18       Although the NV AG Defendants describe this document in their motion as the warrant,

19   in the index of exhibits they describe exhibit C as "Warrant Information" for Sternberg's arrest.

20   ECF Nos. 155 at 4, 8; 155-1.  Page 1 of exhibit C is a printout from an unidentified source that

21   appears to set forth a "warrant abstract," including information about the warrant. ECF No. 155-

22   4 at 2.  Pages 2 and 3 are a "warrant worksheet." *Id.* at 3-4.  It is unclear from the document who

23

1  prepared this worksheet.  I have no basis to conclude that this is a "public document" subject to

2  judicial notice, so I do not take judicial notice of it.

3                      4.  Exhibit D

4          Exhibit D is the docket from the Nevada criminal case documenting Sternberg's arrest in

5  Nevada on the California warrant.  Sternberg objects because he contends that the exhibit is

6  erroneous.  Additionally, he argues that the NV AG Defendants did not ask me to take judicial

7  notice of the actual criminal complaint and arrest warrant application because, he contends, they

8  know those documents contain false statements and omissions.  And he contends that the NV AG

9  Defendants have documents that he gave to them prior to the warrant that show the warrant for

10  his arrest on criminal charges was obtained by fraud.  I decline to take judicial notice of this

11  document because it is not necessary to resolution of this motion.

12      **B.  Eleventh Amendment**

13          The NV AG Defendants argue that the Eleventh Amendment bars any claims for

14  damages against them in their official capacities.  Sternberg did not respond to this argument.

15  He therefore consents to the granting of this portion of the motion. LR 7-2(d).  Moreover,

16  Eleventh Amendment immunity "shields state officials from official capacity suits," except

17  "where the relief sought is prospective in nature and is based on an ongoing violation of the

18  plaintiff's federal constitutional or statutory rights." *Krainski v. Nev. ex rel. Bd. of Regents of*

19  *Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967-68 (9th Cir. 2010) (simplified).  Consequently, I

20  dismiss Sternberg's claims for damages against the NV AG Defendants in their official

21  capacities with prejudice to reasserting those claims in this court, but without prejudice to

22  Sternberg suing in state court.

23  / / / /

**C. *Rooker-Feldman***

The NV AG Defendants argue that Sternberg's claims are barred by the *Rooker-Feldman* doctrine because he seeks to appeal the rulings in his criminal case. They contend that if Sternberg wanted to challenge allegedly false statements in the warrant for his arrest, he could and should have done so in those proceedings. They note that Sternberg plead nolo contendere[3] to a criminal charge, and he cannot now challenge that conviction through this civil action.

Sternberg responds that *Rooker-Feldman* does not apply because he is not a state court loser, as his claims against these defendants have not been adjudicated in any court. He also argues that there are no final judgments in the custody case. Sternberg concedes that "it may be that for now, [he] cannot pursue claims that would [undo his] plea." ECF No. 167 at 8. But he asserts that "has nothing to do with *Rooker-Feldman* and also has nothing to do with a knowing false arrest, excessive force, unreasonable seizure of [his] children, and unreasonable seizure of [his] firearm for over a year without a warrant." *Id.* He argues that his arrest in Nevada was based not on the California warrant but on NRS 179.203, with which the NV AG Defendants did not comply. He contends that because he has asserted independent claims, the *Rooker-Feldman* doctrine does not apply. In reply, the NV AG Defendants argue that Sternberg's new theory that his arrest violated NRS § 179.203 was not pleaded in the FAC.

The *Rooker-Feldman* doctrine arises from two Supreme Court decisions defining federal district court jurisdiction and the relationship between federal district courts and state courts. Federal district courts possess "strictly original" jurisdiction and thus have no power to exercise

---

[3] Sternberg takes issue with the NV AG Defendants stating in their briefs that he pleaded guilty to a criminal charge because he entered a nolo contendere plea. However, under California law, a nolo contendere or no contest plea "shall be considered the same as a plea of guilty and . . . upon a plea of nolo contendere, the court shall find the defendant guilty." Cal. Penal Code § 1016(3).

1   subject matter jurisdiction over a de facto appeal from a state court judgment. *See Rooker v.*

2   *Fidelity Trust Co.*, 263 U.S. 413, 414-17 (1923); *Dist. of Columbia Ct. of Appeals, et al. v.*

3   *Feldman*, 460 U.S. 462, 482 (1983); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir.

4   2004).  Only the Supreme Court of the United States has jurisdiction to review such judgments.

5   *Feldman*, 460 U.S. at 482; *see also* 28 U.S.C. § 1257.  The *Rooker-Feldman* doctrine "is

6   confined to cases of the kind from which the doctrine acquired its name: cases brought by state-

7   court losers complaining of injuries caused by state-court judgments rendered before the district

8   court proceedings commenced and inviting district court review and rejection of those

9   judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  If the

10  *Rooker-Feldman* doctrine applies, I must dismiss for lack of subject matter jurisdiction.

11  *Kougasian*, 359 F.3d at 1139.

12       The *Rooker-Feldman* doctrine does not deprive federal district courts of subject matter

13  jurisdiction in every case in which a party attempts to litigate in federal court a matter previously

14  litigated in state court. *Exxon Mobil*, 544 U.S. at 293.  If a plaintiff presents an "independent

15  claim, albeit one that denies a legal conclusion that a state court has reached in a case to which

16  he was a party . . ., then there is jurisdiction and state law determines whether the defendant

17  prevails under principles of preclusion." *Id.* (quotation omitted).  For example, where a plaintiff

18  asserts an adverse party committed extrinsic fraud on the state court, *Rooker-Feldman* does not

19  bar the suit because the plaintiff states an independent claim. *Kougasian*, 359 F.3d at 1141.

20  "Extrinsic fraud on a court is, by definition, not an error by that court.  It is, rather, a wrongful

21  act committed by the party or parties who engaged in the fraud." *Id.*  "*Rooker-Feldman* therefore

22  does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for

23

1    extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that

2    fraud." *Id.*

3       If there is a de facto appeal, the federal plaintiff "may not seek to litigate an issue that is

4    'inextricably intertwined' with the state court judicial decision from which the forbidden de facto

5    appeal is brought." *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003). A claim is "inextricably

6    intertwined with the state-court judgment if the federal claim succeeds only to the extent that the

7    state court wrongly decided the issues before it." *Cooper v. Ramos*, 704 F.3d 772, 779 (9th Cir.

8    2012) (quotation omitted). Thus, a claim is inextricably intertwined "where the relief requested

9    in the federal action would effectively reverse the state court decision or void its ruling." *Id.*

10   (quotation omitted).

11      Most of Sternberg's allegations against the NV AG Defendants are not barred by *Rooker-*

12   *Feldman*. He alleges these defendants ignored him, refused to investigate his complaints against

13   others, used excessive force during his arrest, and seized his firearm without a warrant. Nothing

14   before me suggests that any of these allegations are de facto appeals of state court rulings.

15   However, Sternberg's allegations that he was arrested based on false allegations in the California

16   warrant is a de facto appeal of his nolo contendere plea to a misdemeanor violation of California

17   Penal Code § 278.5, which punishes a "person who takes, entices away, keeps, withholds, or

18   conceals a child and maliciously deprives a lawful custodian of a right to custody." He is

19   arguing that the charge to which he pleaded was based on false allegations because there is no

20   indication that the charge was based on allegations other than what was in the warrant.

21   Sternberg concedes that he cannot currently pursue claims that would effectively undo his plea. I

22   therefore dismiss under *Rooker-Feldman* Sternberg's allegations against the NV AG Defendants

23   that he was arrested based on known false allegations in the California warrant. This dismissal is

1  with prejudice to reasserting those claims in this case, but without prejudice to Sternberg

2  pursuing whatever remedies he may have in California state court.

3          In his opposition, Sternberg argues that even if he cannot now challenge the warrant out

4  of California, he was arrested in Nevada under NRS § 179.203 because that is what is listed on

5  his booking sheet.  He contends the NV AG Defendants did not comply with § 179.203's

6  requirement that the charge against him had to be on oath before a Nevada judge to obtain a

7  Nevada warrant.  These allegations are not in the FAC.  Instead, the FAC alleges that Sternberg

8  was arrested based on the California warrant that the NV AG Defendants allegedly knew was

9  obtained by fraud. *See* ECF No. 86-3 at 15 (alleging that Monroe and Lovero "orchestrated

10  [Sternberg's] arrest on the California warrant that they knew had been obtained by fraud").  He

11  does not allege there was a Nevada arrest warrant, much less that it was improperly obtained.

12          An allegation that the NV AG Defendants needed a Nevada warrant and failed to

13  properly obtain one before arresting him would not constitute a de facto appeal of his underlying

14  criminal conviction in California.  Rather, it would challenge the manner of his arrest in Nevada

15  without challenging the factual basis for the California warrant or his subsequent plea.  However,

16  it would challenge the result of the Nevada state court proceeding based on an alleged error of

17  the court in not requiring a proper Nevada warrant.  Sternberg cannot pursue a de facto appeal of

18  the Nevada state court proceeding in this court any more than he could with respect to his

19  California case.  I therefore deny Sternberg leave to amend to add facts related to this alleged

20  defect in the Nevada state court proceedings, without prejudice to Sternberg seeking whatever

21  remedies he may have in Nevada state court.

22  / / / /

23  / / / /

**D.  Section 1983 False Arrest and Imprisonment**

The NV AG Defendants argue that Sternberg's § 1983 claims for false arrest and imprisonment fail as a matter of law because they had probable cause to arrest and arrested him pursuant to a facially valid warrant.  They also contend they are entitled to qualified immunity because they relied on the warrant, and Sternberg has pleaded no facts that would show that the arresting officers acted with deliberate or reckless disregard for the truth.

I need not address these arguments because Sternberg's false arrest and imprisonment claims are based on his allegation that the NV AG Defendants arrested him based on the California warrant that they allegedly knew was obtained by fraud.  These claims therefore are barred by the *Rooker-Feldman* doctrine so I dismiss them.  The dismissal is with prejudice to reasserting the claims in this court, but without prejudice to Sternberg pursuing remedies in state court.

**E.  Section 1983 Fourteenth Amendment Due Process**

The NV AG Defendants argue that Sternberg's Fourteenth Amendment claim based on alleged fabrication of evidence in his criminal case fails because he does not identify what evidence of fraud he allegedly sent to the NV AG Defendants and because he should have pursued relief in the criminal case.

I need not address these arguments because Sternberg's due process claim is based on his allegation that the NV AG Defendants arrested him based on the California warrant that they allegedly knew was obtained by fraud.  This claim is therefore barred by the *Rooker-Feldman* doctrine so I dismiss it.  The dismissal is with prejudice to reasserting it in this court, but without prejudice to Sternberg pursuing remedies in state court.

/ / / /

12

### F. Statute of Limitations

The NV AG Defendants argue that Sternberg's § 1983 and § 1985 claims are time-barred. Sternberg responds that he was arrested on September 29, 2021, which is within two years of when he filed his original complaint, and he alleges facts that occurred in 2022. He asserts that the defendants continue to violate his rights by "failing to take actions within their control and which are mandatory to end their unreasonable seizure of [his] children and their interference with [his] clearly established right to the care[,] custody[,] and control of [his] children." ECF No. 167 at 9.

I may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) as time-barred "only when the running of the statute of limitations is apparent on the face of the complaint." *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (simplified). The limitation period for Sternberg's § 1983 and § 1985 claims is governed by the forum state's limitation period for personal injury actions. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *McDougal v. Cnty. of Imperial*, 942 F.2d 668, 673-74 (9th Cir. 1991). In Nevada, the limitation period for personal injury claims is two years. Nev. Rev. Stat. § 11.190(4)(e).

For Sternberg's federal claims, federal law determines when a civil rights claim accrues. *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004) (quotation omitted).

For his state law claims, a cause of action generally accrues "when the wrong occurs and a party sustains injuries for which relief could be sought." *Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990); *see also State ex rel. Dep't of Transp. v. Pub. Emps.' Ret. Sys. of Nev.*, 83 P.3d 815,

817 (Nev. 2004) (en banc) ("A cause of action 'accrues' when a suit may be maintained

thereon." (quotation omitted)).  Nevada has adopted the discovery rule, and thus time limits

generally "do not commence and the cause of action does not 'accrue' until the aggrieved party

knew, or reasonably should have known, of the facts giving rise to the damage or injury." *G & H*

*Assocs. v. Ernest W. Hahn, Inc.*, 934 P.2d 229, 233 (Nev. 1997).

Sternberg filed his complaint in this case against Monroe, Lovero, Scott, and Ford on

September 20, 2023.[4] ECF No. 1.  Consequently, claims against these defendants accruing prior

to September 20, 2021 are time-barred absent some reason to extend the limitation period.

Sternberg alleges that on September 29, 2021, he was arrested and his children and firearm

seized. *Id.* at 16-17.  Because he filed his claims against these defendants based on the alleged

false arrest and seizure of his children and firearm within two years of the arrest and seizures, the

claims are not time-barred.

However, Sternberg did not file a complaint against Foster, Brady, and Ulloa until he

filed the FAC on February 20, 2024. ECF No. 86.  Consequently, claims against these defendants

accruing prior to February 20, 2022 are time-barred absent some reason to extend the limitation

period.  Sternberg does not allege any facts relating to Foster after February 20, 2022 except that

Foster and the other NV AG Defendants kept Sternberg's firearm until August 2022.  The claim

of an unreasonably lengthy seizure of the firearm is therefore timely against Foster, but none of

the other allegations against him are timely.

As for Brady and Ulloa, Sternberg alleges that in August 2022 he handed Ulloa a copy of

the police report relating to his arrest. ECF No. 86-3 at 17.  He also alleges that he spoke with

---

[4] Sternberg filed the complaint in the consolidated action on December 7, 2023. *Sternberg v. Warneck*, 2:23-cv-2022-APG-EJY, ECF No. 1.

1   Brady in August 2022 and she told him she would have his firearm returned to him and told him

2   to file an online complaint against Monroe and Lovero. *Id.* Ulloa returned his firearm a few days

3   later. *Id.* Sternberg also alleges that he delivered a complaint letter to Brady in September 2022

4   because no one responded to his online complaint that she told him to make. *Id.* Setting aside

5   whether any of this conduct suffices to support a claim, claims based on these allegations are

6   timely.

7        Finally, Sternberg alleges that Brady and Ford violated the Nevada Rules of Professional

8   Conduct by not investigating, not prosecuting others, withholding his firearm, and by not

9   reporting each other's misconduct. ECF No. 86-4 at 12. It is not apparent from the face of the

10  complaint when Sternberg contends Brady and Ford took or failed to take these actions, although

11  the alleged withholding of the firearm occurred up until August 2022. Accordingly, it is not

12  clear from the face of the FAC that Sternberg's claims about Brady and Ford violating the Rules

13  of Professional Conduct are time-barred. I therefore do not dismiss them.

14       Sternberg generally asserts that his claims are timely because he is alleging continuing

15  violations. The continuing violation doctrine, which "allow[s] a plaintiff to seek relief for events

16  outside of the limitations period," applies to claims under § 1983. *Knox*, 260 F.3d at 1013.

17  However, continuing violations must be distinguished from continuing impact from past

18  violations. *Id.* (stating that "mere continuing impact from past violations is not actionable"

19  (quotation and emphasis omitted)). Further, "discrete . . . acts are not actionable if time barred,

20  even when they are related to acts alleged in [a] timely filed" complaint because "[e]ach discrete

21  . . . act starts a new clock for filing [a complaint] alleging that act." *Bird v. Dep't of Hum. Servs.*,

22  935 F.3d 738, 747 (9th Cir. 2019) (quotation omitted).

23

Because Sternberg alleges only discrete acts against him, it is apparent from the face of the FAC that his claims based on conduct prior to September 20, 2021 are untimely as against Monroe, Lovero, Scott, and Ford.  Likewise, his claims against Foster, Brady, and Ulloa based on conduct prior to February 20, 2022 are untimely.

### G.  Other Constitutional Claims

The NV AG Defendants argue that because there was a valid warrant there was no Fourth Amendment violation, and Sternberg was not compelled to testify against himself so there was no Fifth Amendment violation.  They also argue that although Sternberg cites to the First, Second, and Fourteenth Amendments, they do not know what the basis for those claims are, so those claims should be dismissed.  Additionally, they contend that Sternberg posits no allegations against Scott, Ulloa, Brady, and Ford other than that Sternberg emailed them, sent them a letter, or told them in person about others allegedly violating his rights.  They contend that cannot support any claim against them.

Sternberg responds that his Fourth Amendment claim is for unreasonably seizing him, his children, and his firearm.  He states that his First Amendment claim is for depriving him of his right to familial association.  He states that his Second Amendment claim is for seizing his firearm for a year without a warrant.  And he states that his Fourteenth Amendment claim is for depriving him of due process and the equal protection of the laws.  Finally, he asserts that his state constitutional claims have the same bases.  He also argues that the defendants refused to investigate his claims despite his reports of corruption to them, then arrested him using excessive force and seized his children and property.  The NV AG Defendants reply that regardless of how Sternberg labels his claims, they all arise out of his arrest, which was done pursuant to a facially valid warrant.

1                    1.  Fifth Amendment

2            Sternberg does not identify the basis of his Fifth Amendment claim.  He therefore

3    consents to me granting the NV AG Defendants' motion to dismiss it. LR 7-2(d).  I grant

4    Sternberg leave to amend this claim if facts exist to do so.

5                    2.  Fourth and Second Amendments

6            To the extent Sternberg's Fourth Amendment claim is for unreasonably seizing him

7    because the warrant was allegedly procured through fraud, that claim is barred by *Rooker-*

8    *Feldman*.  However, *Rooker-Feldman* does not bar Sternberg from suing for an arrest that he

9    alleges was conducted through the use of excessive force.  Sternberg alleges that he was seized at

10   gunpoint, which he contends was excessive.  The NV AG Defendants do not address this

11   allegation, and it is not clear why that would constitute a de facto appeal of either the California

12   or Nevada state court proceedings, so this aspect of Sternberg's Fourth Amendment claim

13   remains pending against the NV AG Defendants who allegedly participated in the arrest: Monroe

14   and Lovero.[5]  However, Sternberg does not plausibly allege that the other defendants personally

15   participated in the alleged use of excessive force. *See Jones v. Williams*, 297 F.3d 930, 934 (9th

16   Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983

17   there must be a showing of personal participation in the alleged rights deprivation . . . .").  I

18   therefore dismiss the Fourth Amendment excessive force claim against Scott, Brady, Ulloa, and

19   Ford.  I grant Sternberg leave to amend as to these defendants if facts exist to support their

20   liability on the excessive force claim.

21           Sternberg also alleges the NV AG Defendants seized his firearm and kept it for nearly a

22   year, in violation of both the Fourth and Second Amendments.  The NV AG Defendants do not

23

---

[5] As discussed above, this claim is dismissed as untimely as to Foster.

1  address whether that was an unreasonable seizure or whether it violated Sternberg's Second

2  Amendment rights.  Nothing before me suggests that Sternberg's challenge to the continued

3  seizure of his gun is a de facto appeal of either the California or Nevada state court proceedings.

4  These claims therefore remain pending against Monroe and Lovero for the initial seizure, and

5  Monroe, Lovero, and Foster for the length of the seizure.

6         However, there are no factual allegations that any of the other defendants participated in

7  the initial seizure or that Ulloa or Ford participated in the continuing seizure.  And although

8  Sternberg alleges that he complained to Scott about the seizure of the gun, he alleges only that

9  Scott did not return his call. ECF No. 86-3 at 16.  Sternberg does not adequately allege Scott's

10 personal participation in the continuing seizure of the gun based solely on an unanswered phone

11 call.  And he alleges that Brady responded to him and arranged for the return of his firearm, so it

12 is unclear how that could support a claim against her. *Id.* at 17.  However, I grant Sternberg leave

13 to amend if he can plead facts that would support a Fourth or Second Amendment claim based

14 on the seizure of the firearm against Ulloa, Ford, Scott, and Brady.

15                 3.  First Amendment

16        Sternberg contends that his First Amendment claim is based on depriving him of his right

17 to familial association.  The Ninth Circuit recognizes a right to familial association under the

18 First and Fourteenth Amendments. *See Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018).

19 However, because this claim appears to be grounded in his arrest and the seizure of the children

20 based on the warrant that allegedly was procured by fraud it is barred by *Rooker-Feldman*, so I

21 dismiss it against all NV AG Defendants.  The dismissal is with prejudice to reasserting it in this

22 court, but without prejudice to Sternberg pursuing remedies in state court.

23 / / / /

1          4.  Fourteenth Amendment

2          Sternberg asserts that his Fourteenth Amendment claim is for depriving him of due

3    process and the equal protection of the laws.  It is not entirely clear from the FAC or Sternberg's

4    response, but it appears that this claim is based on the alleged fabrications supporting the

5    warrant.  If so, it is barred by *Rooker-Feldman*.  But I grant Sternberg leave to amend to clarify

6    the basis of his Fourteenth Amendment claim against the NV AG Defendants if it is grounded in

7    something other than the alleged faulty warrant.

8          5.  State Constitutional Claims

9          Sternberg asserts that his state constitutional claims have the same bases as his federal

10   claims.  Because the parties offer no separate argument regarding the state law claims, those

11   claims are dismissed or remain pending consistent with my rulings on the federal claims.

12   **H.  Section 1983 Conspiracy Claim**

13         The NV AG Defendants argue that Sternberg's § 1983 conspiracy claim fails because he

14   has not plausibly alleged an underlying violation of his constitutional rights.  Sternberg responds

15   that because he has plausibly alleged constitutional torts, his conspiracy claim should not be

16   dismissed.  The NV AG Defendants argue in reply that even if Sternberg could allege an

17   underlying wrong, he has not alleged facts to plausibly infer an agreement to violate his rights.

18         As discussed above, Sternberg has identified potential constitutional violations that the

19   NV AG Defendants have not addressed in their motion.  Consequently, I deny the motion to

20   dismiss Sternberg's § 1983 conspiracy claim.  I decline to consider the NV AG Defendants

21   argument, raised for the first time in their reply, that Sternberg has not plausibly alleged facts to

22   infer the NV AG Defendants conspired with anyone to violate his rights. *Zamani v. Carnes*, 491

23   F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first

time in a reply brief.").  However, I grant Sternberg leave to amend to make factual allegations in response to this argument so that he can avoid another motion to dismiss on this basis.

### I. Supervisory Defendants

The NV AG Defendants argue that Ford, Brady, and Scott are being sued as supervisors of Monroe, Lovero, Foster, and Ulloa, but there is no respondeat superior liability under § 1983. They argue that the only allegations against them beyond being the other defendants' supervisors are that Sternberg sent them emails and a letter and they refused to investigate.  They contend there is no allegation they had any personal involvement in his arrest.

Sternberg responds that he spoke to Scott twice and Scott has "refused to take any action within his power to end the unreasonable seizure of [Sternberg's] children." ECF No. 167 at 3. Sternberg asserts that he also spoke to Brady and reported to her that he was falsely arrested, his children were unreasonably seized, and his firearm was unreasonably seized.  He states that after filing a civil rights complaint as she suggested and following up with a letter, she ignored the complaint and has done nothing to respond.  He argues that Brady must have reported the situation to Ford, but neither has done anything to end the seizure of his children, although Brady ordered that his firearm be returned to him.  Sternberg also argues that Ford is a properly named defendant for purposes of injunctive relief because Sternberg is going to challenge Nevada's law and practices related to arrest and detainment of fugitives wanted in other states.

Sternberg does not allege facts to support supervisory liability against Scott, Brady, or Ford. *See Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (describing ways supervisors can be held liable under § 1983).  Sternberg alleges that they did not respond to him or failed to investigate his complaints.  But there is no constitutional right to an investigation or that an investigation be performed in any particular manner so long as no other constitutional rights are

1    violated. *See Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001) (stating "there is no

2    constitutional due process right . . . to have [an] investigation carried out in a particular way");

3    *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) ("The appellants claim that the right

4    infringed was a due process right to have a full and fair police investigation into violence done

5    against themselves or their children.  However, we can find no instance where the courts have

6    recognized inadequate investigation as sufficient to state a civil rights claim unless there was

7    another recognized constitutional right involved.").  Sternberg does not allege, for example, that

8    the reason these defendants did not investigate his complaints was due to something like

9    intentional race discrimination.  Mere dissatisfaction that law enforcement did not respond to a

10   complaint or did not investigate in the way the plaintiff desires does not amount to a

11   constitutional violation.  However, I grant Sternberg leave to amend to allege facts supporting

12   supervisory liability if facts exist to do so.

13        **J.  Section 1985 Claims**

14        The NV AG Defendants joined the City of South Lake Tahoe's (CSLT) motion to

15   dismiss on the ground that Sternberg's § 1985 claims fail because Sternberg does not allege any

16   discriminatory animus.  In response to the CSLT's motion, Sternberg asserted that he can cure

17   this through amendment.

18        Sternberg concedes that he has not adequately alleged his § 1985 claims, so I dismiss

19   them.  I grant him leave to amend if he can allege facts to do so.

20        **K.  Punitive Damages**

21        The NV AG Defendants joined the CSLT's motion to dismiss on the ground that

22   Sternberg cannot recover punitive damages under § 1983 or § 1985 against a government entity.

23   ECF Nos. 198; 209.  They also purport to join CSLT's argument regarding the unavailability of

punitive damages against them under NRS § 41.035 (although CSLT argued that as a California city it was not protected by Nevada law, and thus did not seek protection under NRS § 41.035). Sternberg responded to CSLT's motion by agreeing that he could not pursue punitive damages against CSLT under § 1983. He also argued that although CSLT argued California law applied to it, it did not demonstrate how California law protected CSLT from punitive damages.

The NV AG Defendants' joinder is not sufficiently developed on these points. CSLT was an entity, but the NV AG Defendants are individuals. The NV AG Defendants' joinder does not explain how this argument applies to individuals. Likewise, their joinder to the NRS § 41.035 argument is undeveloped because CSLT did not seek protection under that Nevada statute. If the NV AG Defendants want to raise these arguments for themselves, they should do so in their own motion where they meaningfully articulate and support arguments that apply to them. However, I recommend that the parties discuss this matter to perhaps reach an agreement, if appropriate, without the need for further motion practice.

### L. Non-Constitutional State Law Claims

The NV AG Defendants move to dismiss Sternberg's claims for violations of NRS § 125C.0075, tortious interference with parental rights, abuse of process, and civil conspiracy. Sternberg responds that he did not assert these claims against the NV AG Defendants. ECF No. 167 at 13. I therefore deny this portion of the motion as moot.

### M. Professional Misconduct

The NV AG Defendants argue that Sternberg's claim alleging that Brady and Ford violated the Nevada Rules of Professional Conduct fails because it is brought under 28 U.S.C. § 2201, and that statute allows for declaratory judgment only over federal issues. Sternberg responds that he believes that when a violation of the Rules results in the deprivation of

1  constitutional rights, then the claim involves federal issues.  Alternatively, he states that he could

2  amend to seek declaratory relief under Nevada law.

3      The NV AG Defendants cite no law to support their proposition that § 2201 applies only

4  where the underlying issue is federal.  To the extent the NV AG Defendants are arguing that

5  § 2201 is not an independent source of federal court jurisdiction, that is not an issue in this case

6  because Sternberg pleads federal claims that support jurisdiction in this court.  His other claims

7  would fall within the court's supplemental jurisdiction under 28 U.S.C. § 1367(a) so long as his

8  claims "are so related to claims in the action within" the court's jurisdiction that "they form part

9  of the same case or controversy under Article III of the United States Constitution."  I therefore

10  deny this portion of their motion.

11  **N.  Representing the Children**

12      The NV AG Defendants argue that Sternberg cannot represent his children and instead

13  must obtain an attorney for them.  Sternberg responds that if I dismiss the children's claims, I

14  should do so without prejudice to them bringing their claims once they reach age 18.

15  Alternatively, he argues that he should be allowed to represent his children pro se to protect their

16  rights, and he cites a case out of the Fifth Circuit in support.  Finally, he asserts that NRS

17  § 12.080 states that he may pursue a case on behalf of his children, and it does not state that he

18  must have a lawyer representing them.

19      The Ninth Circuit recently addressed this issue and concluded that the law in the Ninth

20  Circuit remains, at least for now, that "a parent may not proceed pro se on [his] children's

21  behalf" in federal court. *Grizzell v. San Elijo Elementary Sch.*, 110 F.4th 1177, 1179-81 (9th Cir.

22  2024) (acknowledging the Fifth Circuit's recent decision in *Raskin on behalf of JD v. Dallas*

23  *Independent School District*, 69 F.4th 280 (5th Cir. 2023), but concluding that prior Ninth Circuit

authority compels a different result).  I am bound by this precedent.  I therefore dismiss all claims against any defendant that Sternberg purports to bring pro se on behalf of his children, without prejudice to the children asserting those claims either on their own once they reach the age of majority or through counsel.

**III.  CONCLUSION**

I THEREFORE ORDER that NV AG Defendants' motion to dismiss **(ECF No. 155) is GRANTED in part** as set forth in this order.

I FURTHER ORDER that by January 16, 2025, plaintiff Michael Sternberg may file a second amended complaint curing the deficiencies identified in this order if facts exist to do so. If Sternberg does not elect to amend, the following claims will proceed against the following NV AG Defendants:

- Fourth Amendment excessive force against Monroe and Lovero;
- Fourth and Second Amendment unreasonable initial seizure of the firearm under both the federal and Nevada state constitutions against Monroe and Lovero;
- Fourth and Second Amendment unreasonably lengthy seizure of the firearm under both the federal and Nevada state constitutions against Monroe, Lovero, and Foster;
- Section 1983 conspiracy against all NV AG Defendants; and
- Declaratory relief regarding professional misconduct against Brady and Ford.

Additionally, as of now, Sternberg's request for punitive damages against these defendants has not been dismissed.

I FURTHER ORDER the clerk of court to **seal ECF No. 155-2** because it contains the names of Sternberg's minor children.  I also order the clerk of court to **seal ECF No. 155-4** because it contains Sternberg's personal identifiers, such as his birthdate.  The NV AG

Defendants shall file publicly available redacted versions of those documents by December 3, 2024.  I admonish all parties to take care to comply with Local Rule IC 6-1 in future filings.

DATED this 14th day of November, 2024.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE