# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL C. STERNBERG, | Case No.: 2:23-cv-01466-APG-EJY |
| Plaintiff | **Order Granting in Part Defendants Adames & Ash, LLP and Aeschleman's Motion to Dismiss with Leave to Amend** |
| v. | |
| SHELLEY WARNECK, et al., | [ECF No. 122] |
| Defendants | |

Plaintiff Michael Sternberg sues 75 individuals and entities regarding events arising out of a custody dispute with the mother of his children, defendant Shelley Warneck. In this order, I address the motion to dismiss filed by Warneck's attorney in the child custody case Tristan Aeschleman, and Aeschleman's firm Adames & Ash, LLP (collectively, the Aeschleman Defendants). The Aeschleman Defendants argue that this court lacks personal jurisdiction over them. They contend that as a California law firm and a California attorney, they have no systematic contacts with Nevada to support general jurisdiction. They also contend that specific jurisdiction does not exist because they did not direct their actions at Nevada. Rather, they represented a California client in a California custody case. Alternatively, they argue Sternberg's first amended complaint (FAC) fails to state a claim against them for a variety of reasons.

Sternberg responds that personal jurisdiction is proper because he alleges that the Aeschleman Defendants conspired with Warneck to abduct his children from Nevada without legal authority, and they participated in his arrest and the seizure of his children in Nevada. He also contends that he has properly pleaded his claims and none of the grounds for dismissal applies.

The parties are familiar with the FAC's allegations, so I repeat them here only as necessary to resolve the motion to dismiss. I grant the motion to dismiss in part, with leave to amend.

## I. ANALYSIS

### A. Personal Jurisdiction

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). If the motion to dismiss is based on written materials rather than an evidentiary hearing, I must determine whether the plaintiff's "pleadings and affidavits make a prima facie showing of personal jurisdiction." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quotation omitted). In deciding whether the plaintiff has met his burden, I must accept as true the complaint's uncontroverted allegations. *Id.*

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co.*, 453 F.3d at 1154. Nevada's long-arm statute permits the exercise of jurisdiction on any basis consistent with federal due process. Nev. Rev. Stat. § 14.065(1). Due process requires that to exercise of personal jurisdiction over a defendant, the defendant must "have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quotation omitted). Personal jurisdiction over a defendant may be based on general or specific jurisdiction. *Id.*

/ / / /

1         1.  General Personal Jurisdiction

2         If a court has general jurisdiction over a defendant, then the plaintiff may bring any claim

3  they have against that defendant regardless of whether the claim relates to the defendant's

4  activities in the forum state. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358

5  (2021).  "Because the assertion of judicial authority over a defendant is much broader in the case

6  of general jurisdiction than specific jurisdiction, a plaintiff invoking general jurisdiction must

7  meet an exacting standard for the minimum contacts required." *Ranza*, 793 F.3d at 1069

8  (quotation omitted).  A court may assert general jurisdiction over defendants when their

9  "affiliations with the State are so continuous and systematic as to render them essentially at

10  home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919

11  (2011) (quotation omitted).  "For an individual, the paradigm forum for the exercise of general

12  jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  For

13  an entity, "it is an equivalent place, one in which the [entity] is fairly regarded as at home."

14  *Goodyear*, 564 U.S. at 924.  Although these are not necessarily the only means for a defendant to

15  be subject to general jurisdiction, the defendant's contacts with the forum must be "so substantial

16  and of such a nature as to justify suit on causes of action arising from dealings entirely distinct

17  from those activities." *Daimler*, 571 U.S. at 137-38 (simplified).

18         The Aeschleman Defendants argue Sternberg has not alleged facts showing they had

19  continuous and systematic contacts with Nevada such that they may be deemed to be at home in

20  Nevada.  In a declaration, Aeschleman states that the law firm was formed in California, has

21  never been incorporated or registered for business in Nevada, and has no Nevada employees.

22  ECF No. 122-1 at 2.  Aeschleman lives in California, is admitted to only the California bar, has

23  no property interests or accounts in Nevada, and has not advertised his services in Nevada. *Id.*

Aeschleman has never physically appeared in a Nevada courtroom. *Id.* Sternberg does not refute these facts. To the contrary, he provides California addresses for these defendants. ECF No. 86-2 at 1. Consequently, he has not made a prima facie showing that the Aeschleman Defendants are subject to general personal jurisdiction in Nevada. Sternberg requests jurisdictional discovery, but I need not grant a request that is "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). Sternberg has not identified any reason to suspect that a California attorney living in California, or a California law firm based in California, have such significant contacts with Nevada as to be essentially at home in this state.

## 2. Specific Personal Jurisdiction

The Ninth Circuit has established a three-prong test for analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quotation omitted). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* If he succeeds, then the defendant must "present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (quotation omitted).

Under the first prong, "to be subject to specific jurisdiction the defendant must purposefully direct its activities toward the forum state, purposefully avail itself of the privileges

4

of conducting activities there, or engage in some combination thereof." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1088 (9th Cir. 2023) (quotation omitted).  When the claims at issue are torts and the defendant's conduct "primarily occurs outside the forum state, [I] generally apply the purposeful direction test and look to whether the defendant expressly aimed acts at the forum state knowing that they would harm the plaintiff there." *Id.*  To purposefully direct conduct at the forum state, "the defendant must have allegedly (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162-63 (9th Cir. 2023) (quotation omitted).  The defendant's act may be directed at Nevada "even if it occurred elsewhere." *Id.* at 1163.  In contrast, a defendant purposefully avails himself of the forum state when he "purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, and in return submits to the burdens of litigation in the State." *Id.* (simplified).  Because Sternberg's claims are torts and the Aeschleman Defendants' alleged conduct took place in California, the purposeful direction test is more applicable, but I consider both tests.

In analyzing specific jurisdiction, I "focus[] on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (simplified).  That "relationship must arise out of contacts that the defendant himself creates with the forum State." *Id.* at 284 (simplified).  It cannot be based on the "random, fortuitous, or attenuated contacts" the defendant "makes by interacting with other persons affiliated with the State," or on the plaintiff's "unilateral activity." *Id.* at 286 (simplified).  The "defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284.  Thus, the "analysis looks to the

1  defendant's contacts with the forum State itself, not the defendant's contacts with persons who
2  reside there." *Id.* at 285.

3      The Aeschleman Defendants argue that their conduct took place in California while
4  representing a California litigant, so none of their conduct was directed at Nevada.  Sternberg
5  responds that he has alleged that Warneck and the Aeschleman Defendants planned for Warneck
6  to remove the children from Nevada and not return them even though there was no court order
7  allowing her to do so.  He also contends that the Aeschleman Defendants "organized and
8  participated in" his arrest and the seizure of his children in September 2021. ECF No. 133 at 3.
9  Sternberg contends that he therefore has alleged that the Aeschleman Defendants engaged in
10 intentional acts aimed at Nevada to harm Sternberg in Nevada.

11     Sternberg has not alleged facts supporting a prima facie case of personal jurisdiction
12 against the Aeschleman Defendants.  These defendants acted in California representing a litigant
13 in a California case.  Mere foreseeability that a lawyer's representation of a client in California
14 may impact an opposing party who resides in another state does not subject the lawyer or his law
15 firm to personal jurisdiction in that other state.  "'[F]oreseeability' alone has never been a
16 sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide*
17 *Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).  Rather, the critical inquiry is whether
18 "the defendant's conduct and connection with the forum State are such that he should reasonably
19 anticipate being haled into court there." *Id.* at 297.  A lawyer and his law firm do not reasonably
20 anticipate being haled into court in a state in which an opposing litigant resides without some
21 conduct directed at that state.

22     Although Sternberg alleges the Aeschleman Defendants assisted Warneck in "plann[ing],
23 coordinat[ing], and execut[ing]" moving the children to California, he does not allege any facts

that the Aeschleman Defendants did anything other than represent Warneck in the California litigation. ECF No. 86-4 at 2.  The same is true for the allegation that the Aeschleman Defendants reported false facts to support Sternberg's later arrest for keeping the children in Nevada after Sternberg was ordered to return them to California. *Id.* at 10; ECF No. 86-3 at 14-15; *see Bush v. Adams*, No. CIV.A. 07-4936, 2008 WL 4791647, at *12 (E.D. Pa. Nov. 3, 2008) ("Merely obtaining an arrest warrant for someone who is known to be in another state is not sufficient to subject the officer obtaining the warrant to personal jurisdiction in that state."); *Payne v. Cnty. of Kershaw, S.C.*, No. CIV A 308-CV-0792-G, 2008 WL 2876592, at *5 (N.D. Tex. July 25, 2008) (holding that government employees' contacts with Texas were too attenuated to support personal jurisdiction where they sent three notices seeking enforcement of a South Carolina court order to a Texas resident).

I therefore grant the Aeschleman Defendants' motion to dismiss for lack of personal jurisdiction.  However, because it may be possible that Sternberg could allege facts that the Aeschleman Defendants assisted Warneck in her plan to remove the children from Nevada or somehow participated in Sternberg's later arrest and the seizure of the children beyond just representing Warneck in California, I grant leave for Sternberg to amend if facts exist to do so. *See Jenkins v. Miller*, No. 2:12-CV-184, 2017 WL 1052582, at *1, 9-10 (D. Vt. Mar. 20, 2017) (finding a prima facie case of specific jurisdiction where the attorneys in a family court case allegedly "engaged in tortious conduct to counsel [their client] to leave the country [with the child], coordinate[d] and conspire[d] with [others] to assist her in doing so, and prevent[ed] the authorities from learning of [the client's and child's] whereabouts," where the forum state had awarded the plaintiff parental rights and visitation).  I advise Sternberg that conclusory allegations that the Aeschleman Defendants assisted Warneck are insufficient.  He must

1  plausibly allege facts describing what that assistance consisted of, and those facts must form a

2  sufficient nexus with Nevada to support personal jurisdiction.  Because I am allowing Sternberg

3  to amend, I consider the Aeschleman Defendants' other arguments for dismissal to determine if

4  amendment would be futile and to provide guidance if I allow amendment.

5  **B.  *Rooker-Feldman***

6     The Aeschleman Defendants argue that all of Sternberg's claims are barred by the

7  *Rooker-Feldman* doctrine because he effectively seeks to overturn state court rulings.  Sternberg

8  responds that the doctrine does not apply because he did not lose in state court, as none of his

9  claims against the Aeschleman Defendants have been adjudicated previously and there are no

10  final judgments in the custody proceedings.  Finally, he contends that the doctrine does not apply

11  because he is pursuing independent claims.

12     The *Rooker-Feldman* doctrine arises from two Supreme Court decisions defining federal

13  district court jurisdiction and the relationship between federal district courts and state courts.

14  Federal district courts possess "strictly original" jurisdiction and thus have no power to exercise

15  subject matter jurisdiction over a de facto appeal from a state court judgment. *See Rooker v.*

16  *Fidelity Trust Co.*, 263 U.S. 413, 414-17 (1923); *Dist. of Columbia Ct. of Appeals, et al. v.*

17  *Feldman*, 460 U.S. 462, 482 (1983); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir.

18  2004).  Only the Supreme Court of the United States has jurisdiction to review such judgments.

19  *Feldman*, 460 U.S. at 482; *see also* 28 U.S.C. § 1257.  The *Rooker-Feldman* doctrine "is

20  confined to cases of the kind from which the doctrine acquired its name: cases brought by state-

21  court losers complaining of injuries caused by state-court judgments rendered before the district

22  court proceedings commenced and inviting district court review and rejection of those

23  judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  If the

1  *Rooker-Feldman* doctrine applies, I must dismiss for lack of subject matter jurisdiction.

2  *Kougasian*, 359 F.3d at 1139.

3      The *Rooker-Feldman* doctrine does not deprive federal district courts of subject matter

4  jurisdiction in every case in which a party attempts to litigate in federal court a matter previously

5  litigated in state court. *Exxon Mobil*, 544 U.S. at 293.  If a plaintiff presents an "independent

6  claim, albeit one that denies a legal conclusion that a state court has reached in a case to which

7  he was a party . . ., then there is jurisdiction and state law determines whether the defendant

8  prevails under principles of preclusion." *Id.* (quotation omitted).  For example, where a plaintiff

9  asserts an adverse party committed extrinsic fraud on the state court, *Rooker-Feldman* does not

10  bar the suit because the plaintiff states an independent claim. *Kougasian*, 359 F.3d at 1141.

11  "Extrinsic fraud on a court is, by definition, not an error by that court.  It is, rather, a wrongful

12  act committed by the party or parties who engaged in the fraud." *Id.*  "*Rooker-Feldman* therefore

13  does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for

14  extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that

15  fraud." *Id.*

16      If there is a de facto appeal, the federal plaintiff "may not seek to litigate an issue that is

17  'inextricably intertwined' with the state court judicial decision from which the forbidden de facto

18  appeal is brought." *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003).  A claim is "inextricably

19  intertwined with the state-court judgment if the federal claim succeeds only to the extent that the

20  state court wrongly decided the issues before it." *Cooper v. Ramos*, 704 F.3d 772, 779 (9th Cir.

21  2012) (quotation omitted).  Thus, a claim is inextricably intertwined "where the relief requested

22  in the federal action would effectively reverse the state court decision or void its ruling." *Id.*

23  (quotation omitted).

Sternberg's allegation that the Aeschleman Defendants assisted Warneck in removing the children from Nevada in 2019 is not barred by *Rooker-Feldman* because it is not based on a state court error. *See* ECF Nos. 86-3 at 2-3; 86-4 at 2.  Rather, he alleges the Aeschleman Defendants engaged in wrongful conduct by helping Warneck relocate the children to California in contravention of Warneck and Sternberg's agreement that the children would live in Nevada. Absent further factual development, it is unclear whether his allegations related to the Aeschleman Defendants' alleged participation in his arrest and seizure of the children is barred by *Rooker-Feldman*.  Sternberg has leave to amend to allege facts related to this incident if he can allege an independent claim.

But the rest of Sternberg's claims against the Aeschleman Defendants are de facto appeals of state court rulings because he asserts harm from the California state court's alleged legal errors and seeks to overturn, void, or otherwise necessarily imply the invalidity of those orders.  For example, he challenges decisions relating to the custody matter being decided in California rather than Nevada, denying his motion for the children's return, denying his motion for contempt, sanctioning him, ordering him to return the children to Warneck, and declaring him a vexatious litigant. ECF Nos. 86-3 at 4, 8, 10; 86-4 at 7-9.  And he requests as relief declarations that some of the California state court orders are void, and specifically that Judge Hayashi's jurisdictional order is void, rendering all the following orders in the custody case void as well. ECF No. 86 at 3-6.  He also seeks an injunction barring Warneck from enforcing money judgments the California court ordered. *Id.* at 6.  Sternberg's contention that he is not a "state court loser" because these orders are not final, and thus *Rooker-Feldman* does not apply, is incorrect.  *Rooker-Feldman* is not limited to final orders.  It also applies to a state court's interlocutory orders and non-final judgments. *Doe & Assoc. Law Offices v. Napolitano*, 252 F.3d

1026, 1030 (9th Cir. 2001).  And it "applies even where the challenge to the state court decision

involves federal constitutional issues, including section 1983 claims." *Benavidez v. Cnty. of San*

*Diego*, 993 F.3d 1134, 1142 (9th Cir. 2021) (quotation omitted).

Sternberg contends that he is alleging independent claims because the Aeschleman

Defendants engaged in acts of extrinsic fraud.  Although Sternberg alleges extrinsic fraud on the

state court during the custody proceedings, but he does so only in conclusory terms.  For

example, he alleges that there was "perjury, fraud upon the court, [and] filing of false sworn

documents" in the custody case, and that the Aeschleman Defendants made "fraudulent filings

with the court." *See, e.g.,* ECF No. 86-3 at 10-11.  However, Sternberg also alleges that the state

court judges participated in the allegedly fraudulent conduct. *See, e.g.*, ECF Nos. 86-4 at 2-9.

Thus, he is still asserting harm from state court errors, rather than extrinsic fraud in the form of

the Aeschleman Defendants committing wrongful acts to fool the state court into its decisions.

His claims against the Aeschleman Defendants, at least as presently pleaded, thus are

inextricably intertwined with his de facto appeals.  I therefore dismiss Sternberg's claims against

the Aeschleman Defendants for lack of subject matter jurisdiction under *Rooker-Feldman* except

for his claims based on the Aeschleman Defendants assisting Warneck in relocating the children

in 2019.

Because Sternberg may be able to plausibly allege other claims against the Aeschleman

Defendants that are not barred by *Rooker-Feldman*, I grant him leave to do so if he can allege

facts supporting independent claims against these defendants.  I advise Sternberg that if his

theory is based in fraud of some sort, he must meet Federal Rule of Civil Procedure 9(b)'s

heightened pleading standard for pleading fraud with particularity.  Under that Rule, "the

circumstances constituting the alleged fraud [must] be specific enough to give defendants notice

of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation omitted).  The complaint must identify "the who, what, when, where, and how of the misconduct charged" and "must set forth what is false or misleading about a statement, and why it is false." *Id.* (quotation omitted).  Merely describing filings, statements, or other acts as "fraudulent" or "illicit" is insufficient.

Because I am granting Sternberg leave to amend, I address the Aeschleman Defendants' other arguments to determine whether amendment would be futile and to provide guidance if I allow amendment.

**C.  Failure to State a Claim**

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).  A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

<u>1.  Sections 1983 and 1985 and State Constitutional Claims</u>

The Aeschleman Defendants argue that Sternberg's claims under 42 U.S.C. §§ 1983 and 1985 fail because they are not state actors and because Sternberg does not allege discrimination based on race or some other protected class to support his § 1985 claim.  They also argue the statute of limitations has run because the FAC alleges their misconduct ended in May 2021.

They contend his complaint in this case was filed more than two years later, so it is untimely. The Aeschleman Defendants argue that Sternberg's state constitutional claims fail for the same reasons as his federal claims because the standards are the same.

Sternberg responds that he need not address whether the Aeschleman Defendants are state actors because he "did not allege it." ECF No. 133 at 4. He also argues that state action is not needed for a § 1985 claim because a conspiracy under that statute can consist of private individuals, but he contends that he also alleges a conspiracy with state actors. He further asserts that he need not allege class-based discrimination for a § 1985 claim. As for the statute of limitations, he argues that his false arrest and the second seizure of his children took place on September 29, 2021, and he filed his original complaint less than two years later on September 20, 2023. He further argues that void orders issued by the California judges can be attacked at any time. Finally, Sternberg contends that because his federal claims should survive, so should his state law claims.

### a. State Action

To state a claim under § 1983, a plaintiff must plausibly allege that the defendant deprived him of a right secured by the Constitution and acted under color of state law. *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1166-67 (9th Cir. 2021). Traditionally, "acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quotation omitted).

Conduct by a private actor presumptively is not state action. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011). However, a private person or entity can, "in certain circumstances," be a state actor. *Villegas v. Gilroy Garlic Festival Ass'n*, 541

1    F.3d 950, 954 (9th Cir. 2008) (en banc).  One way a private individual or entity may be liable

2    under § 1983 is by engaging in joint action with a state actor. *Tsao v. Desert Palace, Inc.*, 698

3    F.3d 1128, 1140 (9th Cir. 2012).  The joint action test is met if "state officials and private parties

4    have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* (quotation

5    omitted).  A plaintiff can show joint action "either by proving the existence of a conspiracy or by

6    showing that the private party was a willful participant in joint action with the State or its

7    agents." *Id.* (quotation omitted).  To state a conspiracy between the Aeschleman Defendants and

8    state actors under § 1983, Sternberg must plausibly allege "an agreement or meeting of the minds

9    to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (quotation

10   omitted).  "Ultimately, joint action exists when the state has so far insinuated itself into a

11   position of interdependence with [the private entity] that it must be recognized as a joint

12   participant in the challenged activity." *Tsao*, 698 F.3d at 1140 (quotation omitted).  "Joint action

13   therefore requires a substantial degree of cooperative action." *Collins v. Womancare*, 878 F.2d

14   1145, 1154 (9th Cir. 1989).  For example, "merely complaining to the police" does not suffice to

15   make the complaining party a state actor. *Id.* at 1155.

16        The Aeschleman Defendants are a private attorney and law firm who presumptively are

17   not state actors.  Sternberg has not plausibly alleged facts to support a conspiracy or joint action

18   theory to make their conduct attributable to the State.  Rather, the FAC alleges that the

19   Aeschleman Defendants represented Warneck in the custody dispute in California and submitted

20   declarations and proposed orders to the court in California.  Representing a client in court and

21   asking a court for relief do not amount to state action.  The FAC also alleges that Aeschleman

22   "conspired" with a judge and Sternberg's own attorney to change the custody case from a "brief

23   focused assessment" to a full custody evaluation without Sternberg's consent. ECF No. 86-3 at 7.

He makes a similar allegation that another attorney of his, a different judge, and Aeschleman

"conspired" to alter a stipulation to continue trial without his consent. *Id.* at 8. And he alleges

that Aeschleman "conspired" with Warneck and an investigator for the El Dorado County

District Attorney's Office to have Sternberg arrested and the children seized and returned to

Warneck. *Id.* at 4, 18. Labeling something a conspiracy is insufficient to plausibly allege an

agreement to violate constitutional rights. The factual allegations do not support the conclusion

that the State has so far insinuated itself into a position of interdependence with the Aeschleman

Defendants that these private actors' conduct is attributable to the State. In sum, the FAC does

not plausibly allege that the Aeschleman Defendants are state actors, so the § 1983 claims fail as

a matter of law. However, I grant Sternberg leave to amend if he can allege facts to support a

§ 1983 claim against the Aeschleman Defendants.

### b. Section 1985

Sternberg does not identify under what section or clause of § 1985 he brings his claims.

He appears to be relying on the second clause of § 1985(2) that prohibits conspiring for the

purpose of obstructing "the due course of justice" in a State "with intent to deny to any citizen

the equal protection of the laws." He also appears to be relying on the first clause of § 1985(3)

that prohibits conspiring to deprive "any person or class of persons of the equal protection of the

laws." Both of those provisions require "some racial, or perhaps otherwise class-based,

invidiously discriminatory animus behind the conspirator's action." *Sprewell v. Golden State

Warriors*, 266 F.3d 979, 989 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187

(9th Cir. 2001) (quotation omitted). The Ninth Circuit requires a showing either that the courts

have designated the class in question a suspect or quasi-suspect class or that congressional

1  legislation has established that the class requires special protection. *Schultz v. Sundberg*, 759

2  F.2d 714, 718 (9th Cir. 1985).

3        As discussed above, Sternberg has not plausibly alleged a conspiracy.  He also has not

4  alleged that he belongs to a protected class or that the Aeschleman Defendants conspired with

5  others to deprive him of equal protection based on his membership in that class.  I therefore

6  dismiss his § 1985 claims.  It appears unlikely that Sternberg could plausibly allege a § 1985

7  claim because his opposition to the motion to dismiss does not suggest he could make these types

8  of allegations.  I nevertheless will allow Sternberg leave to amend his § 1985 claims if he can

9  allege facts in support of them.

10                  *c. Statute of Limitations*

11        I may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) as time-barred

12  "only when the running of the statute of limitations is apparent on the face of the complaint."

13  *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th

14  Cir. 2013) (simplified).  The limitation period for Sternberg's § 1983 and § 1985 claims is

15  governed by the forum state's limitation period for personal injury actions. *Jones v. Blanas*, 393

16  F.3d 918, 927 (9th Cir. 2004); *McDougal v. Cnty. of Imperial*, 942 F.2d 668, 673-74 (9th Cir.

17  1991).  In Nevada, the limitation period for personal injury claims is two years. Nev. Rev. Stat.

18  § 11.190(4)(e).  However, federal law determines when a civil rights claim accrues. *Knox v.*

19  *Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001).  "Under federal law, a claim accrues when the

20  plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado*

21  *v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004) (quotation omitted).

22

23

1    Sternberg filed his complaint in this case against the Aeschleman Defendants on

2  September 20, 2023.[1] ECF No. 1.  Consequently, claims accruing prior to September 20, 2021

3  are time-barred absent some reason to extend the limitation period.  Sternberg alleges that on

4  September 29, 2021, he was arrested and his children seized. *Id.* at 16-17.  He alleges his arrest

5  was caused by a conspiracy between Warneck, Aeschleman, and officials at the El Dorado

6  District Attorney's Office. *Id.* at 17-18.  Although the conspiracy allegation is conclusory, it is

7  not apparent from the face of the complaint that Sternberg's claims related to his arrest and the

8  seizure of his children are untimely.  I therefore deny the Aeschleman Defendants' motion to

9  dismiss Sternberg's § 1983 and § 1985 claims based on these allegations.

10    However, most of the conduct about which Sternberg complains with respect to the

11  Aeschleman Defendants occurred in 2019 through August 2021, when the Aeschleman

12  Defendants purportedly assisted Warneck in removing the children from Nevada, filed various

13  court papers, made allegedly false statements in court, and allegedly conspired with judges. ECF

14  No. 86-3 at 1-11.  Sternberg does not dispute that he knew about these acts and his injuries when

15  they occurred.[2]

16    Sternberg asserts that his claims are timely because he is alleging continuing violations.

17  The continuing violation doctrine, which "allow[s] a plaintiff to seek relief for events outside of

18  the limitations period," applies to claims under § 1983. *Knox*, 260 F.3d at 1013.  However,

19  continuing violations must be distinguished from continuing impact from past violations. *Id.*

20  (stating that "mere continuing impact from past violations is not actionable" (quotation and

21  _____

22  [1] Sternberg filed the complaint in the consolidated action on December 7, 2023. *Sternberg v. Warneck*, 2:23-cv-2022-APG-EJY, ECF No. 1.

23  [2] The FAC alleges that Sternberg contemporaneously complained about Aeschleman's conduct, including raising issues with the presiding judges, reporting Aeschleman to law enforcement, and filing bar complaints against him. *See, e.g.*, ECF No. 86-3 at 3-4, 7, 10-11.

1    emphasis omitted)).  Further, "discrete . . . acts are not actionable if time barred, even when they

2    are related to acts alleged in [a] timely filed" complaint because "[e]ach discrete . . . act starts a

3    new clock for filing [a complaint] alleging that act." *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738,

4    747 (9th Cir. 2019) (quotation omitted).

5         Because Sternberg alleges only discrete acts against him, it is apparent from the face of

6    the FAC that his claims based on conduct prior to September 20, 2021 are untimely. *See id.* at

7    747-48.  I therefore grant the Aeschleman Defendants' motion to dismiss with prejudice

8    Sternberg's § 1983 and § 1985 claims[3] to the extent they are based on acts that injured Sternberg

9    prior to September 20, 2021.

10              *2. Noerr-Pennington* Doctrine

11        The Aeschleman Defendants argue that all of Sternberg's claims against them are barred

12   by the *Noerr-Pennington* doctrine because he sues them for protected First Amendment

13   petitioning activity.  Specifically, they argue that filing motions and briefs in court and engaging

14   in other litigation-related conduct is petitioning activity that Sternberg's suit attempts to burden.

15   The Aeschleman Defendants also argue that the sham exception to the doctrine does not apply

16   because their actions in representing Warneck in the custody suit cannot be said to be objectively

17   baseless.[4]

18        Sternberg responds that he alleges some conduct that has nothing to do with petitioning

19   activity, such as relocating his children and orchestrating his false arrest and second seizure of

20

---

21   [3] The Aeschleman Defendants' motion did not assert a statute of limitations defense to any other
     claims.

22   [4] The Aeschleman Defendants contend that this activity is also protected by the absolute
     litigation privilege.  They relegate this argument to a footnote, so I do not address this
23   undeveloped argument.  However, Sternberg should consider whether the privilege may bar his
     claims should he choose to craft an amended complaint.

1  his children.  He also argues that the doctrine should not apply where he alleges violations of his

2  constitutional rights because applying the doctrine would defeat the purpose of the civil rights

3  laws.

4        The *Noerr-Pennington* doctrine "is a rule of statutory construction that requires courts to

5  construe statutes to avoid burdening conduct that implicates the protections of the Petition

6  Clause of the First Amendment." *United States v. Koziol*, 993 F.3d 1160, 1171 (9th Cir. 2021).

7  While the doctrine was initially rooted in antitrust law, it now extends to the petitioning of any

8  branch of government and to state common law claims. *Theme Promotions, Inc. v. News Am.*

9  *Mktg. FSI*, 546 F.3d 991, 1006-07 (9th Cir. 2008).  Thus, parties who petition the government

10 are generally immune from liability for that activity. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929

11 (9th Cir. 2006).  This includes "[c]onduct incidental to the prosecution of [a] suit," such as

12 "presuit demand letters and discovery communications." *B&G Foods N. Am., Inc. v. Embry*, 29

13 F.4th 527, 535 (9th Cir. 2022) (quotation omitted).

14       To assess whether *Noerr-Pennington* applies, I employ "a three-step analysis to

15 determine: (1) whether the lawsuit imposes a burden on petitioning rights, (2) whether the

16 alleged activities constitute protected petitioning activity, and (3) whether the statute at issue

17 may be construed to avoid that burden." *Id.* (simplified).  "If the answer at each step is 'yes,'

18 then a defendant's conduct is immunized under *Noerr-Pennington*." *Id.*

19                    *a.  Step One:  Burden*

20       To determine whether the success of the plaintiff's lawsuit would burden petitioning

21 rights in the litigation context, I ask whether the lawsuit burdens the defendant's ability to

22 prosecute its suit. *Id.*  Only some of Sternberg's allegations would burden the Aeschleman

23 Defendants' petitioning activity in the custody suit.  Sternberg's allegations related to the

1 | Aeschleman Defendants' conduct during and in relation to court proceedings, such as filing

2 | documents, submitting proposed orders, and making arguments during court proceedings, would

3 | burden their petitioning rights if Sternberg succeeded in this lawsuit.  To the extent these

4 | defendants requested law enforcement to act against Sternberg, that petitioning activity likewise

5 | would be burdened.  And although Sternberg contends that applying *Noerr-Pennington* in this

6 | context undermines the civil rights statutes, the Ninth Circuit has held that pursuing a § 1983 suit

7 | can burden a defendant's petitioning rights under step 1. *Id.*

8 |          Sternberg asserts that the Aeschleman Defendants took actions beyond petitioning a court

9 | or law enforcement agency.  As discussed above, however, he has done so in only conclusory

10 | fashion.  If Sternberg plausibly can allege that the Aeschleman Defendants assisted Warneck in

11 | relocating the children by means other than merely representing her in court or assisted in

12 | Sternberg's arrest and seizure by means other than merely requesting law enforcement

13 | assistance, allowing this suit to proceed would not burden petitioning activity.[5]

14 |                    *b.  Step Two:  Protected Petitioning Activity*

15 |          At step two, I determine whether the Petition Clause protects the defendants' activity. *Id.*

16 | at 535-36.  "Sham petitioning is not protected." *Id.* at 536; *see also Pyankovska v. Abid*, 65 F.4th

17 | 1067, 1077 (9th Cir. 2023) (stating that filing and arguing a custody motion was protected

18 | petitioning activity but the defendant "was not free to support [his] motion with illegal

19 | evidence").  Petitioning activity is a sham in the litigation context if: (1) "the lawsuit is

20 | objectively baseless and the defendant's motive in bringing it was unlawful;" (2) "the conduct

21 | involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without

22 |

23 | [5] These allegations may fail for other reasons.  For example, Sternberg's § 1983 and § 1985 claims based on the Aeschleman Defendants allegedly assisting Warneck in relocating the children to California are time-barred, but they are not barred by the *Noerr-Pennington* doctrine.

1    regard to the merits and for an unlawful purpose;" or (3) the defendant's "knowing fraud upon,

2    or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *B&G*

3    *Foods N. Am., Inc.*, 29 F.4th at 537-38 (quotation omitted).

4        Whether the sham exception applies is a question of fact. *Rock River Commc'ns, Inc. v.*

5    *Universal Music Grp., Inc.*, 745 F.3d 343, 352-53 (9th Cir. 2014).  At the motion to dismiss

6    stage, I decide only whether the plaintiff has plausibly pleaded that the sham exception applies,

7    accepting all well-pleaded facts as true. *See Kearney v. Foley & Lardner, LLP*, 590 F.3d 638,

8    647-48 (9th Cir. 2009) (holding the district court erred by requiring more than plausible pleading

9    of a sham exception at the motion to dismiss stage).

10       Taking Sternberg's allegations as true, he may be able to plausibly allege that the sham

11   exception applies.  If he can do so, then the Aeschleman Defendants' actions would not be

12   protected petitioning conduct.  However, he has not done so yet.  Sternberg alleges that the

13   Aeschleman Defendants made numerous false or fraudulent statements to the court during the

14   custody proceedings, and he appears to allege that those false statements were either repeated to

15   law enforcement or formed the basis of law enforcement's actions against him.  However,

16   Sternberg does not plausibly allege what false statements the Aeschleman Defendants made, why

17   they were false, or how those misrepresentations deprived the state court custody proceeding or

18   the law enforcement actions against him of their legitimacy.  As discussed above, if Sternberg is

19   making allegations grounded in fraud, he must plead those allegations with particularity.  I

20   therefore grant the Aeschleman Defendants' motion to dismiss on this basis.  But because it is

21   possible that Sternberg could cure these defects through amendment, I grant him leave to amend.

22   / / / /

23   / / / /

21

1          3.  Section 125C.0075

2          The Aeschleman Defendants argue that Sternberg's claim that they violated Nevada

3    Revised Statutes (NRS) § 125C.0075 fails because that statute provides a mechanism for

4    awarding fees in a Nevada case resolving parental disputes over relocating children, but it does

5    not provide a private right of action in a court of general jurisdiction.[6]  Sternberg responds that

6    the statute allows him to pursue attorney's fees and costs associated with his efforts to have his

7    children returned to Nevada.

8          NRS § 125C.0075 provides that if a parent with primary or joint physical custody

9    relocates with a child under certain wrongful or criminal circumstances and the non-relocating

10   parent "files an action in response to the violation," then "the non-relocating parent is entitled to

11   recover reasonable attorney's fees and costs incurred as a result of the violation."  This section is

12   contained within NRS Title 11 relating to domestic relations and under Chapter 125C related to

13   custody and visitation.  Nevada has statutorily provided that "the family court has original,

14   exclusive jurisdiction in any proceeding . . . [b]rought pursuant to . . . chapter . . . 125C . . . of

15   NRS, except to the extent that a specific statute authorizes the use of any other judicial or

16   administrative procedure to facilitate the collection of an obligation for support." NRS

17   § 3.223(a).  Consequently, Sternberg's claim under § 125C.0075 must be brought in the family

18   court.  I therefore dismiss it with prejudice to reasserting it in this court, but without prejudice to

19   Sternberg pursuing relief in family court.

20   / / / /

21   / / / /

22

23   [6] The Aeschleman Defendants argue that the gravamen of all of Sternberg's state law claims is
     due process violations.  I decline to recharacterize Sternberg's claims where he asserts more than
     due process violations.

4.  Tortious Interference with Parental Rights

The Aeschleman Defendants argue Nevada does not recognize a tort for interference with parental rights.  Sternberg responds by requesting that I certify to the Supreme Court of Nevada whether this claim exists.

The Supreme Court of Nevada has not addressed whether a claim for tortious interference with parental rights exists under Nevada law or, if it does, whether it can be brought by one parent against the other, or whether the family court has exclusive jurisdiction over any such claim.  "Where the state's highest court has not squarely addressed an issue, [I] must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Judd v. Weinstein*, 967 F.3d 952, 955-56 (9th Cir. 2020) (quotation omitted).

Another judge in this district has ruled that Nevada does not recognize such a claim and instead provides for a statutory remedy under NRS Chapter 125C. *Doyle v. Jones*, No. 3:13-CV-540-LRH-WGC, 2014 WL 3887906, at *5 (D. Nev. Aug. 7, 2014).  The statute that *Doyle* cites states that if physical custody has been established pursuant to a court order and the custodial parent seeks to relocate the child out of Nevada or at a distance within the state that would impair the other parent's relationship with the child, then the custodial parent must attempt to get the other parent's or the court's permission to relocate. *Id.* (citing NRS § 125C.200, now codified at NRS § 125C.006).  A parent with court-ordered custody who relocates with a child without the other parent's or the court's permission may be subject to criminal charges and be liable to pay the other parent's reasonable attorney's fees and costs. NRS §§ 125C.006(3), 125C.0065(3) 125C.0075, 200.359.

Sternberg alleges that when Warneck first removed the children from Nevada (allegedly with the Aeschleman Defendants' assistance), he and Warneck had informally agreed to Sternberg being the "primary parent" while Warneck dealt with a criminal DUI charge against her in California, and that the children would live in Nevada. ECF No. 86-3 at 1-2. Under Nevada law, parents have joint legal and physical custody of a child "until otherwise ordered by a court of competent jurisdiction." NRS § 125C.0015. It is unclear whether the statutory remedies listed above are a parent's only remedies when the other parent or a third party interferes with the parent-child relationship. And it is unclear what remedies apply where, as here, there is no court-ordered custody arrangement that was allegedly violated.

In my discretion, "[w]hen state law issues are unclear, [I] may certify a question to a state's highest court to obtain authoritative answers." *Potter v. City of Lacey*, 46 F.4th 787, 791 (9th Cir. 2022) (quotation omitted). Certification may be appropriate for state law issues that carry "significant policy implications" and "will have broad application." *Id.*; *Kremen v. Cohen*, 325 F.3d 1035, 1038 (9th Cir. 2003). Nevada Rule of Appellate Procedure 5 permits me to certify a question of Nevada law "which may be determinative of the cause then pending" in my court when "it appears to [me] there is no controlling precedent in the decisions of the Supreme Court or Court of Appeals of [Nevada]." The certified question does not have to resolve or conclude the entire case; it only needs to be determinative of "part of the federal case." *Volvo Cars of N. Am., Inc. v. Ricci*, 137 P.3d 1161, 1164 (Nev. 2006) (en banc).

Given the lack of authority on point, the importance of whether such a tort exists and its parameters, and the state court's expertise with domestic relations law, I am inclined to certify to the Supreme Court of Nevada the question of whether such a claim exists, under what circumstances, against whom it can be maintained, and in what courts it may be pursued. I

24

1  therefore grant Sternberg leave to replead this claim in an amended complaint against the

2  Aeschleman Defendants.  Once Sternberg has completed amending his complaint as to the

3  Aeschleman Defendants, any party may move to certify questions to the Supreme Court of

4  Nevada related to this claim.

5              5.  Abuse of Process

6         The Aeschleman Defendants contend the abuse of process claim fails because Sternberg

7  has not alleged an improper purpose other than resolving the custody dispute in which the

8  Aeschleman Defendants represented Warneck.  Sternberg responds that the Aeschleman

9  Defendants and Warneck conspired to abduct his children before they brought or renewed the

10 custody dispute in California.

11        To state an abuse of process claim under Nevada law, Sternberg must plausibly allege

12 (1) that the Aeschleman Defendants had an ulterior purpose other than resolving a legal dispute,

13 and (2) they engaged in a willful act in the use of judicial process not proper in the regular

14 conduct of the proceeding. *LaMantia v. Redisi*, 38 P.3d 877, 880 (Nev. 2002); *see also Land*

15 *Baron Inv. v. Bonnie Springs Fam. LP*, 356 P.3d 511, 519 (Nev. 2015).  For example, the

16 Supreme Court of Nevada found abuse of process when a city attorney charged a police officer

17 with a criminal violation to obtain the officer's voluntary resignation. *Posadas v. City of Reno*,

18 851 P.2d 438, 445 (Nev. 1993).  However, "filing a complaint does not constitute abuse of

19 process." *Land Baron Inv.*, 356 P.3d at 520.

20        Sternberg has not plausibly alleged an abuse of process claim because he does not allege

21 that the Aeschleman Defendants used judicial process in an improper manner in the regular

22 conduct of court proceedings, nor does he allege an ulterior purpose.  Sternberg's reference to

23 the Aeschleman Defendants' allegedly assisting Warneck in relocating the children does not

1  identify a use of judicial process to accomplish the relocation, much less misuse of that process

2  for an ulterior purpose.  However, I grant Sternberg leave to amend this claim if he can assert

3  facts in support.

4                  6.  Civil Conspiracy

5        The Aeschleman Defendants contend that the civil conspiracy claim fails because there

6  must be an underlying civil wrong, and all of Sternberg's other claims fail.  Sternberg responds

7  that because he has pleaded other claims and has plausibly alleged a conspiracy, this claim

8  should not be dismissed.

9        Under Nevada law, "[a]n actionable civil conspiracy consists of a combination of two or

10  more persons who, by some concerted action, intend to accomplish an unlawful objective for the

11  purpose of harming another, and damage results from the act or acts." *Consol. Generator-Nev.,*

12  *Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998) (quotation omitted).  The

13  unlawful objective does not necessarily have to amount to a tort. *Cadle Co. v. Woods &*

14  *Erickson, LLP*, 345 P.3d 1049, 1052 (Nev. 2015) (en banc).  A plaintiff must allege an explicit or

15  tacit agreement among the conspirators. *Guilfoyle v. Olde Monmouth Stock Transfer Co., Inc.*,

16  335 P.3d 190, 198-99 (Nev. 2014) (en banc).  Direct evidence of an agreement to harm the

17  plaintiff is not required, but the plaintiff must allege facts from which to infer such an agreement

18  existed. *See id.* at 199.

19        Sternberg's civil conspiracy claim alleges that Warneck and the Aeschleman Defendants

20  "planned, coordinated, and executed the unlawful relocation of [his] children from Nevada as

21  outlined in this complaint for the purpose of harming and interfering with [his] rights to [his]

22  children, to ambush [him] in order to obstruct the due course of justice, and to unjustly enrich"

23  the Aeschleman Defendants. ECF No. 86-4 at 2.  Although Sternberg identifies the unlawful

objective of interfering with his parental rights, these conspiracy allegations are conclusory.  He does not allege any facts to allege an agreement.  But I grant Sternberg leave to amend to add facts from which an agreement to accomplish an unlawful objective could plausibly be inferred.  In amending this claim, Sternberg should consider Warneck's motion to dismiss this claim and her argument that she cannot conspire with her own agents, the Aeschleman Defendants.

**D.  Amendment**

The Aeschleman Defendants argue that I should deny amendment because Sternberg has already had an opportunity to amend and amendment would be futile.  However, a pro se litigant should generally be notified of his complaint's deficiencies and given at least one opportunity to cure them.  *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).  I therefore have granted Sternberg leave to amend where it would not be futile for him to do so.

**II.  CONCLUSION**

I THEREFORE ORDER that defendants Tristan Aeschleman and Adames & Ash, LLP's motion to dismiss **(ECF No. 122) is GRANTED in part** as set forth in this order.

I FURTHER ORDER that by January 16, 2025, plaintiff Michael Sternberg may file a second amended complaint curing the deficiencies identified in this order if facts exist to do so.

DATED this 14th day of November, 2024.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE