**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MICHAEL STERNBERG,

    Plaintiff

v.

SHELLEY WARNECK, et al.,

    Defendants

Case No.: 2:23-cv-01466-APG-EJY

**Order Granting in Part Motion for Reconsideration**

[ECF No. 311]

Plaintiff Michael Sternberg moves for reconsideration of my order (ECF No. 277) denying his motions for a preliminary injunction and for partial summary judgment (ECF Nos. 174, 175, 182).  He also requests reconsideration of my orders on the motions to dismiss filed by various defendants (ECF Nos. 270, 272, 273).  Sternberg contends that I erred in denying his motions based on the *Rooker-Feldman*[1] doctrine because he is alleging the state court orders he challenges were procured through fraud, which is an exception to *Rooker-Feldman*.

Sternberg appealed my order denying his motion for a preliminary injunction.  While that appeal was pending, the Ninth Circuit issued *Miroth v. County of Trinity*, 136 F.4th 1141 (9th Cir. 2025), which Sternberg asserts supports reconsideration due to its discussion of *Rooker-Feldman*.  He also directs my attention to a decision out of the Northern District of California that applied *Miroth*.  Although he does not identify that case by name, I assume he is referring to *Haskell v. Fadem*, 797 F. Supp. 3d 1062, 1071 (N.D. Cal. 2025).  And he asserts that I erred by stating that *Rooker-Feldman* could apply to interlocutory orders.  Sternberg contends that reconsideration is supported by (1) new evidence that he submitted in support of another motion

---

[1] *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923).

for reconsideration (ECF No. 279), (2) clear error in not recognizing that he was asserting fraud as an exception to *Rooker-Feldman*, and (3) intervening new law in *Miroth*.  For relief regarding his motion for partial summary judgment, he requests that I "reconsider and declare the California State jurisdictional order void for lack of due process pursuant to the 14th Amendment and 42 USC 1983." ECF No. 311 at 7.  As to the orders on the various motions to dismiss, he requests I reconsider my rulings so that he "may appropriately amend [his] complaint." *Id.*

Only defendant Shelley Warneck responded.  She notes that Sternberg appealed my order denying his motion for preliminary injunction, he brought the *Miroth* decision to the Ninth Circuit's attention during that appeal, and the Ninth Circuit affirmed my order.  She thus contends Sternberg should not get another opportunity to reargue the same issues.  She also asserts that the law of the case precludes reconsideration of the denial of a preliminary injunction following the Ninth Circuit's remand.

In reply Sternberg points out that Warneck did not respond to his arguments regarding reconsideration of the dismissal order related to claims against her, and none of the other defendants responded.  He also argues that although the Ninth Circuit denied his appeal related to the injunction, that court refused to address the motions to dismiss on an interlocutory appeal.[2] Finally, he asserts that the law of the case does not preclude me from reconsidering my own orders.

A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient," so long as it has jurisdiction. *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001)

---

[2] Sternberg states the Ninth Circuit "clearly erred when it stated that [I] did not abuse [my] discretion in denying Sternberg's motions for a preliminary injunction . . . ." ECF No. 315 at 2.  I do not review the Ninth Circuit's decisions for error.

(simplified); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) (citing Fed. R. Civ. P. 54(b)).  "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  A district court also may reconsider its decision if "other, highly unusual, circumstances" warrant it. *Id.*  "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *In re AgriBioTech, Inc.*, 319 B.R. 207, 209 (D. Nev. 2004).  Additionally, a motion for reconsideration may not be based on arguments or evidence that could have been raised previously. *See Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

The parties are familiar with the facts, so I repeat them here only as necessary to resolve the motion.  I deny reconsideration of the motion for a preliminary injunction and partial summary judgment.  I grant in part reconsideration of my orders on the motions to dismiss.

**I.  I deny reconsideration on the motion for a preliminary injunction and partial summary judgment.**

Sternberg's motions for a preliminary injunction and for partial summary judgment were based on circumstances surrounding a jurisdictional conference between the Nevada family court and the California family court to determine which court should exercise jurisdiction over the custody dispute between Sternberg and Warneck.  Sternberg asserts that California state court judge Roberta Hayashi read a supplemental declaration filed by Warneck's attorney in the California case that was not served on Sternberg, "aggressively advocated" on Warneck's behalf to have jurisdiction over the custody case in California, "raised the issue of the so-called

stipulated judgement on file" in the California court, and denied Sternberg's lawyer's request to respond to the supplemental declaration. ECF No. 174 at 4. He also asserted that after the hearing, Judge Hayashi must have communicated ex parte with Warneck's attorney because the minute order reflecting the jurisdictional conference states "Attorney for Mother to prepare the order," but the hearing transcript does not document that Warneck's attorney would do so. *Id.* at 5. He contended that Warneck's attorney then sent a proposed order to Judge Hayashi and sent a copy to Sternberg. *Id.* Judge Hayashi signed that order. *Id.* Sternberg argued that the jurisdictional order was void ab initio because it was entered in violation of his due process rights. *Id.* at 5-6. Sternberg stated that he appealed in the California state court system, but his appeal was dismissed. *Id.* at 7.

Based on these arguments, Sternberg requested a preliminary injunction blocking certain defendants "from enforcing the void jurisdictional order, or any order relying on the void jurisdictional order." *Id.* at 9. He also sought partial summary judgment in the form of declarations that Judge Hayashi's jurisdictional order was "void on its face for lack of due process," that Judge Hayashi deprived him of his due process rights, and that Warneck's attorney, Tristan Aeschleman, participated in the rights deprivation. *Id.*

I denied Sternberg's motions because I had ruled in other orders that "Sternberg's claims seeking to undo state court orders are barred by the *Rooker-Feldman* doctrine." ECF No. 277 at 2. I also stated that a litigant cannot use Federal Rule of Civil Procedure 60(b) to obtain relief from a state court judgment. *Id.*

Sternberg appealed my ruling. ECF No. 278. The Ninth Circuit affirmed my denial of the preliminary injunction, but it did "not consider Sternberg's contentions regarding the merits of his underlying complaint or [my] orders partially granting motions to dismiss because those

issues are outside the scope of this appeal." ECF No. 298 at 2. Sternberg filed a petition for panel rehearing and rehearing en banc. ECF No. 311 at 2. While that petition was pending, the Ninth Circuit issued *Miroth* and Judge Pitts in the Northern District of California issued *Haskell*. *Id.* at 2-3. Sternberg filed motions for judicial notice with the Ninth Circuit to advise it of this new authority. *Id.* at 3. The Ninth Circuit denied his petition, and the mandate issued in September 2025. *Id.*; ECF No. 309.

I find no basis to reconsider my order denying Sternberg's motion for a preliminary injunction. The Ninth Circuit affirmed my order. Additionally, I have dismissed every defendant against whom he sought an injunction except Nevada Attorney General Aaron Ford.[3] There is no basis to conclude that the Nevada Attorney General will have a reason to enforce any of the California state court custody orders going forward, as the children do not live in Nevada. Sternberg thus has not shown a "sufficient likelihood" that he "will suffer a similar injury in the future" to support an injunction against the Nevada Attorney General. *Vasquez Perdomo v. Noem*, 148 F.4th 656, 673 (9th Cir. 2025) (quotation omitted). Consequently, I deny Sternberg's motion for reconsideration of my order denying his preliminary injunction motion.

As for his motion for partial summary judgment, I decline reconsideration because Sternberg has not met his initial burden to show he is entitled to judgment as a matter of law. He asserts that Judge Hayashi violated his due process rights because he did not have adequate

---

[3] *See* ECF Nos. 174 at 9 (asking me to enjoin the Nevada Attorney General, the El Dorado County District Attorney, the Santa Clara County District Attorney, and the California Supreme Court Chief Justice Patricia Guerrero from enforcing the jurisdictional order and every other order in the California custody case that flowed from it); 251 (order dismissing California judicial branch defendants); 258 (order dismissing County of Santa Clara and its employees); 271 (dismissing El Dorado County and its employees).

notice and an opportunity to be heard at a hearing held jointly by the California and Nevada family court judges.

The California and Nevada courts held the hearing under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") to decide which court would exercise jurisdiction over the custody dispute between Warneck and Sternberg. ECF No. 174-2 at 12-30. The two judges initially disagreed on who should cede jurisdiction, but ultimately the Nevada judge indicated her intent to cede. *Id.* at 17-19, 21-23. At that point, Sternberg's counsel requested the opportunity to speak, and he was allowed to argue several factual points to both judges. *Id.* at 23-25. Judge Hayashi responded by pointing out that there was a final custody judgment in the California court that had never been modified. *Id.* at 25. The Nevada judge interjected that the parties had represented to her that they had stipulated to dismiss the California action, but somehow that stipulation did not get filed. *Id.* at 25-26. Judge Hayashi responded that in her court, a request for dismissal made "after judgment is entered does not serve to set aside the judgment," and "if the judgment is not set aside, the judgment still stands." *Id.* at 26-27.

Upon receiving this information, the Nevada judge again indicated her intent to cede jurisdiction. *Id.* at 27. Sternberg's counsel made an additional argument that the California court had lost UCCJEA jurisdiction because Sternberg, Warneck, and the children left California for Nevada. *Id.* at 27-28. He also noted that he had received Warneck's supplement the day before and asked that the jurisdictional determination be deferred until he could submit a supplemental brief as well. *Id.* Judge Hayashi responded that the hearing was "an informal proceeding between courts. There are some jurisdictions in which . . . there is no briefing, and there is no briefing schedule for these procedures." *Id.* The Nevada judge responded that there "is not a

requirement in [the Nevada] court either," but she acknowledged that Sternberg's counsel was "making a record." *Id.*; *see* Nev. Rev. Stat. §§ 125A.275(1)-(2) (Nevada's enactment of UCCJEA providing that a "court of this state may communicate with a court in another state concerning a proceeding arising pursuant to the provisions of this chapter," the "court may allow the parties to participate in the communication," and "[i]f the parties are not able to participate in the communication, the parties must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made"). The Nevada judge then ceded jurisdiction. *Id.* at 28-29.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted). Based on this record, Sternberg has not established that his due process rights were violated as a matter of law such that he should have summary judgment entered in his favor.[4] The hearing transcript shows Sternberg had advanced notice of the hearing, he was physically present, he had counsel physically present in both California and Nevada, and his counsel was able to present arguments to the courts. *See* ECF No. 174-2 at 14-15, 23-28. The Nevada judge also raised points in support of retaining jurisdiction in Nevada, although she ultimately ceded jurisdiction.

Sternberg asserts that he did not have advance notice that Judge Hayashi would make findings about jurisdiction based on a supplement provided by Warneck's attorney; however, the transcript shows that his attorney received the supplement the day before the hearing.[5] *Id.* at 28.

---

[4] This is not a ruling that Sternberg's due process claim fails. I am ruling only that he has not established that he prevails as a matter of law.

[5] The jurisdictional hearing was set within one week of the prior hearing at which jurisdictional questions were raised. *See* ECF No. 174-2 at 12 (jurisdictional hearing held on August 7), 16 (prior hearing that prompted the Nevada judge to set a UCCJEA jurisdictional conference was

Additionally, the purpose of the hearing to determine the jurisdictional question was known in advance. *Id.* at 16-17. Sternberg did not present me with case law showing that the two judges' decisions to not defer the jurisdictional ruling to allow supplemental briefing was a due process violation and that no reasonable jury could find otherwise. Nor has Sternberg shown that the proper remedy would be to undo the entire California state court custody proceedings even if there was a violation. Although Sternberg asserts that sending the supplemental brief to Sternberg's attorney one day before the jurisdictional hearing was "the equivalent of failure to serve [the] summons and complaint," he provides no legal authority to support that proposition. ECF No. 174 at 7. I therefore deny his motion for reconsideration on this basis.

**II.  I grant in part reconsideration of my dismissal order regarding Warneck and Aeschleman.**

Sternberg argues that his fraud claims against Warneck and Aeschleman should not be barred by *Rooker-Feldman* even if the state court judge was a participant in the fraud, as Sternberg has alleged. He contends that *Miroth* makes clear that regardless of whether fraud is extrinsic or intrinsic, a claim that an adverse party procured a state court judgment through fraud is an independent claim that is not barred by *Rooker-Feldman*. He thus asserts that he can seek both damages against Warneck and her attorney, as well as injunctive relief. Finally, he argues that *Rooker-Feldman* does not apply to a state court's interlocutory orders, and in any event, he alleges Warnick and Aeschleman engaged in extrinsic fraud before any state court order was issued, so *Rooker-Feldman* would not deprive me of jurisdiction to hear his claims. Warneck and Aeschleman did not respond to this part of Sternberg's motion.

---

held July 31). Thus, there was little time between the two hearings for the supplement to be filed.

**A.  I grant reconsideration on the issue of whether *Rooker-Feldman* applies to interlocutory state orders generally.**

I previously ruled that many of Sternberg's allegations against Warneck were "de facto appeals of state court rulings because he asserts harm from the California state court's alleged legal errors and seeks to overturn, void, or otherwise necessarily imply the invalidity of those orders." ECF No. 270 at 4.  As part of that ruling, I stated that "*Rooker-Feldman* is not limited to final orders.  It also applies to a state court's interlocutory orders and non-final judgments." *Id.* at 4-5.  Sternberg argues this was incorrect because under the Supreme Court's decision in *Exxon Mobil Corporation v. Saudi Basic Industries Corporation*, 544 U.S. 280 (2005), only final state court judgments can trigger *Rooker-Feldman*.

In *Exxon Mobil*, the Supreme Court stated that *Rooker-Feldman* applies in cases "brought by state-court losers complaining of injuries caused by *state-court judgments rendered before the district court proceedings commenced* and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284 (emphasis added).  *Exxon Mobil* was not specifically addressing the issue of whether *Rooker-Feldman* applies to a state court's interlocutory orders. The Ninth Circuit has indicated, both before and after *Exxon Mobil*, that *Rooker-Feldman* applies to a state court's interlocutory orders. *See Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1143 (9th Cir. 2021) (stating the *Rooker-Feldman* doctrine "applies to both final and interlocutory decisions from a state court" (citing *Doe & Assocs. L. Offices v. Napolitano*, 252 F.3d 1030, 1026 (9th Cir. 2001))).

However, the language in *Exxon Mobil* and other cases casts doubt on whether the doctrine applies to all state court interlocutory orders.  For example, in addition to the language quoted above, *Exxon Mobil* also stated:

9

> This Court has repeatedly held that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation.

*Id.* at 1526-27 (simplified by removing internal citations). In a decision after *Exxon Mobil*, the Supreme Court described the doctrine as precluding "lower federal courts . . . from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam).

More recently, the Ninth Circuit suggested (but did not decide) that a state court judgment may be "sufficiently 'final'" for *Rooker-Feldman* purposes when it "permit[s] Supreme Court review . . . under 28 U.S.C. § 1257." *Cogan v. Trabucco*, 114 F.4th 1054, 1065 (9th Cir. 2024). That inquiry makes sense in the *Rooker-Feldman* context because the doctrine arises out of the "rationale . . . that only the Supreme Court, and not a district court, may exercise what is effectively appellate review over a state court civil judgment." *Id.* at 1064; *see also* 28 U.S.C. § 1257 (granting the Supreme Court jurisdiction to review "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had"). But it is not necessarily an easy task to determine when a state court order is sufficiently final. *See id.* ("Whether [a] state court judgment actually resolved that federal issue and whether it was sufficiently final to permit Supreme Court review . . . under 28 U.S.C. § 1257 raise abstruse issues that we need not resolve here." (simplified)); *Mothershed v. Justices of Supreme Ct.*, 410 F.3d 602, 604 n.1 (9th Cir. 2005), *as amended on denial of reh'g* (July 21, 2005), *opinion amended on denial of reh'g*, No. 03-16878, 2005 WL 1692466 (9th Cir. July 21, 2005) ("Proceedings end for *Rooker-Feldman* purposes when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum, even if other issues remain

10

pending at the state level."); *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 458-60 (3d Cir. 2019) (discussing the uncertainty before and after *Exxon Mobil* about when a state court order is "final" for *Rooker-Feldman* purposes and concluding that "*Rooker-Feldman* does not apply when state proceedings have neither ended nor led to orders reviewable by the United States Supreme Court").

I grant Sternberg's motion for reconsideration to the extent I previously concluded that *Rooker-Feldman* applies to interlocutory state court orders generally. The parties have not adequately addressed whether the challenged state court orders were final for *Rooker-Feldman* purposes in the context of this case. So, in crafting his amended complaint, Sternberg may reassert his claims against Warneck and Aeschleman if he has a good faith belief that the orders he challenges were not final for *Rooker-Feldman* purposes before he filed this suit.

**B. I grant in part reconsideration on the issue of whether Sternberg may amend to state independent claims of fraud.**

If a plaintiff presents an "independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). For example, where a plaintiff asserts an adverse party committed extrinsic fraud on the state court, *Rooker-Feldman* does not bar the suit because the plaintiff states an independent claim against an adverse party, rather than asserting legal error by the state court. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004). "Extrinsic fraud on a court is, by definition, not an error by that court. It is, rather, a wrongful act committed by the party or parties who engaged in the fraud." *Id.* "*Rooker-Feldman* therefore does not bar

subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud." *Id.*

Sternberg argues that he asserts independent claims against Warneck and Aeschleman because he alleges that they fraudulently induced the state court to issue its decisions.  He argues that under *Miroth*, it does not matter that he alleges the state court judge participated in the fraud.  Warneck and Aeschleman did not respond to this argument.

I previously ruled that "[a]lthough Sternberg alleges extrinsic fraud on the state court during the custody proceedings, he does so only in conclusory terms." ECF No. 270 at 5.  I see no basis to reconsider that ruling.  His fraud allegations were conclusory. *See id.*  I granted him leave to amend and advised him that if his theory is grounded in fraud, he must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for pleading fraud with particularity. *Id.* at 5-6.  So I deny his reconsideration motion to the extent he disputes this aspect of my ruling or suggests that I did not understand him to be making independent claims under *Kougasian*.  I understood he was making the attempt.  I ruled that he had not succeeded in doing so, and I granted him leave to amend to try again.

I also stated that Sternberg alleged that the state court judges participated in the allegedly fraudulent conduct, so he was "still asserting harm from state court errors, rather than extrinsic fraud in the form of Warneck and her attorney committing wrongful acts to fool the state court into its decisions." *Id.* at 5.  Sternberg challenges this conclusion under *Miroth*.

Sternberg is correct that the *Miroth* majority dispensed with the difference between extrinsic and intrinsic fraud in the *Rooker-Feldman* analysis. *Miroth*, 136 F.4th at 1153 ("Contrary to the dissent, we have never distinguished between so-called 'intrinsic' fraud and extrinsic fraud in the *Rooker-Feldman* context.  Nor would it be proper or helpful to import that

state-law distinction into the federal-law question of the scope of the *Rooker-Feldman* doctrine.").  Thus, under Miroth, "[f]raud allegations against an adverse party in litigation can avoid *Rooker-Feldman* even when they are not couched in extrinsic fraud terms." *Id.*  Thus, Sternberg can allege harms caused by Warneck and Aeschleman based on alleged fraud regardless of whether it was extrinsic or intrinsic.[6]

There may remain other *Rooker-Feldman* questions that cannot be addressed in a vacuum.  For example, it is not clear what fraud allegations were presented to the state courts, whether they ruled on them, in what procedural context they did so, and whether or when any such state court rulings were final for *Rooker-Feldman* purposes. *See Miroth*, 136 F.4th at 1154; *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859-60 (9th Cir. 2008).  Additionally, *Miroth* did not address whether *Rooker-Feldman* bars a claim seeking to set aside a state court judgment that the plaintiff alleges was the product of fraud or corruption in which the state court judge participated.  The *Miroth* plaintiffs did not allege that the state court judge participated in the fraud. *Id.* at 1152 n.2 (distinguishing *Reusser* as "present[ing] a different *Rooker-Feldman* question because it involved the allegation that state court officers (judges, clerks, and sheriffs) were themselves part of the fraud").  And the *Miroth* plaintiffs dropped their requested relief to undo the state court orders, so that alone took them out of *Rooker-Feldman*. *Id.* at 1151.  I decline to address these issues at this stage.  Until Sternberg amends, it is unclear what he will be

---

[6] As explained in *Kougasian*, extrinsic fraud is "conduct which prevents a party from presenting his claim in court," and under California law, "extrinsic fraud is a basis for setting aside an earlier judgment." 359 F.3d at 1140 (simplified).  "Examples of . . . extrinsic fraud include hiding the identity of witnesses from your opponent or the state court, or failing to make mandatory disclosures to your opponent." *Miroth*, 136 F.4th at 1163 (VanDyke, J., dissenting) (simplified).  In contrast, intrinsic fraud is where a party "directly misled the state court, perhaps by perjury or misrepresenting facts in court." *Id.* (citing Intrinsic Fraud, Black's Law Dictionary (12th ed. 2024) (providing examples such as the "use of fabricated evidence, perjured testimony, and false receipts")).

alleging, against who, what relief he will seek based on those allegations, and how those allegations may impact a *Rooker-Feldman* analysis. Consequently, I grant in part Sternberg's motion in that he is not categorically barred under *Rooker-Feldman* from attempting to assert fraud-based claims against Warneck and Aeschleman.

**III. I grant reconsideration of my dismissal order regarding the Nevada Attorney General (NVAG) Defendants.**

Sternberg moves for reconsideration of my dismissal order regarding the NVAG Defendants,[7] asserting that I misunderstood his comment that he could not pursue claims that would undo his plea in a criminal case. Sternberg states that he was referring to the bar in *Heck v. Humphrey*, 512 U.S. 477 (1994), not *Rooker-Feldman*. He also argues that *Heck* does not necessarily bar his claims. Finally, he contends that he should be able to challenge his false arrest because that would not be a de facto appeal of any criminal proceedings, as there were none beyond an extradition hearing. The NVAG Defendants did not respond.

I grant this portion of Sternberg's motion. If he believes he can plausibly allege claims against the NVAG Defendants that do not fall within the *Rooker-Feldman* and *Heck* bars, he may attempt to do so.

**IV. Conclusion**

I THEREFORE ORDER that plaintiff Michael Sternberg's motion for reconsideration **(ECF No. 311) is GRANTED in part** as set forth in this order.

/ / / /

/ / / /

---

[7] Nevada Attorney General Aaron Ford and Nevada Attorney General's Office employees William Scott, Gina Lovero, Dave Monroe, Brent Foster, Christine Brady, and Daniel Ulloa.

I FURTHER ORDER that plaintiff Michael Sternberg's second amended complaint is due May 29, 2026.

DATED this 20th day of April, 2026.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE