Marc J. Randazza, NV Bar No. 12265
Ronald D. Green, NV Bar No. 7360
Randazza Legal Group, PLLC
8991 W. Flamingo Rd., Ste. B
Las Vegas, NV 89147
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Defendant
Shelley Warneck

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL C. STERNBERG,<br><br>Plaintiff,<br><br>vs.<br><br>SHELLEY WARNECK, *et al.*,<br><br>Defendants. | Case No.: 2:23-01466-APG-EJY<br><br>**DEFENDANT SHELLEY WARNECK'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND MOTION TO STRIKE THIRD AMENDED COMPLAINT** |

Defendant Shelley Warneck ("Defendant") moves to dismiss the claims asserted against her by Plaintiff Michael Sternberg in his Second Amended Complaint (ECF 332)[1] pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Warneck also moves to strike the "corrected" Second Amended Complaint (ECF 333-1), which functions as an unauthorized Third Amended Complaint.

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

## 1.0 INTRODUCTION

This case is a child custody dispute from another state. The current Second Amended Complaint should be dismissed as to Ms. Warneck. It should also be the last Complaint Mr.

[1] In this Motion, Warneck cites to the Second Amended Complaint that Sternberg filed on May 28, 2026 and not the subsequent "corrected" version that he filed about one week later and functions as an unauthorized Third Amended Complaint.



RANDAZZA | LEGAL GROUP

Sternberg is permitted to file against her. He has not and cannot assert valid claims for relief against Ms. Warneck.

In its Order (ECF 270) on Defendant Warneck's Motion to Dismiss Sternberg's First Amended Complaint (ECF 124), this Court provided Plaintiff Mr. Sternberg with guidance regarding how he needed to plead claims in his Second Amended Complaint to fix the defects in his First Amended Complaint. He did not do any of it.

In his new pleading, Sternberg still attempts to improperly sue a private citizen for violations of his constitutional rights. He again alleges abuse of process against her for the mere act of challenging him in court. He still requests relief under a California statute despite his clear arguments that this dispute belongs in Nevada and is subject to Nevada law. Finally, he brings claims against her for conspiracy, declaratory relief, and injunctive relief even though the claims underlying them are meritless.

None of the claims are valid. None can be fixed by another amendment. The claims against Ms. Warneck should be dismissed with prejudice.

## 2.0 RELEVANT FACTS

Despite having two children together during a long-term relationship, Ms. Warneck and Mr. Sternberg never married and separated in 2012. *See* Second Amended Complaint ("SAC"), ¶¶ 1-2. Their separation resulted in a child custody case filed in California family court in Santa Clara County nearly 15 years ago, *Warneck v. Sternberg*, No. 2012-1-CP-020194. *See id.* That case resulted in the entry of a judgment by the California court that remains the effective order governing the custody of Ms. Warneck's and Mr. Sternberg's children to this day. Mr. Sternberg's conduct in that case also caused him to be named a vexatious litigant by the California court system. Being declared a vexatious litigant in California, he decided to just shift to suing in Nevada.

Sternberg alleges that, in 2019, seven years after they separated, Ms. Warneck agreed to move from California to raise their children in Nevada. He alleges that, shortly thereafter, she abducted their children by removing them from Nevada and taking them to California. *See id.*, ¶



RANDAZZA | LEGAL GROUP

13. Sternberg claims that this was a false pretense to remove the children from Nevada and never return. *See id.*, ¶ 16.

Upon discovering the alleged "kidnapping," Mr. Sternberg claims that he filed police reports in California and Nevada alleging that Ms. Warneck kidnapped their children. This alleged "kidnapping" also resulted in a new custody case in Clark County, Nevada, *Sternberg v. Warneck*, Case No. D-19-592622-C, that competed with the initial custody case in California, where a judgment had already entered and where Ms. Warneck had filed for visitation modification shortly before Sternberg initiated the Nevada case. Filing in Nevada additionally allowed him to engage in the abusive litigation tactics that California had already restricted. *See* California Vexatious Litigant Orders, attached as **Exhibits A and B**.

Given the competing cases and that both Nevada and California subscribe to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), the Nevada and California courts held a joint conference pursuant to the UCCJEA on August 7, 2019 to determine which court would have jurisdiction over the child custody dispute. *See* SAC, ¶ 28. The UCCJEA transcript, attached as **Exhibit C**,[2] reveals that, after counsel for Ms. Warneck and Sternberg argued the facts, the judges from California and Nevada both decided that jurisdiction should be in California. *See* Exhibit C at 26:3-5. This finding was echoed in the subsequent Findings and Order After Hearing ("Findings and Order"). *See* Findings and Order, attached as **Exhibit D**, ¶ 4. Because of this finding, the 2012 custody judgment and order entered in California remained the document that

---

[2] In ruling on a motion filed pursuant to Fed. R. Civ. P. 12(b)(6), this Court may consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). It can also "consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2005).

Here, Sternberg's Second Amended Complaint refers to the UCCJEA. SAC, ¶¶ 386, 832. Additionally, federal courts "may take judicial notice of undisputed matters of public record, *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), including documents on file in federal or state courts." *See Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012), citing *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002).



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

governed the custody of Ms. Warneck's and Sternberg's children. *See* 2012 Judgment, attached as **Exhibit E**.

Sternberg did not like the results of the UCCJEA, so he filed this lawsuit in an attempt to invalidate it and pry jurisdiction away from the California court. He falsely alleged that the UCCJEA was fraudulent and that the order that resulted from it was invalid. *See* SAC, ¶ 29.

Sternberg argues in his Second Amended Complaint that, because he and Ms. Warneck agreed to dismiss the California action, the judgment in it was invalid and unenforceable. *See* SAC, ¶¶ 3, 26. However, at the UCCJEA, the California judge indicated that, while Ms. Warneck and Mr. Sternberg had signed dismissal paperwork in the initial California case, the "request for dismissal was made after the judgment had been entered" and that, under California procedure, "a request for dismissal that is made after judgment is entered does not serve to set aside the judgment." Exhibit C at 25:3-7. Because Sternberg never made "a request to set aside the [California] judgment or for the parties to be relieved of the effect of the judgment," the judgment remained unchallenged and effective and governed the custody of their children. *Id.* at 25:26-27:2. In other words, it remained the operative document, and Sternberg did not like that.

Mr. Sternberg additionally alleges that the UCCJEA itself was "tainted by ex parte communications, improper consideration of non-noticed materials, denial of notice and opportunity to be heard, violations of California Family Code § 215, violations of California Family Code §§ 3408, 3425, 3428, fraud, and other due process violations." SAC, ¶ 29. The transcript of the UCCJEA reveals this allegation to be false as well. Sternberg's counsel was given numerous opportunities to speak and argue his client's position. *See* Exhibit C at 23:12-24:10; 26:22-27:22. While Mr. Sternberg's counsel did not submit documents in support of his client's position and Ms. Warneck's did, because the hearing was "an informal proceeding between courts," "there [was] no briefing schedule" in either California or Nevada. *See id.* at 27:19-25. He was not denied an opportunity to be heard or to file documents supporting his position. Mr. Sternberg's counsel made tactical decisions that we are in no position to second guess.

Sternberg argues in his Second Amended Complaint that Warneck failed to reveal to the courts that, in 2019, she had an apartment in Nevada or that she had registered to vote in Nevada. *See* SAC, ¶¶ 351-352. However, both of those issues were extensively discussed at the UCCJEA. *See* Exhibit C at 15:15-16:10; 27:23-28:12. These facts were not covered up by Ms. Warneck, as Sternberg alleges. They were discussed, debated, and considered, and both the California and Nevada judges agreed that California should maintain jurisdiction over the custody dispute. There was no fraud. Sternberg just does not like how the judges in both Nevada and California ruled after hearing the facts.

Following the UCCJEA, the California court issued its Findings and Order. *See* Exhibit D. The Findings and Order provided that Ms. Warneck "*presently* resides in California and has maintained her California residency since the October 4, 2012 judgment establishing parentage" and that "California will retain exclusive, continuing jurisdiction over custody and visitation." *Id.* (emphasis in original). The Findings and Order determining jurisdiction was an appealable order pursuant to both Nevada and California law. *See* NRS 125A.555; Cal. Family Code § 3454. The judgment entered by a California court on October 4, 2012 remains the effective judgment regarding custody of Ms. Warneck's and Sternberg's children. *See* Exhibit E.

After the state courts did not give Sternberg the decision he wanted, he filed this lawsuit, alleging wrongs allegedly committed by Ms. Warneck, her counsel, the Nevada and California judicial systems, and various law enforcement officials in the two states. None of the claims that he asserts against Ms. Warneck are valid and further amendment would be futile. The claims against Ms. Warneck should be dismissed with prejudice.

**3.0 STANDARD OF REVIEW**

Each claim asserted by Plaintiff Sternberg against Ms. Warneck in the Second Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The Court accepts all factual allegations as true, but not legal conclusions couched as factual allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint "must contain sufficient factual matter,



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Twombly*, 550 U.S. at 570. The plausibility standard requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Additional leave to amend must not be granted if it is clear that the deficiencies in the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

The § 1983 claims should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), which challenges the Court's subject matter jurisdiction. When analyzing a facial challenge to the court's jurisdiction, the court accepts as true the factual allegations contained in the complaint. *See Orsay v. U.S. Dept. of Justice*, 289 F.3d 1125, 1127 (9th Cir. 2002). The plaintiff bears the burden of proving that the case is properly in federal court. *See McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001), citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

## 4.0 LEGAL ARGUMENT

In his Second Amended Complaint, Plaintiff Sternberg asserts 25 claims against 22 Defendants. Ms. Warneck is named in nine of these claims, and one additional claim, for declaratory and injunctive relief clearly concerns her. Defendant Warneck only responds to those claims for relief. If Plaintiff Sternberg alleges that there are claims against her that are not discussed in this Motion, then the allegations contained in the claims not addressed are too vague for Ms. Warneck to realize that she was meant to be included in them.

### 4.1 The § 1983 Claims (Claims V, VI, and VII)

Plaintiff Sternberg asserts three claims against Ms. Warneck for purported conspiracies pursuant to 42 U.S.C. § 1983 – conspiracy to cause false arrest, conspiracy to interfere with familial association, and conspiracy to deprive of procedural due process. *See* SAC, ¶¶ 502-575. Section 1983 is a federal civil rights statute that allows plaintiffs to sue state and local ***government officials***

RANDAZZA | LEGAL GROUP

for violations of their Constitutional rights. All three claims must be dismissed as to Defendant Warneck.

**4.1.1 Warneck is a private citizen, requiring dismissal of the § 1983 claims**

In general, there is no liability to private individuals for constitutional violations. Courts will not find that a private individual violated another's constitutional rights absent that individual acting under color of state law. *See Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961) (holding that a plaintiff does not enjoy Fourteenth Amendment protections against "private conduct abridging individual rights"). Liability under § 1983 attaches only to those "who carry a badge of authority of a state and represent it in some capacity." *Monroe v. Pape*, 465 U.S. 167, 172 (1961), overruled in part on other grounds by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Section 1983 claims begin with the "presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). A private citizen will only be treated as a state actor for constitutional purposes in "exceptional cases." *O'Handley v. Weber*, 62 F.4th 1145, 1155-56 (9th Cir. 2023). To bring a claim against a private citizen under § 1983, Plaintiff must allege that the private citizen acted under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).

A private citizen acts under color of state law when she "exercises power possessed by virtue of state law and made possible only because [she] is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). State action by a private citizen may be found only if there is such a close nexus between the state and the challenged action that it may be treated as the action of the state itself. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Among the specific examples of the actions of a private actor being treated as state action by the United States Supreme Court are:

RANDAZZA | LEGAL GROUP

- When a private actor operates as a willful participant in joint activity by the state or its agents. *Brentwood Acad.*, 531 U.S. at 296, citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982).
- When a nominally private entity is actually controlled by an agent of the State. *Brentwood Acad.*, 531 U.S. at 296, citing *Pennsylvania v. Bd. of Directors of City Trusts of Philadelphia*, 353 U.S. 230, 231 (1957).
- When a private person or entity has been delegated a public function by the State. *Brentwood Acad.*, 531 U.S. at 296, citing *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 627-28 (1991).
- When a private entity is "entwined with governmental policies" or when government is "entwined in [its] management or control." *Brentwood Acad.*, citing *Evans v. Newton*, 382 U.S. 296, 299 (1966).

Mere *conversations* with the State are insufficient to make an individual a state actor. *See Segui v. Stromfors*, 2025 U.S. Dist. LEXIS 122352, at * 16 (D. Ariz. June 27, 2025). A high degree of cooperation between private parties and state officials is required before the actions of a private citizen may rise to the level of state action. *See O'Handley*, 62 F.4th at 1159-60. Conclusory allegations by plaintiff unsupported by specific facts must "be rejected as insufficient." *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991).

When the plaintiff asserts a conspiracy under § 1983, as Sternberg has in all three § 1983 claims against Ms. Warneck, he "must demonstrate 'a meeting of the minds to violate constitutional rights.'" *Dayton v. City of Fairfield*, 2026 U.S. Dist. LEXIS 71711, at *5 (E.D. Ca. March 31, 2026), quoting *Steel v. City of San Diego*, 726 F. Supp. 2d 1172, 1179 (S.D. Cal. 2010). "While the parties need not know the exact details of the plan… each participant must at least share a common objective of the conspiracy." *Id.* Conclusory allegations of conspiracy do not state a claim. *See Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989). Factual

specificity is required. *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988).

In his Second Amended Complaint, Sternberg asserts claims against Ms. Warneck for conspiring to violate his constitutional rights pursuant to § 1983 – for causing false arrest, for interfering with familial association, and for depriving him of procedural due process. First, each of these claims suffers from the same fatal defect contained in his last Complaint. Specifically, he does not allege, or present any allegations to even suggest, that Ms. Warneck is a state actor. He does not allege or demonstrate that her actions were attributable to the state and cannot do so. As this Court previously observed, "Warneck is a private citizen who presumptively is not a state actor." *Sternberg v. Warneck*, 2024 U.S. Dist. LEXIS 207465, at *13-14 (D. Nev. Nov. 14, 2024).

He also fails to demonstrate, or even allege, that there was any meeting of the minds between government actors, on one hand, and Ms. Warneck and her counsel, on the other. He does not plead that there was a common conspiratorial objective. In fact, he does not even plead that Warneck or her attorney even interacted with state agents to enter into or further a conspiracy. Factual specificity is required, and Plaintiff Sternberg provides no specificity in his allegations.

While each of Sternberg's § 1983 claims against Ms. Warneck are utterly devoid of specifics, it is still clear that Ms. Warneck was not a state actor or intertwined with the States of Nevada or California. All three claims (falsely) allege that Ms. Warneck was concealing facts from the State, not that she was working with it and certainly not that her actions were indistinguishable from those of the State. For example, in his § 1983 claims, Sternberg alleges that Ms. Warneck's supposed liability emanates from, among other things, breaching the May 2019 "visitation agreement" (¶¶ 514(a), 530(a)), withholding their children from Nevada (¶¶ 514(b), 530(b)), advancing false jurisdictional claims (¶¶ 514(c), 530(c), 550(c)), concealing facts from the court (¶¶ 514(d), 530(d)), 550(d)), and pursuing "allegedly void" proceedings in California (¶¶ 514(e), 530(e), 550(f)). While these allegations are false, they would not make Ms. Warneck a state actor even if they were true.



RANDAZZA | LEGAL GROUP

In its Order dismissing Sternberg's § 1983 claims in the First Amended Complaint, this Court instructed Sternberg that "[l]abeling something a conspiracy is insufficient to plausibly allege an agreement to violate constitutional rights." *Sternberg*, 2024 U.S. Dist. LEXIS 207465, at *13-14. It gave him leave to amend but warned him that he needed to assert factual allegations that "support the conclusion that the State has so far insinuated itself into a position of interdependence with Warneck" that her actions could be attributed to the State. *Id.* He did not do so and cannot do so, providing no more detail in his new pleading than he did in his last. Ms. Warneck is not a state actor, and Plaintiff Sternberg has shown that he possesses no facts to indicate otherwise. The Court cannot give him leave to amend again. Doing so would be futile. *See Killinger v. Jager*, 2026 U.S. Dist. LEXIS 65650, at *4 (D. Nev. March 27, 2026), quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). These claims must be dismissed with prejudice.

#### 4.1.2 *Noerr-Pennington* bars the § 1983 claims

All three § 1983 claims that Sternberg asserts against Ms. Warneck in the Second Amended Complaint are also barred by the *Noerr-Pennington* doctrine because they relate to protected First Amendment petitioning activity related to the filing of motions and briefs in court, reporting crimes to law enforcement, and cooperating with criminal investigations into Sternberg. The *Noerr-Pennington* doctrine "is a rule of statutory construction that requires courts to construe statutes to avoid burdening conduct that implicates the protections of the Petition Clause of the First Amendment." *U.S. v. Koziol*, 993 F.3d 1160, 1171 (9th Cir. 2021). Parties who petition the government are generally immune from liability for that activity. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).

There is a three-part test to determine if *Noerr-Pennington* applies: (1) whether the plaintiff's claims impose a burden on petitioning rights; (2) whether the alleged activities by defendant constitute protected petitioning activity; and (3) whether the statute at issue may be construed to avoid that burden. *See B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535 (9th Cir. 2022).



RANDAZZA | LEGAL GROUP

Regarding the first factor, when deciding Warneck's Motion to Dismiss Sternberg's First Amended Complaint, the Court found that "some of Sternberg's allegations … burden Warneck's petitioning activity in the custody suit." *Sternberg*, 2024 U.S. Dist. LEXIS 207465, at *17-18. His allegations related to Warneck's conduct during and in relation to court proceedings "would burden her petitioning rights if Sternberg succeeded" on his claim, as would her ability to request "law enforcement to act against Sternberg." *Id.* Those same concerns are present here, necessitating dismissal of the § 1983 claims against her.

The second factor requires this Court to "determine whether the Petition Clause protects the defendant's activity." *Embry*, 29 F.4th at 535-36. "Sham petitioning is not protected." *Id.* at 536. When deciding the Motion to Dismiss the First Amended Complaint, this Court found that Sternberg had not successfully alleged that Ms. Warneck's petitioning activity was a sham because he did not "allege what false statements Warneck or her attorneys made, why they were false, or how those misrepresentations deprived the state court custody proceedings or the law enforcement actions against [Sternberg] of their legitimacy." *Sternberg*, 2024 U.S. Dist. LEXIS 207465, at *19-20. The Court reminded Sternberg that because he is "making allegations grounded in fraud, he must plead those allegations with particularity." *Id.* Based upon this analysis, it dismissed his § 1983 claims but gave him leave to amend to cure these defects. *See id.*

Sternberg's Second Amended Complaint contains no more detail regarding any alleged fraud committed by Ms. Warneck than his First Amended Complaint did. Fraud claims must be accompanied by the who, what, where, when, and how of the misconduct alleged. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Sternberg failed to provide these details and cannot provide more concrete details because they do not exist.

In its order dismissing these claims in the First Amended Complaint, this Court opted not to consider the third factor of the three-part test. It does not need to consider that third factor here either. However, because the third factor mandates that these claims must be dismissed, Ms. Warneck will briefly discuss it.



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

The third factor requires courts to "construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *Sosa*, 437 F.3d at 931. The Ninth Circuit has determined that "§ 1983 cannot burden protected petitioning rights." *Id.* at 932. Even if Ms. Warneck was a state actor, and she was not, the Ninth Circuit forbids a plaintiff from using § 1983 in a way that challenges her protected petitioning conduct. *Embry*, 29 F.4th at 541. Given that Sternberg is attempting to use § 1983 to punish her for petitioning the government to his detriment, his claims must be dismissed.

The § 1983 claims in the Second Amended Complaint fail under *Noerr-Pennington*. They must be dismissed with prejudice. Sternberg must not be given leave to amend yet again. Allowing him to do so would be futile and a waste of this Court's time.

**4.1.3 *Rooker-Feldman* bars the § 1983 claims**

While the remainder of Defendant Warneck's Motion seeks dismissal under Fed. R. Civ. P. 12(b)(6), she additionally seeks dismissal of Plaintiff's § 1983 claims under Rule 12(b)(1). The *Rooker-Feldman* doctrine "directs that federal district courts may not exercise subject matter jurisdiction over a de facto appeal from a state court judgment." *Snyder v. Nevada*, 2026 U.S. Dist. LEXIS 85602, at *3 (D. Nev. Apr. 20, 2026) (Du, J.), citing *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 414-17 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983).

The *Rooker-Feldman* doctrine applies in cases "brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The U.S. Court of Appeals for the Ninth Circuit has indicated that *Rooker-Feldman* applies to a state court's interlocutory orders. *See Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1143 (9th Cir. 2021) (stating that *Rooker-Feldman* "applies to both final and interlocutory decisions from a state court"). The doctrine even applies where the challenge to the state court's decision involves federal constitutional issues. *See Benavidez*, 993 F.3d at 1142.

In its Order (ECF 331) on Sternberg's Motion for Reconsideration (ECF 311), this Court held that "the language in *Exxon Mobil* and other cases casts doubt on whether the [*Rooker-Feldman*] doctrine applies to all state court interlocutory orders." Order on Motion for Reconsideration at 9. The Court stated that the Ninth Circuit "suggested (but did not decide) that a state court judgment may be sufficiently final for *Rooker-Feldman* purposes when it 'permit[s] Supreme Court review … under 28 U.S.C. § 1257.'" *Id.* at 10, quoting *Cogan v. Trabucco*, 114 F.4th 1054, 1065 (9th Cir. 2024).

28 U.S.C. § 1257 provides that the U.S. Supreme Court may review the final judgment or decree rendered by the highest court of a State in which a decision could be had. Presumably, the Court did not mean that *Rooker-Feldman* does not apply until after an issue has been decided by the highest state court that could decide the issue. *Rooker-Feldman* has never been treated that way by the Ninth Circuit. *See, e.g., Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001). However, that a state court order will not implicate *Rooker-Feldman* if it was not an appealable order does make sense.

*Rooker-Feldman* bars a suit in federal court if it acts as a "forbidden de facto appeal of a state court decision." *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013). A de facto appeal exists when a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court and seeks relief from a state court judgment based on that decision. *See id.; see also Boudette*, 2024 U.S. App. LEXIS 7473, at *2. The doctrine "also extends to claims that are 'inextricably intertwined with a forbidden appeal,' meaning that 'the relief requested' in those claims 'would effectively reverse the state court decision or void its ruling.'" *Id.*, quoting *Cooper v. Ramos*, 702 F.3d 772, 778-79 (9th Cir. 2012); *see also Snyder*, 2026 U.S. Dist. LEXIS 85602, at *4.

"Proceedings end for *Rooker-Feldman* purposes when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum, even if other issues remain pending at the state level." *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602, 604 n.1 (9th Cir.), as amended on denial of reh'g, 2005 U.S. App. LEXIS 14804 (9th Cir. July 21, 2005).



RANDAZZA | LEGAL GROUP

Here, Sternberg seeks to relitigate the California custody order and the issue of whether California or Nevada has jurisdiction over his custody dispute with Ms. Warneck even though that issue was fully resolved at the UCCJEA.

Under this standard, Mr. Sternberg's § 1983 claims are barred by *Rooker-Feldman*. In his prayer for relief, he explicitly demands that this Court declare that the California proceeding and the orders resulting from it are void. *Id.*, Prayer for Relief, ¶ E. He is using these claims as a de facto appeal of a custody judgment and jurisdictional order issued by a California state court. Because he is asking the Court to "undo[ ] a state court judgment," this Court lacks jurisdiction to hear these claims. *Snyder*, 2026 U.S. Dist. LEXIS 85602, at *4-5.

The custody judgment and jurisdictional order issued in California were appealable. While jurisdictional orders are typically not final, appealable orders, the UCCJEA, as adopted by both California and Nevada permits the parties to appeal them. *See* NRS 125A.555; Cal. Family Code § 3454. The Ninth Circuit continues to apply *Rooker-Feldman* to at least some interlocutory orders, and it should apply here. ECF 331 at 9, citing *Benavidez*, 993 F.3d at 1143; *see also Campos v. 1169 Palms LLC*, 2022 U.S. Dist. LEXIS 96149, at *22-23 (C.D. Cal. May 23, 2022). Sternberg had the ability to appeal the California orders to a state appellate court. *Rooker-Feldman* should bar his claims that seek to invalidate any orders of the California court.

Sternberg may argue that *Rooker-Feldman* does not bar his claims because he is asserting that Ms. Warneck committed extrinsic fraud on the state court. *See Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004). The Ninth Circuit has held that *Rooker-Feldman* does not bar attacks on a state court judgment "when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud." *Id.*

This argument does not save his § 1983 claims. First, he must show that the alleged fraud prevented him from presenting his claims in the state court. *See id.* at 1140. Regardless of whether Ms. Warneck committed fraud on the California or Nevada courts (she did not), Sternberg was clearly able to advance his positions during the UCCJEA conference between the Nevada and

RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

California courts. His counsel argued his position, and after the conclusion of that argument, both judges, Nevada and California, agreed that jurisdiction over his custody dispute with Ms. Warneck should remain in California.

Additionally, while Sternberg makes allegations that Ms. Warneck committed fraud, those allegations are insufficient under Fed. R. Civ. P. 9(b), which provides that, when a party alleges fraud, the party must "state with particularity the circumstances constituting fraud, that is, the "who, what, when, where, and how of the misconduct charged." *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019).

As this Court observed regarding Sternberg's attempt to plead fraud in his First Amended Complaint, "he only does so in conclusory terms" and did not succeed in doing so. ECF 270 at 5; 331 at 12. His Second Amended Complaint fares no better than the First. His attempts to allege that Ms. Warneck defrauded the state courts are either conclusory and insufficient or false. For example, he alleges that Ms. Warneck hid from the state courts that she "maintained an apartment in Nevada, registered to vote in Nevada," and "enrolled the children in Nevada schools" and that "she and Plaintiff had mutually agreed to dismiss the California proceedings in 2012." *See* SAC at ¶¶ 351. However, these issues were discussed extensively at the UCCJEA, and Nevada and California courts still agreed that jurisdiction remained with California. *See* Exhibit C at 15:15-16:10; 27:23-28:12.

Sternberg cannot maintain his § 1983 claims against Ms. Warneck. She is a private citizen who was not engaged in state action. Allowing him to pursue constitutional claims against her would violate her petitioning rights under the First Amendment and violate *Noerr-Pennington*. Finally, he is attempting to appeal a state court jurisdictional order in the U.S. District Court, which is a violation of *Rooker-Feldman*. Claims V, VI, and VII asserted by Sternberg fail and must be dismissed.

**4.2 Abuse of Process (Claim X) and Conspiracy to Commit Abuse of Process (Claim XI)**

To assert a valid claim for abuse of process, a plaintiff must show: (1) an ulterior purpose by the party allegedly abusing the process other than resolving a legal dispute; and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding. *See Land Baron Invs., Inc. v. Bonnie Springs Family Ltd. P'ship*, 356 F.3d 511, 519 (Nev. 2015). The plaintiff must provide facts, rather than conjecture, showing that the party intended to use the legal process to further an ulterior purpose. *See id.* The tort of abuse of process requires a willful act, and merely filing a complaint does not meet this requirement. *See id.* at 520.

When this Court considered Sternberg's abuse of process claim in his First Amended Complaint, it dismissed the claim and gave Sternberg leave to amend even though it correctly noted that it was "unlikely that Sternberg can amend to plausibly allege an abuse of process claim." *Sternberg*, 2024 U.S. Dist. LEXIS 207465, at *26-27. The Court specifically found that Ms. Warneck did not "use judicial process in a manner that is not proper in the regular conduct of court proceedings, nor does [Sternberg] allege an ulterior purpose." *Id.* While he alleged false statements in court documents, he did not identify them or describe how they were false. *See id.* Moreover, the Court noted that "knowingly false statements in court proceedings are protected by the absolute litigation privilege." *Id.*, citing *Greenberg Traurig v. Frias Holding Co.*, 130 Nev. 627, 331 P.3d 901, 903 (Nev. 2014) (en banc). The litigation privilege applies to abuse of process claims. *See Rogoff v. Marsh*, 137 Nev. 958, 482 P.3d 1221, 2021 Nev. App. Unpub. LEXIS 145, at *2 (Nev. Ct. App. 2021).

The Court was correct when it observed that Sternberg would be incapable of asserting a valid abuse of process claim. The same issues present in the First Amended Complaint are present here. Sternberg asserts, with no specifics, that Ms. Warneck obtained jurisdiction in California through "misrepresentations, omissions, ex parte communications, false declarations, and other fraudulent conduct." SAC, ¶ 22. He alleges that she "knowingly advanced false or misleading facts



RANDAZZA | LEGAL GROUP

concerning residency, custody, jurisdiction, and related issues." *Id.*, ¶ 23. Despite these allegations, "Sternberg does not identify any false statements, why they are false, how they constitute an abuse of process, or an ulterior purpose other than resolving a custody dispute." *Sternberg v. Warneck*, 2024 U.S. Dist. LEXIS 207465, at *26-27. Even if his allegations were true (they are not), he fails to provide any argument regarding how his claim would overcome Ms. Warneck's absolute litigation privilege.

The language of the actual claim fares no better. Sternberg alleges that Ms. Warneck used a custody proceeding "to retain the children outside Nevada, interfere with Plaintiff's parental rights, deprive Plaintiff of constitutional rights, and gain litigation advantages." Second Amended Complaint at ¶ 603. As demonstrated, Ms. Warneck cannot be liable for violating his constitutional rights, and his other allegations are appropriate in a custody dispute. Even if they were not, the allegation is so vague as to be meaningless.

Sternberg's abuse of process claim must be dismissed. This time, the Court should dismiss it with prejudice. He has demonstrated twice that he cannot properly plead a viable claim. The Court has recognized that it is unlikely this claim exists against Ms. Warneck. Plaintiff cannot be permitted to plead a futile claim again.

Finally, Sternberg cannot maintain a claim for conspiracy to commit abuse of process if he does not have a claim for abuse of process. The conspiracy claim is dependent upon the existence of the underlying claim. *See Rosenberg v. Lloyd*, 2026 Nev. LEXIS 33, at *17-18 (Nev. May 14, 2026), citing *Jordan v. State ex rel. Dep't of Motor Vehicles & Public Safety*, 121 Nev. 44, 75 (2005) (stating that an underlying claim is necessary to assert a conspiracy to commit that claim), overruled on other grounds by *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224 (2008); *Walker v. Boeing Corp.*, 218 F. Supp. 2d 1177, 1183 (C.D. Cal. 2002). His conspiracy claim fails and must also be dismissed.

RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

**4.3 California Civil Code § 49(a) (Count XIV) and Conspiracy to Violate California Civil Code § 49(a) (Count XV)**

Sternberg seeks relief pursuant to California Civil Code § 49, which provides that the "rights of personal relations forbid[s]: [t]he abduction or enticement of a child from a parent, or from a guardian entitled to its custody." Cal. Civ. Code § 49(a).

In a federal question action, which this is, "where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state." *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). Here, Nevada's choice of law rules determine whether Nevada or California law governs Plaintiff's claims. "The Nevada Supreme Court has held that the 'most significant relationship test found in the Restatement (Second) of Conflict of Laws § 145 governs choice of law in tort actions.'" *LaFlamme v. Safeway Inc.*, 2010 U.S. Dist. LEXIS 128657, at * (D. Nev. Dec. 3, 2010), quoting *Gen. Motors Corp. v. Eighth Jud. Dist. Court*, 122 Nev. 466, 134 P.3d 111, 116 (2006).

The Restatement determines which state's tort law will apply by examining the local law of the state that "with respect to that issue, has the most significant relationship to the occurrence and the parties." Restatement (Second) of Conflict of Laws, § 145(a). The contacts to be taken into account to determine the law applicable to an issue are: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (d) the place where the relationship between the parties is centered. *See id.*, § 145(2).

Applying these contacts to Sternberg's claim and while Defendant Warneck vigorously denies that she kidnapped her children and disputes the facts as alleged by Sternberg, he pleads the following in his Second Amended Complaint:

/ / /

/ / /

/ / /

- That he moved "back home to Nevada in 2015" (¶ 7);
- That by "2018 and 2019, Nevada had become the center of the children's daily lives, schooling, activities, and relationships" (¶ 9);
- That his exercise of "parental rights and responsibilities" occurred in Nevada (¶ 10);
- That he relied on Ms. Warneck's alleged promise to return the children to Nevada when he let her take them (¶ 15);
- That Warneck failed to return the children to Nevada (¶ 16); and
- That California courts had no authority or jurisdiction over his custody dispute with Ms. Warneck (¶ 22).

Here, the Court is required to accept all factual allegations pled by Plaintiff Sternberg as true. *See Twombly*, 550 U.S. at 555. Sternberg's own allegations make it abundantly clear that Nevada law applies to this case. He does not allege any California connection to the alleged kidnapping of his children other than that's where he alleges Ms. Warneck took them. He alleges that he lives in Nevada, that the children live in Nevada, that the children were kidnapped in Nevada, and that California has no jurisdiction over this dispute. Plaintiff's own allegations make it clear that Nevada law applies to this case, not California's. This claim must be dismissed.

Even if California law did apply to this case, as the mother of the children, Warneck cannot be liable for violation of Cal. Civ. Code § 49. In long-standing precedent, the California court of appeal held that "Section 49 of the Civil Code forbids the abduction of a child *from* a parent." (emphasis added) *Rosefield v. Rosefield*, 221 Cal. App. 2d 431, 433-34 (1st Dist. 1963). In that case, a child's mother brought an action against the child's father and grandfather for abducting and concealing her child. The court held that the section applied to the grandfather, who had no custodial rights over the child, but that the section did not apply to the father. *See id.* As the mother with custodial rights over her children, Ms. Warneck could not legally kidnap them under California law. This claim must be dismissed.



RANDAZZA | LEGAL GROUP

Finally, as with his other civil conspiracy claims, Sternberg cannot maintain a claim for conspiracy to violate § 49(a) if he has no claim for violation of the statute. *See* Section 4.2, *supra*. His conspiracy claim must be dismissed.

**4.4 Declaratory Relief and Injunctive Relief (Claim XX)**

The final claim that Sternberg asserts against Ms. Warneck is for declaratory and injunctive relief related to his § 1983 claims. There is no basis for this claim, and it must be dismissed.

First, a request for injunctive relief is not an independent claim. It is a remedy that must be tied to a valid claim for relief properly pled in the complaint. *See Blair v. Rent-a-Center, Inc.*, 928 F.3d 819, 832 (9th Cir. 2019). Given that his § 1983 claims fail, Sternberg cannot maintain a request for injunctive relief based upon those claims.

Additionally, Sternberg cannot obtain declaratory relief without pleading a valid underlying claim. *See Mehta v. Wells Fargo Bank, NA*, 2017 U.S. Dist. LEXIS 223523, at *7 (C.D. Cal. Oct. 17, 2017). If the underlying claim is dismissed, the declaratory relief claim must also be dismissed. *See id.* Again, his constitutional claims are invalid, meaning that this claim is also invalid. It must be dismissed with prejudice.

**4.5 Tortious Interference with Parental Rights (Claim VIII) and Conspiracy to Interfere with Parental Rights (Claim IX)**

Defendant Warneck contends that tortious interference with parental rights does not exist as a claim for relief in Nevada. This Court has previously recognized that it has never been recognized as a claim by the Nevada Supreme Court but permitted Sternberg to re-assert this claim in his Second Amended Complaint and move to send the question of whether it is a claim for relief in this state to the Supreme Court of Nevada. *See Sternberg*, 2024 U.S. Dist. LEXIS 207465, at *25.

Sternberg has already moved to send the question of whether this claim exists to the Nevada Supreme Court. *See* ECF 335. Given this Court's expressed willingness to grant that Motion, Defendant Warneck does not oppose it and consents to the stay as to that count that he requested



RANDAZZA | LEGAL GROUP

until the issue has been resolved by the Nevada Supreme Court.[3] Ms. Warneck will argue against the existence of this claim with that Court, which will necessarily serve to dismiss it and Sternberg's companion conspiracy claim.

## 5.0 THIS COURT SHOULD STRIKE PLAINTIFF'S UNAUTHORIZED THIRD AMENDED COMPLAINT

On June 5, 2026, Sternberg filed a document he titled a Notice of Corrected Image (ECF 333). In it, he stated that he "corrected" his Second Amended Complaint by adding new Defendants to "various causes of action" and "adding a few missing facts." ECF 333 at 1. In other words, Sternberg filed an unauthorized Third Amended Complaint without asking the parties to stipulate or seeking leave of Court in violation of Fed. R. Civ. P. 15.[4]

When a plaintiff files an amended complaint without complying with Fed. R. Civ. P. 15(a)(2), it is within the Court's discretion to strike it. *See Hayes v. Idaho Corr. Ctr.*, 812 F. App'x 568, 569 (9th Cir. 2020). This Court has the power to control its docket, and this includes the power to strike items from the docket. *See Ready Transp. Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010). The Court should exercise that discretion here and strike Sternberg's unauthorized Third Amended Complaint.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[3] However, the rest of the claims should be resolved and dismissed

[4] It is worth noting that we reached out and offered to stipulate. *See* June 5 email exchange between Marc Randazza and Michael Sternberg, attached as **Exhibit F**.



RANDAZZA | LEGAL GROUP

## 6.0 CONCLUSION

For each and every reason discussed herein, Defendant Shelley Warneck requests that the Court grant this Motion. The claims that Plaintiff Michael Sternberg has asserted against her for constitutional violations under § 1983, abuse of process, violation of California Civil Code § 49(a), civil conspiracy, and declaratory and injunctive relief fail and cannot be maintained. Permitting him to amend again would be futile, so the claims should be dismissed with prejudice.

Dated: June 12, 2026.

Respectfully submitted,

RANDAZZA LEGAL GROUP, PLLC
/s/ Ronald D. Green
Marc J. Randazza, NV Bar No. 12265
Ronald D. Green, NV Bar No. 7360
Randazza Legal Group, PLLC
8991 W. Flamingo Rd., Ste. B
Las Vegas, NV 89147

Attorneys for Shelley Warneck

RANDAZZA | LEGAL GROUP

Case No. 2:23-cv- cv-01466-APG-EJY

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 12, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

/s/ Ronald D. Green
RONALD D. GREEN

RANDAZZA | LEGAL GROUP