Michael C. Sternberg, Self Represented
8545 W Warm Springs Rd Ste A4 #256
Las Vegas, NV 89113
702.234.2539
sternberg_michael@yahoo.com
Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL C. STERNBERG<br><br>Plaintiffs<br><br>v.<br><br>SHELLEY WARNECK, et al.<br><br>Defendants | Consolidated Cases:<br><br>Case No. 2:23-cv-01466-APG-EJY<br>Caso No. 2:23-cv-02022-APG-EJY<br><br>**SECOND AMENDED COMPLAINT**<br>**JURY DEMANDED** |

## INTRODUCTION

This action arises from a years-long course of conduct that began with the removal of Plaintiff's children from Nevada in July 2019 and expanded into a pattern of fraud, denial of due process, false criminal proceedings, false arrest, unlawful incarceration, deprivation of parental rights, unlawful retention of property, unlawful firearm restrictions, refusal to investigate reported crimes, and continuing enforcement of proceedings that Plaintiff alleges are void.

Plaintiff alleges that California family-court proceedings were procured and maintained through fraud, material omissions, ex parte communications, denial of notice, denial of opportunity to be heard, and violations of California law and the United States Constitution.

Plaintiff further alleges that multiple Nevada actors received extensive notice concerning those defects and nevertheless participated in, ratified, enforced, relied upon, or refused to investigate conduct arising from those proceedings.

This action seeks declaratory relief, injunctive relief, compensatory damages, punitive damages, nominal damages, and such further relief as the Court deems appropriate.

**JURISDICTION AND VENUE**

This Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

This Court has jurisdiction pursuant to 28 U.S.C. § 1343 because Plaintiff seeks redress for deprivations of rights secured by the Constitution and laws of the United States.

This Court has supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as the federal claims.

Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to the claims occurred within the District of Nevada and numerous defendants reside or conduct business within this District.

**PARTIES**

Plaintiff Michael Sternberg is a natural person and citizen of Nevada.

Defendant Shelley Warneck is a natural person who, upon information and belief, resides in California.

Defendant Tristan Aeschleman is an attorney licensed in California.

Defendant Adames & Ash LLP is a law firm organized under the laws of California.

Defendant Aaron Ford was, at all relevant times, Attorney General of Nevada.

Defendant Dave Monroe was, at all relevant times, employed by the Nevada Attorney General's Office.

Defendant Gina Lovero was, at all relevant times, employed by the Nevada Attorney General's Office.

Defendant William Scott was, at all relevant times, employed by the Nevada Attorney General's Office.

Defendant Brent Foster was, at all relevant times, employed by the Nevada Attorney General's Office.

Defendant Christine Brady was, at all relevant times, employed by the Nevada Attorney General's Office.

Defendant James Thomas was, at all relevant times, employed by the Nevada Attorney General's Office.

Defendant Shaun Bowen was, at all relevant times, employed by the Nevada Attorney General's Office

Defendant Daniel Ulloa was, at all relevant times, employed by the Nevada Attorney General's Office.

Defendant Steve Wolfson was, at all relevant times, the elected Clark County District Attorney.

Defendant Caroline Morales was, at all relevant times, a Deputy District Attorney for Clark County.

Defendant Eleanor Hoskins was, at all relevant times, employed by LVMPD.

Defendant Ryan Boyle was, at all relevant times, employed by LVMPD.

Defendant Adam Seely was, at all relevant times, employed by LVMPD.

Defendant Esmerelda Boveda was, at all relevant times, employed by LVMPD.

Defendant Deana Lopez was, at all relevant times, employed by LVMPD.

Defendant Deanna Ohr was, at all relevant times, employed by LVMPD.

Defendant Brad Johnson was, at all relevant times, employed by LVMPD.

Defendant Richard Tenant was, at all relevant times, employed by LVMPD.

Defendant Joshua Stark was, at all relevant times, employed by LVMPD.

Defendant Joshua Martinez was, at all relevant times, employed by LVMPD.

Defendant Ashley Shenk was, at all relevant times, employed by LVMPD.

Defendant Bradley Gallup was, at all relevant times, employed by LVMPD.

Defendant Jorge Marty-Pagan was, at all relevant times, employed by the Office of the Sheriff at LVMPD.

Defendant LVMPD is a governmental entity organized under Nevada law.

Defendant Clark County is a political subdivision of Nevada.

Defendant Clark County School District Police Department is a governmental law-enforcement agency organized under Nevada law.

Defendant Jason Elfberg was, at all relevant times, employed by CCSDPD.

Defendant Henry Blackeye was, at all relevant times, employed by CCSDPD.

Defendant Eric Goodman is a Las Vegas Justice Court Judge.

Defendant Does 1–100 are persons or entities whose identities are presently unknown. Plaintiff will amend this complaint when their identities become known.

## FACTUAL ALLEGATIONS

### A. Nevada Residency and Status Quo Ante

1. Plaintiff is the father of E.W. and N.W.
2. In approximately 2012, Plaintiff and Defendant Shelley Warneck were involved in parentage proceedings in the Santa Clara County Superior Court.
3. Plaintiff and Warneck mutually agreed to dismiss those proceedings.
4. Following the dismissal, Plaintiff and Warneck operated for years as though the California proceedings had been terminated and no longer controlled the parties' conduct.
5. From approximately January 2013 until 2019, there was no activity in the California proceedings.
6. During that period, the parties exercised custody and visitation through private agreements and informal arrangements.
7. Plaintiff moved back home to Nevada in 2015 and traveled back and forth between California and Nevada for visitation with the children.

8. Plaintiff maintained his home, employment, community ties, and family relationships in Nevada.
9. By 2018 and 2019, Nevada had become the center of the children's daily lives, schooling, activities, and relationships. This occurred after Warneck was arrested for driving under the influence with the children in the vehicle, after which Plaintiff and Warneck mutually agreed that it was in the children's best interests to primarily and permanently reside in Nevada.
10. Plaintiff consistently exercised parental rights and responsibilities while residing in Nevada.
11. Plaintiff never abandoned his parental rights and never surrendered his right to the care, custody, companionship, and control of his children.

**B. Fraudulent Procurement of California Jurisdiction**

12. On May 7, 2019, Plaintiff and Warneck entered into an agreement regarding the children's summer visitation schedule.
13. Under that agreement, Warneck was to return the children to Plaintiff in Las Vegas, Nevada on July 7, 2019.
14. Warneck accepted the agreement and acted pursuant to it.
15. Plaintiff relied upon the agreement when permitting the children to leave Nevada with Warneck.
16. On July 7, 2019, Warneck failed to return the children to Nevada as agreed.
17. Instead, Plaintiff received correspondence from California attorney Tristan Aeschleman.
18. Aeschleman's correspondence advised Plaintiff that Warneck would not return the children and would instead seek relief through California proceedings.
19. At the time of the non-return, Warneck and Aeschleman were aware of the parties' agreement.
20. Plaintiff alleges that Warneck and Aeschleman knowingly participated in the decision to withhold the children from Nevada despite the agreement.

21. After the children were withheld, Warneck and Aeschleman sought to invoke the jurisdiction of the California courts.

22. Plaintiff alleges that California jurisdiction was procured, maintained, and exercised through material misrepresentations, omissions, ex parte communications, false declarations, and other fraudulent conduct.

23. Plaintiff further alleges that Warneck and Aeschleman knowingly advanced false or misleading facts concerning residency, custody, jurisdiction, and related issues.

24. Plaintiff alleges that the resulting California proceedings were infected by both intrinsic and extrinsic fraud.

25. Plaintiff further alleges that fraudulent conduct was repeatedly used to obtain, preserve, and enforce California orders affecting custody, visitation, and related matters.

26. After the July 2019 abduction, Plaintiff discovered that a purported stipulated judgment had been entered in the California proceedings despite Plaintiff never stipulating to that judgment.

27. Plaintiff further discovered that when Aeschleman initiated motion practice in 2019, he did not possess a copy of the California court file and that the file had to be retrieved from court storage before the proceedings could continue.

28. On August 7, 2019, a jurisdictional conference occurred between the Nevada and California courts.

29. Plaintiff alleges that the conference and resulting jurisdictional transfer proceedings were tainted by ex parte communications, improper consideration of non-noticed materials, denial of notice and opportunity to be heard, violations of California Family Code § 215, violations of California Family Code §§ 3408, 3425, and 3428, fraud, and other due process violations.

30. Plaintiff further alleges that the resulting jurisdictional transfer order is void and that subsequent California orders were either independently void or derived from the original void proceedings.

**C. Nevada Custodial Arrangement and Residency Evidence**

31. Prior to July 2019, the children resided in Nevada pursuant to the parties' agreements and course of conduct.
32. Warneck leased and occupied an apartment in Nevada.
33. Warneck registered to vote in Nevada.
34. Warneck represented under penalty of perjury that Nevada was her legal residence.
35. Plaintiff enrolled the children in Nevada schools.
36. The children attended school in Nevada during the relevant period.
37. The children developed significant educational, social, familial, and community connections within Nevada.
38. Plaintiff repeatedly informed courts, attorneys, and government officials that Nevada was the children's home state and the center of their daily lives.
39. Plaintiff further informed courts and government officials that California jurisdiction was being asserted through materially false representations.
40. On May 22, 2025, U.S. Judge Gordon found that genuine disputes of material fact existed regarding whether Warneck knowingly made false statements concerning residency, custody, and related issues.
41. Plaintiff alleges that Warneck's representations regarding California residency, Nevada residency, and jurisdiction were knowingly false or materially misleading.
42. Plaintiff further alleges that Aeschleman knowingly advanced, repeated, relied upon, or concealed those misrepresentations.
43. Plaintiff further alleges that subsequent federal litigation assembled and presented substantial additional evidence regarding residency, custody, notice, service, jurisdiction, fraud, and related issues.

**D. Removal and Concealment of the Children**

44. Beginning in July 2019, Warneck refused to return the children to Nevada despite prior agreements and the parties' longstanding course of conduct.

45. Plaintiff immediately sought the children's return.

46. Plaintiff repeatedly reported that the children had been removed from Nevada without his consent.

47. Plaintiff repeatedly informed government officials that the children were expected to return to Nevada pursuant to the parties' agreement.

48. Plaintiff further informed government officials that California jurisdiction had been procured, maintained, or exercised through fraud, misrepresentations, omissions, or combinations thereof.

49. Plaintiff sought assistance from law enforcement agencies in Nevada and elsewhere.

50. Plaintiff attempted to file reports concerning parental abduction and related crimes.

51. Plaintiff supplied documents, emails, declarations, court filings, recordings, and other evidence supporting his position.

52. Plaintiff alleges that Warneck knowingly concealed material information from courts, law enforcement agencies, and other decision-makers.

53. Plaintiff further alleges that Warneck and Aeschleman coordinated efforts to prevent the return of the children to Nevada.

54. Plaintiff alleges that the children remained outside Nevada because of fraudulent court proceedings, fraudulent representations, unlawful enforcement efforts, or combinations thereof.

55. Plaintiff continued seeking the children's return through legal proceedings, administrative complaints, law-enforcement reports, public-records requests, and direct communications with government officials.

56. Plaintiff has never consented to the permanent removal of the children from Nevada.

57. Plaintiff has never surrendered his parental rights.

58. Plaintiff alleges that the continuing deprivation of his relationship with his children was caused, in whole or in part, by the conduct described in this complaint.

**E. Notice to California Officials**

59. Beginning in or about July 2019, Plaintiff repeatedly informed California officials that the children had been removed from Nevada without his consent and contrary to the parties' agreement.

60. Plaintiff repeatedly informed California officials that Nevada was the children's home state and that California jurisdiction was being asserted through fraud, misrepresentations, omissions, or combinations thereof.

61. Plaintiff repeatedly supplied evidence, emails, court filings, declarations, recordings, transcripts, and other materials supporting his position.

62. Plaintiff repeatedly informed California officials that Warneck had agreed to return the children to Nevada on July 7, 2019.

63. Plaintiff further informed California officials that the children had been withheld from Nevada pursuant to a plan formulated after they had already left the state.

64. Plaintiff informed California officials that he believed false statements were being submitted to courts, investigators, and other decision-makers.

65. Plaintiff repeatedly challenged California jurisdiction and repeatedly requested that California courts decline jurisdiction.

66. Plaintiff specifically raised issues concerning notice, service, due process, ex parte communications, jurisdiction, residency, fraud, and misconduct.

67. Plaintiff repeatedly asserted that California proceedings were being used to facilitate and prolong the removal of the children from Nevada.

68. Plaintiff informed California officials that orders were being sought and enforced without constitutionally adequate notice and opportunity to be heard.

69. Plaintiff repeatedly informed California officials that he believed crimes had been committed against him and his children.

70. Plaintiff further informed California officials that he believed false information was being provided to law enforcement personnel.

71. Plaintiff alleges that California officials possessed substantial information demonstrating that the underlying matter involved disputed facts, competing evidence, unresolved jurisdictional issues, allegations of fraud, and serious constitutional concerns.

72. Despite repeated notice, California officials continued to act upon, enforce, rely upon, or facilitate proceedings that Plaintiff alleges were void, fraudulent, unconstitutional, or combinations thereof.

**F. Notice to Nevada Officials Before Arrest**

73. Beginning in or about July 2019, Plaintiff repeatedly contacted Nevada law-enforcement agencies regarding the removal of the children from Nevada.

74. Plaintiff repeatedly reported that the children had been taken from Nevada without his consent.

75. Plaintiff repeatedly attempted to initiate criminal investigations concerning parental abduction and related crimes.

76. Plaintiff informed Nevada officials that California jurisdiction had been procured, maintained, or exercised through fraud, misrepresentations, omissions, or combinations thereof.

77. Plaintiff supplied Nevada officials with emails, court filings, declarations, recordings, transcripts, and other supporting materials.

78. Plaintiff repeatedly informed Nevada officials that California orders were being procured and enforced through unlawful means.

79. Plaintiff repeatedly requested investigations into parental abduction, fraud, false filings, perjury, official misconduct, and related offenses.

80. Plaintiff informed Nevada officials that he believed California investigators, attorneys, and other participants were relying upon false information.

81. Plaintiff repeatedly informed Nevada officials that California proceedings involved substantial jurisdictional disputes and unresolved factual conflicts.

82. Plaintiff repeatedly informed Nevada officials that he believed future law-enforcement action based upon the California proceedings would be unlawful.

83. Prior to September 29, 2021, Monroe and Lovero received or had access to reports, complaints, correspondence, recordings, evidence, and other materials supplied by Plaintiff.

84. Prior to September 29, 2021, Monroe and Lovero personally discussed the underlying dispute with Plaintiff and were aware of his allegations concerning fraud, jurisdiction, residency, custody, and related issues.

85. During a recorded interaction weeks before Plaintiff's arrest, Monroe acknowledged that Nevada officials had been receiving Plaintiff's complaints and evidence for years.

86. Plaintiff alleges that Monroe and Lovero knew, or deliberately ignored, substantial information demonstrating that the underlying matter involved disputed facts, competing evidence, unresolved jurisdictional issues, and allegations of fraud affecting the proceedings upon which enforcement efforts were based.

87. Plaintiff further alleges that material information concerning the underlying dispute was omitted from the process used to obtain the September 2021 warrant and that Monroe and Lovero knew this.

**G. Procurement of the 2021 Warrant**

88. In September 2021, California officials sought a warrant relating to Plaintiff and the parties' custody dispute.

89. Plaintiff alleges that the warrant process relied upon materially incomplete, false, misleading, or omitted information.

90. Plaintiff further alleges that exculpatory information known to various participants was omitted from the warrant process.

91. Plaintiff alleges that individuals involved in the warrant process possessed substantial information demonstrating that the underlying custody dispute involved unresolved jurisdictional issues, allegations of fraud, disputed facts, and competing evidence.

92. Plaintiff alleges that the resulting warrant would not have issued had decision-makers been provided a complete and accurate account of the underlying facts.
93. Plaintiff further alleges that the warrant process was used to enforce, preserve, and advance custody-related objectives that had been procured through fraud, unlawful conduct, or both.
94. On September 24, 2021, a California warrant was issued relating to Plaintiff.
95. Plaintiff alleges that the warrant was procured through false statements, material omissions, fraud, unlawful conduct, or combinations thereof.
96. Plaintiff further alleges that participants in the warrant process knowingly, recklessly, or deliberately disregarded information undermining the basis for issuance of the warrant.
97. Plaintiff alleges that the warrant became a substantial factor leading to his arrest, the seizure of his property, the removal of his children from Nevada, his incarceration, and the continuing deprivation of his parental rights.
98. Plaintiff further alleges that various defendants later continued to rely upon, enforce, ratify, defend, or refuse to investigate the conduct underlying the warrant despite receiving extensive notice of the facts described herein.

**H. September 29, 2021 Arrest and Transfer of Children**

99. On September 29, 2021, Plaintiff was operating a vehicle in Las Vegas, Nevada with his children present.
100. Acting under color of Nevada law, Nevada Attorney General personnel coordinated with other law-enforcement agencies concerning Plaintiff.
101. Plaintiff was subjected to a high-risk traffic stop.
102. Plaintiff’s vehicle was stopped in the presence of his children.
103. Plaintiff was removed from his vehicle at gunpoint.
104. Plaintiff was handcuffed and detained.
105. Plaintiff complied with officers’ commands and did not resist.
106. Plaintiff’s children witnessed the stop, detention, and arrest.

107. Plaintiff alleges that the arrest was undertaken without constitutionally sufficient probable cause.

108. Plaintiff further alleges that the arrest was based upon a warrant procured through false statements, material omissions, fraud, unlawful conduct, or combinations thereof.

109. Prior to the arrest, Monroe and Lovero possessed substantial information concerning Plaintiff's position, his evidence, his allegations of fraud, the disputed custody history, and the unresolved jurisdictional issues underlying the California proceedings.

110. Plaintiff alleges that Monroe and Lovero knew, or deliberately ignored, information demonstrating that the underlying matter involved disputed facts, competing evidence, unresolved jurisdictional issues, and allegations of fraud.

111. Plaintiff further alleges that Monroe and Lovero participated in, directed, approved, facilitated, or substantially contributed to the arrest despite possessing extensive notice concerning facts that undermined the basis for enforcement.

112. Plaintiff alleges that other participating law-enforcement personnel acted upon information supplied by Nevada Attorney General personnel without independently verifying whether the underlying California proceedings had been lawfully obtained.

113. Plaintiff was transported from the scene and deprived of his liberty.

114. Plaintiff's children were removed from his custody.

115. Plaintiff alleges that the removal of the children was a direct and foreseeable consequence of the arrest.

116. Plaintiff has not seen his children since September 29, 2021.

117. Plaintiff alleges that the arrest and resulting removal of the children substantially contributed to the continuing deprivation of his relationship with them.

**I. CCSDPD Participation in Arrest**

118. Personnel from the Clark County School District Police Department participated in events surrounding Plaintiff's arrest.

119. Prior to the arrest, Sergeant Jason Elfberg received communications relating to Plaintiff and the anticipated enforcement action.

120. Plaintiff alleges that Elfberg became involved after receiving requests or information from Nevada Attorney General personnel.

121. Plaintiff alleges that CCSDPD personnel assisted in locating, identifying, monitoring, stopping, detaining, or otherwise facilitating enforcement efforts directed at Plaintiff.

122. Plaintiff alleges that CCSDPD personnel had no independent basis to determine whether the California proceedings underlying the arrest had been lawfully obtained.

123. Plaintiff further alleges that CCSDPD personnel possessed no independent basis to determine whether Plaintiff had been lawfully charged in California.

124. Plaintiff alleges that CCSDPD personnel relied upon information supplied by other agencies.

125. Plaintiff includes these arrest-related allegations against CCSDPD personnel as background and context. Plaintiff's claims against Elfberg, Blackeye, and CCSDPD are based on timely post-arrest conduct, ratification, investigative refusals, and municipal-liability theories.

126. Following the arrest, Plaintiff repeatedly reported that the arrest had been unlawful.

127. Plaintiff repeatedly supplied evidence, documents, recordings, reports, and other materials supporting his position.

128. Plaintiff informed CCSDPD personnel that he believed the arrest had been procured through fraud and unlawful conduct.

129. Plaintiff requested investigations into the conduct of Nevada Attorney General personnel and others involved in the arrest.

130. Plaintiff alleges that CCSDPD personnel refused to conduct meaningful investigations despite repeated notice.

131. Plaintiff further alleges that CCSDPD personnel ratified, approved, tolerated, or failed to correct unconstitutional conduct after receiving notice of Plaintiff's allegations and supporting evidence.

132. Plaintiff alleges that supervisory personnel, including Elfberg and Blackeye, received notice concerning Plaintiff's allegations and failed to take corrective action.

133. Plaintiff further alleges that CCSDPD's conduct contributed to the continuing deprivation of Plaintiff's constitutional rights.

**J. Fugitive Proceedings, Morales Criminal Complaint, Goodman Bail Rulings, and Disparate Treatment of Fugitive Arrestees**

134. Following his arrest, Plaintiff was incarcerated in Clark County.

135. Plaintiff was subjected to fugitive proceedings arising from the California warrant.

136. Plaintiff alleges that the fugitive proceedings were based upon the same underlying fraud, misrepresentations, omissions, and jurisdictional defects described elsewhere in this complaint.

137. On or about October 5, 2021, Deputy District Attorney Caroline Morales executed a criminal complaint under penalty of perjury relating to Plaintiff.

138. Plaintiff alleges that Morales knowingly, recklessly, or deliberately included false, misleading, or materially incomplete information in the complaint.

139. Plaintiff further alleges that Morales falsely represented that Plaintiff was a fugitive from justice.

140. Plaintiff alleges that the complaint omitted material facts concerning the underlying custody dispute, jurisdictional issues, fraud allegations, and exculpatory information.

141. Plaintiff alleges that the complaint became a substantial factor in prolonging his incarceration.

142. During the fugitive proceedings, Plaintiff repeatedly challenged the legality of the warrant and the underlying California proceedings.

143. Plaintiff repeatedly asserted that the warrant had been procured through fraud and material omissions.

144. Plaintiff further asserted that the California proceedings lacked valid jurisdiction and had been conducted without due process.

145. Despite those challenges, Plaintiff remained incarcerated.

146. Plaintiff alleges that Judge Goodman treated him differently than similarly situated individuals arrested on Nevada warrants.

147. Plaintiff alleges that Nevada citizens arrested on Nevada warrants are generally entitled to bail except under limited circumstances established by law.

148. Plaintiff alleges that he was denied equivalent treatment solely because the warrant originated from another state.

149. Plaintiff further alleges that NRS 179.209, as applied, permitted the denial or withholding of bail in a manner inconsistent with due process and equal protection principles.

150. Plaintiff remained incarcerated for approximately two weeks.

151. Plaintiff alleges that he was effectively forced to choose between continued incarceration and waiver of rights associated with the extradition process.

152. Plaintiff further alleges that the fugitive process routinely subjects similarly situated individuals to disparate treatment not imposed upon persons arrested on Nevada warrants.

153. Plaintiff alleges that the conduct described herein caused loss of liberty, emotional distress, financial damages, deprivation of parental rights, and other injuries according to proof.

**K. Wolfson Notice, Failure to Investigate, and Failure to Report Morales**

154. Following his arrest and incarceration, Plaintiff repeatedly sought investigations into the conduct of California and Nevada officials.

155. Plaintiff submitted complaints, reports, correspondence, evidence, recordings, court filings, and supporting materials to numerous agencies and decision-makers.

156. Plaintiff specifically complained that the warrant process had been procured through fraud, false statements, material omissions, and related misconduct.

157. Plaintiff further complained that Morales had executed a sworn criminal complaint containing false or misleading information.

158. Plaintiff requested investigations into Morales, Nevada Attorney General personnel, law-enforcement personnel, and others involved in the arrest and prosecution.

159. On December 28, 2022, Plaintiff delivered a written complaint to the Clark County District Attorney's Office.

160. Plaintiff's complaint requested investigation of Morales, Nevada Attorney General personnel, and others identified in the complaint.

161. Plaintiff supplied supporting evidence and offered additional information.

162. Plaintiff subsequently followed up regarding the status of the complaint.

163. Plaintiff alleges that Steve Wolfson received actual notice concerning Plaintiff's allegations.

164. Plaintiff further alleges that Wolfson received notice that Morales had executed a sworn criminal complaint that Plaintiff contends contained false information.

165. Plaintiff alleges that Wolfson received notice concerning Plaintiff's allegations of fraud, false arrest, unlawful incarceration, and related misconduct.

166. Plaintiff further alleges that Wolfson failed to conduct a meaningful investigation.

167. Plaintiff alleges that Wolfson failed to report misconduct despite receiving substantial information supporting Plaintiff's allegations.

168. Plaintiff further alleges that Wolfson ratified, tolerated, approved, condoned, or failed to prevent unconstitutional conduct despite receiving extensive notice.

169. Plaintiff alleges that Wolfson's conduct contributed to the continuing deprivation of Plaintiff's rights.

**L. Retention of Firearm and Property**

170. At the time of his arrest, Plaintiff lawfully possessed personal property, including a firearm and related items.

171. Following the arrest, Plaintiff's firearm and related property were seized.

172. Plaintiff repeatedly demanded return of his property.

173. Plaintiff repeatedly informed government officials that continued retention of the property was unlawful.

174. Plaintiff alleges that Nevada Attorney General personnel retained possession or control of the property without a warrant authorizing continued retention.

175. Plaintiff further alleges that no lawful basis existed for prolonged retention of the property.

176. Following his release, Plaintiff repeatedly contacted government officials regarding return of his property.

177. Plaintiff communicated with Brent Foster regarding the firearm and related property.

178. Plaintiff informed Foster that the arrest had been unlawful and demanded return of the property.

179. Plaintiff further informed Foster that the underlying warrant and proceedings were tainted by fraud and constitutional violations.

180. Foster advised Plaintiff that the firearm would be returned once a process could be established for doing so.

181. Plaintiff alleges that Foster possessed actual notice concerning Plaintiff's allegations of false arrest and unlawful property retention.

182. Plaintiff continued communicating with officials concerning return of the firearm.

183. Plaintiff submitted complaints and supporting materials regarding the retention.

184. Plaintiff further sought review by supervisory officials.

185. Daniel Ulloa, William Scott, Christine Brady, Aaron Ford, James Thomas, and others received notice concerning Plaintiff's allegations.

186. Plaintiff alleges that these officials possessed sufficient information to investigate, intervene, or facilitate return of the property.

187. Despite repeated notice, Plaintiff's firearm remained in government custody for approximately one year.

188. On August 4, 2022, Plaintiff personally visited the Nevada Attorney General's Office and again reported that Monroe and Lovero had participated in a false arrest and that his firearm continued to be wrongfully retained.

189. Plaintiff further requested investigation and corrective action.

190. On August 16, 2022, Nevada officials returned Plaintiff's firearm.

191. Plaintiff alleges that the prolonged retention of the firearm and related property violated his constitutional and property rights.

192. Plaintiff further alleges that various supervisory officials ratified, tolerated, approved, or failed to correct unlawful conduct after receiving notice.

**M. Prohibited Possessor Designation and CCW Revocation**

193. Plaintiff possessed a Nevada concealed firearm permit.

194. Plaintiff applied for renewal of his permit.

195. During the renewal process, Plaintiff objected to portions of LVMPD's application procedures and waiver requirements.

196. Plaintiff contended that portions of the waiver exceeded lawful authority and imposed conditions not authorized by statute.

197. Plaintiff repeatedly communicated those concerns to LVMPD personnel and legal staff.

198. Plaintiff alleges that LVMPD personnel previously acknowledged that portions of Plaintiff's objections had merit and accommodated his concerns.

199. Following the events surrounding the California criminal case, LVMPD personnel classified Plaintiff as a prohibited possessor.

200. Plaintiff's concealed firearm permit was revoked.

201. Plaintiff's renewal application was denied.

202. Plaintiff alleges that LVMPD personnel relied upon 18 U.S.C. § 922(n) as authority for the revocation and denial.

203. Plaintiff repeatedly challenged that interpretation.

204. Plaintiff requested legal authority supporting the position that a person merely under information for a felony offense was prohibited from possessing firearms under Nevada law.

205. Plaintiff communicated those concerns to Ashley Shenk, Bradley Gallup, Jorge Marty-Pagan, LVMPD personnel, and others.

206. Plaintiff further submitted public-records requests seeking authority supporting the interpretation.

207. Plaintiff alleges that no responsive authority was produced supporting the interpretation advanced by LVMPD personnel.

208. During a recorded conversation, Gallup maintained that Plaintiff was prohibited from obtaining renewal of his permit because of the California criminal case.

209. Plaintiff disputed that interpretation and repeatedly explained his position.

210. Plaintiff further informed LVMPD personnel that the underlying California proceedings were tainted by fraud, false statements, jurisdictional defects, and constitutional violations.

211. Marty-Pagan later advised Plaintiff that he was reviewing the issues Plaintiff had raised.

212. Marty-Pagan subsequently advised Plaintiff that he remained in the process of evaluating those concerns.

213. Plaintiff alleges that LVMPD personnel possessed actual notice concerning his objections and supporting evidence.

214. Plaintiff further alleges that LVMPD personnel continued to maintain the prohibited-possessor designation despite that notice.

215. Plaintiff ultimately regained his permit only after being required to proceed through the application process again.

216. Plaintiff alleges that the revocation, denial, prohibited-possessor designation, and related policies violated his constitutional rights.

217. Plaintiff further alleges that LVMPD policies, customs, practices, supervisory decisions, and ratification contributed to those violations.

**N. LVMPD Refusal to Accept Reports and Follow Policy 4.158**

218. Beginning in July 2019, Plaintiff repeatedly sought assistance from the Las Vegas Metropolitan Police Department regarding the removal of his children from Nevada.

219. Shortly after July 7, 2019, Plaintiff attempted to report the removal of his children as a criminal matter.

220. Plaintiff was informed that the matter was civil in nature and that a report would not be accepted.

221. Plaintiff requested authority supporting that position.

222. Plaintiff alleges that LVMPD personnel were unable to identify lawful authority supporting the refusal.

223. Plaintiff subsequently learned that LVMPD maintained written policies concerning violations of NRS 200.359.

224. Plaintiff alleges that those policies required actions materially different from the actions actually taken by LVMPD personnel.

225. Plaintiff repeatedly informed LVMPD personnel that their conduct was inconsistent with written policy.

226. Plaintiff repeatedly requested criminal investigations concerning parental abduction and related offenses.

227. Plaintiff repeatedly requested that reports be accepted and processed.

228. Plaintiff alleges that multiple LVMPD employees characterized the matter as civil despite the existence of criminal statutes and departmental policies addressing the conduct.

229. Plaintiff alleges that LVMPD personnel repeatedly impeded, delayed, discouraged, obstructed, or refused reporting efforts.

230. Plaintiff further alleges that those actions were not isolated incidents.

231. Plaintiff alleges that similar conduct occurred across multiple LVMPD facilities and involved multiple employees over a period of years.

232. Plaintiff contends that the repeated refusals reflected policies, customs, practices, failures of training, failures of supervision, ratification, or combinations thereof.

233. Plaintiff further alleges that LVMPD personnel repeatedly failed to comply with Policy 4.158 and related procedures.

234. Plaintiff alleges that these failures contributed to the continued deprivation of his parental rights and the continued enforcement of void and fraudulent proceedings.

**O. LVMPD Internal Affairs, Sheriff's Office Notice, and Ratification**

235. Plaintiff repeatedly complained to LVMPD supervisors regarding reporting refusals, investigative failures, and policy violations.

236. Plaintiff filed Internal Affairs complaints concerning the conduct of LVMPD personnel.

237. Plaintiff identified employees, provided names and P-numbers, submitted supporting documentation, and requested investigations.

238. Plaintiff further supplied recordings, correspondence, reports, public-records responses, policies, and other evidence.

239. Plaintiff alleges that Ryan Boyl participated in review of complaints concerning reporting refusals and related misconduct.

240. Plaintiff alleges that Boyl advised Plaintiff that LVMPD did not take reports for the type of conduct Plaintiff sought to report.

241. Plaintiff alleges that Boyl refused to provide authority supporting that position and directed Plaintiff elsewhere for relief.

242. Plaintiff further alleges that Boyl participated in the ratification of conduct described in this complaint.

243. Plaintiff alleges that Adam Seely reviewed complaints relating to reporting refusals, investigative failures, and related misconduct.

244. Plaintiff further alleges that Seely approved, tolerated, condoned, or ratified conduct despite receiving notice of Plaintiff's allegations.

245. Plaintiff alleges that Esmeralda Boveda later became involved in review of Plaintiff's complaints.

246. Plaintiff alleges that Boveda possessed notice concerning Plaintiff's allegations and supporting evidence.

247. Plaintiff further alleges that Boveda approved, tolerated, condoned, or ratified conduct despite receiving that notice.

248. Plaintiff repeatedly attempted to elevate his concerns through supervisory channels.

249. Plaintiff contacted public-affairs personnel, command personnel, Internal Affairs personnel, legal personnel, and the Office of the Sheriff.

250. Plaintiff repeatedly advised those individuals that written policy was not being followed.

251. Plaintiff further advised them that criminal reports were being blocked, evidence was being rejected, and investigations were not being conducted.

252. On March 14, 2022, Plaintiff spoke with Jorge Marty-Pagan of the Office of the Sheriff.

253. During that conversation, Plaintiff detailed the reporting refusals, investigative failures, Internal Affairs concerns, parental-abduction allegations, firearm-retention issues, and CCW-related concerns.

254. Marty-Pagan provided Plaintiff with his identifying information and requested supporting information.

255. Marty-Pagan subsequently advised Plaintiff that he was reviewing the issues Plaintiff had raised.

256. Marty-Pagan later advised Plaintiff that he remained in the process of evaluating those concerns.

257. Plaintiff alleges that Marty-Pagan possessed extensive notice concerning the conduct described in this complaint.

258. Plaintiff further alleges that no meaningful corrective action followed.

259. Plaintiff repeatedly informed LVMPD personnel that their conduct was contributing to ongoing violations of his constitutional rights.

260. Plaintiff alleges that LVMPD personnel repeatedly possessed notice, authority, and opportunity to intervene but failed to do so.

261. Plaintiff further alleges that supervisory personnel repeatedly ratified unconstitutional conduct after receiving actual notice.

**P. CCSDPD Post-Arrest Notice, Internal Affairs, and Ratification**

262. Following his arrest, Plaintiff repeatedly informed CCSDPD personnel that the arrest had been unlawful.

263. Plaintiff supplied documents, reports, recordings, public-records responses, court filings, and supporting materials.

264. Plaintiff further supplied evidence concerning the underlying custody dispute, fraud allegations, jurisdictional issues, and warrant process.

265. Plaintiff informed CCSDPD personnel that Nevada Attorney General personnel had participated in a false arrest.

266. Plaintiff requested criminal investigations into the conduct of Nevada Attorney General personnel and others.

267. Plaintiff alleges that Detective Cheryl Jones received reports, evidence, and supplemental materials concerning Plaintiff's allegations.

268. Plaintiff further alleges that Jones advised Plaintiff that CCSDPD would not investigate Nevada Attorney General personnel.

269. Plaintiff challenged that position and requested supporting authority.

270. Plaintiff alleges that no policy or law was identified that prevented investigation.

271. Plaintiff further alleges that CCSDPD public-records responses later confirmed the absence of such authority.

272. Plaintiff repeatedly communicated with Sergeant Jason Elfberg regarding the same issues.

273. Plaintiff informed Elfberg that he believed Nevada Attorney General personnel had participated in false arrest, unlawful property retention, parental-rights violations, and related misconduct.

274. Plaintiff further supplied supporting evidence.

275. Plaintiff alleges that Elfberg nevertheless declined to initiate meaningful investigations.

276. Plaintiff further alleges that Elfberg later restricted communications and required that future contact proceed through him.

277. Plaintiff filed Internal Affairs complaints concerning the conduct of CCSDPD personnel.

278. Plaintiff identified specific employees and provided supporting evidence.

279. Plaintiff alleged that CCSDPD personnel improperly refused to investigate crimes and improperly refused to investigate Nevada Attorney General personnel.

280. Plaintiff further alleged that supervisory personnel ratified unlawful conduct.

281. Plaintiff alleges that Henry Blackeye received notice concerning Plaintiff's allegations through Internal Affairs processes and related complaints.

282. Plaintiff further alleges that Blackeye approved, tolerated, condoned, or ratified conduct despite receiving notice and supporting evidence.

283. Plaintiff alleges that CCSDPD repeatedly possessed notice concerning Plaintiff's allegations of false arrest, unlawful incarceration, parental-rights violations, property retention, and related misconduct.

284. Plaintiff further alleges that CCSDPD repeatedly failed to conduct meaningful investigations despite receiving substantial evidence and repeated requests for action.

285. Plaintiff contends that those failures reflected policies, customs, practices, failures of supervision, failures of training, ratification, or combinations thereof.

286. Plaintiff further alleges that the conduct of CCSDPD personnel contributed to the continuing deprivation of his constitutional rights.

**Q. Clark County Detention Conditions and Release Practices**

287. Following his arrest, Plaintiff was incarcerated at the Clark County Detention Center.

288. Plaintiff remained incarcerated for approximately two weeks.

289. During the initial portion of his incarceration, Plaintiff was housed in an overcrowded holding area.

290. Plaintiff alleges that the holding area contained more inmates than available sleeping accommodations.

291. As a result, Plaintiff was forced to sleep on a concrete floor beneath a bench.

292. Plaintiff remained in those conditions for approximately five days.

293. Plaintiff alleges that detention personnel maintained extremely cold temperatures in the holding area.

294. Plaintiff was provided only limited clothing and no meaningful protection from the cold.

295. Plaintiff alleges that inmates attempted to block cold air vents using wet toilet paper because of the extreme temperatures.

296. Plaintiff further alleges that detention personnel knew, or should have known, that inmates were being exposed to prolonged cold conditions.

297. Plaintiff alleges that he was denied meaningful sleep and subjected to unnecessary physical discomfort.

298. Plaintiff further alleges that supervisory personnel knew, or should have known, of the overcrowding and environmental conditions.

299. Upon release, Plaintiff was escorted to retrieve his property.

300. Plaintiff alleges that detention personnel threatened inmates with return to custody if they did not immediately leave the facility.

301. Plaintiff alleges that he was not given a meaningful opportunity to inventory his property before release.

302. Plaintiff further alleges that he was forced outside wearing only limited clothing before he could properly prepare for release.

303. Plaintiff alleges that he was required to leave the facility without first verifying that all of his property had been returned.

304. Plaintiff contends that these conditions and release practices violated his constitutional rights.

**R. Post-Arrest Notice and Ratification**

305. Following his arrest and release from custody, Plaintiff embarked upon a multi-year effort to report misconduct, obtain investigations, recover property, challenge unlawful actions, and protect his constitutional rights.

306. Plaintiff repeatedly submitted complaints to local, state, and federal agencies.

307. Plaintiff repeatedly supplied evidence supporting his allegations.

308. Plaintiff submitted reports, recordings, correspondence, public-records requests, public-records responses, court filings, transcripts, declarations, and investigative materials.

309. Plaintiff repeatedly identified specific individuals involved in the conduct described in this complaint.

310. Plaintiff repeatedly requested investigations into false arrest, parental-rights violations, fraud, unlawful property retention, perjury, false filings, and related misconduct.

311. Plaintiff repeatedly informed government officials that California orders had been procured through fraud and were void.

312. Plaintiff repeatedly informed government officials that constitutional violations were ongoing.

313. Plaintiff alleges that many officials acknowledged receipt of his complaints and evidence.

314. Plaintiff further alleges that those officials nevertheless failed to take meaningful corrective action.

315. Plaintiff contends that repeated notice followed by repeated inaction constitutes evidence of ratification, deliberate indifference, custom, policy, practice, or combinations thereof.

**S. Federal Litigation Findings**

316. Plaintiff initiated federal litigation challenging the conduct described in this complaint.

317. During the course of that litigation, substantial additional evidence was assembled and presented to federal courts through pleadings, motions, exhibits, judicial notice requests, declarations, recordings, transcripts, public records, and related submissions.

318. Through motion practice, evidentiary submissions, and judicial rulings, substantial additional information was developed concerning residency, jurisdiction, fraud, service, notice, custody, law-enforcement conduct, and related issues.

319. On May 22, 2025, U.S. Judge Gordon found that genuine disputes of material fact existed regarding whether Warneck knowingly made false statements concerning residency, custody, and related issues.

320. Judge Gordon further found evidence from which a reasonable jury could conclude that Aeschleman served documents different from those filed with the California family court and made false representations regarding service and notice.

321. Plaintiff alleges that these findings substantially corroborated allegations he had been making to courts, law-enforcement agencies, and government officials for years.

**T. Post-Reconsideration Notice and Ratification**

322. Following Judge Gordon's May 22, 2025 order, Plaintiff continued providing notice to defendants, government agencies, and decision-makers.

323. Plaintiff supplied copies of Judge Gordon's order together with supporting evidence and subsequently developed evidence.

324. Plaintiff informed government officials that the United States District Court for the District of Nevada had identified genuine disputes concerning fraud, residency, custody, service, notice, and related issues.

325. Plaintiff further informed government officials that federal findings undermined the validity of the California proceedings and the conduct that flowed from those proceedings.

326. Plaintiff alleges that many defendants received actual notice of Judge Gordon's findings and the evidence underlying those findings.

327. Plaintiff alleges that various defendants nevertheless continued to rely upon, defend, enforce, ratify, or refuse to investigate the conduct described in this complaint.

328. Plaintiff contends that those actions provide additional evidence of ratification, deliberate indifference, and continuing constitutional violations.

**U. Joint Action and Concerted Conduct Among Defendants**

329. Plaintiff alleges that multiple defendants acted in concert to deprive him of constitutional rights.

330. Plaintiff alleges that various defendants shared information, relied upon information supplied by one another, acted upon common objectives, or otherwise coordinated their conduct.

331. Plaintiff further alleges that different defendants played different roles in a common sequence of events.

332. Plaintiff alleges that some defendants procured orders, some procured warrants, some executed arrests, some retained property, some denied investigations, some ratified misconduct, and some enforced or relied upon void proceedings.

333. Plaintiff contends that these actions were interconnected and mutually reinforcing.

334. Plaintiff further alleges that many defendants possessed notice concerning misconduct by other participants and nevertheless continued to rely upon, support, defend, or ratify that conduct.

335. Plaintiff alleges that the conduct described in this complaint reflects coordinated, interdependent, or mutually reinforcing actions by multiple participants acting over a period of years.

**V. Municipal Policies, Customs, Practices, and Ratification**

336. Plaintiff alleges that the constitutional violations described in this complaint were not solely the result of isolated misconduct by individual actors.

337. Plaintiff alleges that governmental entities maintained policies, customs, practices, failures of supervision, failures of training, failures of discipline, ratification, deliberate indifference, or combinations thereof.

338. Plaintiff alleges that LVMPD maintained customs or practices of refusing reports, discouraging reporting, failing to investigate, ratifying misconduct, and disregarding written policy.

339. Plaintiff further alleges that LVMPD maintained customs or practices relating to concealed-firearm-permit administration, prohibited-possessor determinations, and related constitutional issues.

340. Plaintiff alleges that Clark County maintained customs, practices, policies, failures of supervision, or failures of training that resulted in unconstitutional conditions of confinement and release practices.

341. Plaintiff alleges that CCSDPD maintained customs, practices, policies, failures of supervision, failures of training, or ratification that resulted in investigative failures and constitutional violations.

342. Plaintiff further alleges that supervisory personnel repeatedly received notice concerning constitutional violations and failed to take corrective action.

343. Plaintiff contends that these policies, customs, practices, failures of supervision, failures of training, and ratification were moving forces behind the constitutional injuries alleged in this complaint.

344. Plaintiff further alleges that municipal defendants remain responsible for continuing constitutional injuries resulting from those policies, customs, practices, failures of supervision, failures of training, and ratification.

**W. Specific Fraud Allegations Under Rule 9(b)**

345. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

346. Plaintiff alleges that various defendants knowingly made false statements, concealed material facts, submitted misleading information, omitted material information, relied upon false information, or otherwise participated in fraudulent conduct affecting custody proceedings, jurisdictional determinations, criminal proceedings, law-enforcement actions, and related matters.

347. Plaintiff further alleges that these acts were material because they influenced courts, law-enforcement personnel, prosecutors, investigators, and other decision-makers.

**Warneck Residency and Jurisdiction Fraud**

348. Plaintiff alleges that Warneck represented to courts and decision-makers that she remained a California resident and that California retained jurisdiction over custody matters.

349. Plaintiff alleges that these representations were false, misleading, materially incomplete, or combinations thereof.

350. Plaintiff alleges that at relevant times Warneck maintained an apartment in Nevada, registered to vote in Nevada, represented under penalty of perjury that Nevada was her legal residence, and enrolled the children in Nevada schools.

351. Plaintiff alleges that these facts were inconsistent with representations made to courts and decision-makers concerning residency and jurisdiction.

352. Plaintiff alleges that Warneck knew that she and Plaintiff had mutually agreed to dismiss the California proceedings in 2012.

353. Plaintiff further alleges that Warneck concealed that agreement from courts and decision-makers while seeking to invoke California jurisdiction.

354. Plaintiff alleges that Warneck knew Plaintiff never stipulated to the purported 2012 stipulated judgment.

355. Plaintiff further alleges that the purported stipulated judgment was submitted to the court by Warneck's attorney in 2012 without Plaintiff's knowledge or consent.

356. Plaintiff alleges that Warneck concealed these facts from courts and decision-makers.

357. Plaintiff alleges that the purported stipulated judgment became the sole stated basis upon which California courts exercised continuing jurisdiction over Plaintiff and the children.

358. Plaintiff alleges that the representations and omissions described above were material because they directly affected jurisdictional determinations and custody proceedings.

**Warneck Custody and Removal Fraud**

359. Plaintiff alleges that Warneck entered into the May 2019 summer visitation agreement with Plaintiff.

360. Under that agreement, Warneck agreed to return the children to Plaintiff in Nevada on July 7, 2019.

361. Plaintiff alleges that before entering into that agreement, Warneck had already consulted with Aeschleman regarding retaining the children in California and seeking California court intervention.

362. Plaintiff alleges that Warneck entered into the agreement knowing that she did not intend to honor it.

363. Plaintiff further alleges that Warneck obtained possession of the children through false pretenses by representing that she intended to comply with the agreement.

364. Plaintiff alleges that Plaintiff relied upon those representations when allowing the children to leave Nevada.

365. Plaintiff alleges that Warneck refused to return the children on July 7, 2019 pursuant to a plan that had already been formulated before the agreed return date.

366. Plaintiff alleges that these representations and omissions were material because they enabled the removal and continued retention of the children outside Nevada and became the foundation for subsequent custody litigation.

**Aeschleman Service and Notice Fraud**

367. Plaintiff alleges that Aeschleman represented to courts and decision-makers that service and notice requirements had been satisfied.

368. Plaintiff alleges that documents were served, filed, transmitted, described, characterized, or represented in ways that were false, misleading, materially incomplete, or combinations thereof.

369. Plaintiff alleges that Aeschleman submitted, transmitted, relied upon, or caused others to rely upon documents that differed from documents actually filed with the court.

370. Plaintiff alleges that Judge Gordon found evidence from which a reasonable jury could conclude that Aeschleman served documents different from those filed with the California family court and made false representations concerning service and notice.

371. Plaintiff alleges that Aeschleman represented that Plaintiff had received notice and opportunity to be heard when Aeschleman knew, or deliberately ignored, facts demonstrating otherwise.

372. Plaintiff alleges that these representations and omissions were material because they affected jurisdiction, due process, service, notice, and the validity of resulting orders.

**Ex Parte Jurisdictional Proceedings**

373. Plaintiff alleges that non-noticed materials were presented, transmitted, discussed, considered, relied upon, or combinations thereof during the August 7, 2019 jurisdictional proceedings.

374. Plaintiff alleges that Judge Hayashi reviewed and relied upon a supplemental declaration submitted by Aeschleman and Warneck.

375. Plaintiff alleges that the supplemental declaration was not the subject of a properly noticed motion.

376. Plaintiff alleges that Plaintiff was denied a meaningful opportunity to review and respond to those materials before jurisdictional decisions were made.

377. Plaintiff alleges that material information was presented outside normal notice procedures.

378. Plaintiff alleges that these actions were material because they influenced the jurisdictional transfer proceedings and resulting orders.

**California Jurisdiction Fraud**

379. Plaintiff alleges that California jurisdiction was procured, maintained, or exercised through false statements, material omissions, ex parte communications, misleading declarations, concealment of material facts, or combinations thereof.

380. Plaintiff alleges that California Family Code § 215 was violated because orders were issued without the notice required by California law.

381. Plaintiff alleges that California Family Code §§ 3408 and 3425 were violated because custody determinations were made without the notice and opportunity to be heard required by the UCCJEA.

382. Plaintiff alleges that California Family Code § 3428 was violated because jurisdiction was exercised despite unjustifiable conduct.

383. Plaintiff alleges that these violations were material because they affected personal jurisdiction, subject matter jurisdiction, due process, and the validity of resulting orders.

**Morales Criminal Complaint Fraud**

384. On or about October 5, 2021, Morales executed a criminal complaint under penalty of perjury concerning Plaintiff.

385. Plaintiff alleges that Morales knowingly, recklessly, or deliberately included false statements, misleading statements, material omissions, or combinations thereof in the complaint.

386. Plaintiff alleges that Morales falsely represented that Plaintiff was a fugitive from justice.

387. Plaintiff further alleges that material information concerning jurisdictional disputes, fraud allegations, custody issues, exculpatory facts, and competing evidence was omitted.

388. Plaintiff alleges that Morales knew, or deliberately ignored, information undermining the factual basis for the complaint.

389. Plaintiff alleges that these representations and omissions were material because they affected Plaintiff's incarceration, the fugitive proceedings, and subsequent criminal processes.

**Warrant Fraud**

390. Plaintiff alleges that the September 2021 warrant was procured through false statements, material omissions, fraud, unlawful conduct, or combinations thereof.

391. Plaintiff alleges that participants in the warrant process possessed substantial information undermining the factual and legal basis for issuance of the warrant.

392. Plaintiff alleges that material exculpatory information was withheld from decision-makers.

393. Plaintiff alleges that false or misleading information was supplied to decision-makers.

394. Plaintiff alleges that these omissions and misrepresentations were material because the warrant became a substantial factor leading to Plaintiff's arrest, incarceration, property seizure, removal of the children, and continuing deprivation of parental rights.

**Continuing Fraud and Reliance**

395. Plaintiff alleges that defendants continued relying upon, enforcing, defending, ratifying, or refusing to investigate conduct procured through fraud despite repeated notice.

396. Plaintiff alleges that numerous defendants received actual notice of the facts described above through complaints, reports, recordings, court filings, public-records requests, public-records responses, correspondence, federal litigation, Judge Gordon's findings, and other sources.

397. Plaintiff alleges that despite receiving notice, various defendants continued to rely upon proceedings, orders, warrants, and enforcement actions that they knew, or reasonably should have known, were tainted by fraud, material omissions, jurisdictional defects, or constitutional violations.

398. Plaintiff alleges that the fraudulent conduct described herein directly and proximately caused the injuries identified throughout this complaint.

**COUNT I**

**42 U.S.C. § 1983 – FOURTH AMENDMENT UNREASONABLE SEIZURE**

**(FALSE ARREST AND EXCESSIVE FORCE)**

**AND**

**ARTICLE 1, SECTION 18 OF THE NEVADA CONSTITUTION**

**(Against Defendants Monroe, Lovero, Scott, and Doe Defendants)**

399. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

400. The Fourth Amendment to the United States Constitution protects individuals against unreasonable seizures, including arrest without probable cause and the use of excessive force.

401. Article 1, Section 18 of the Nevada Constitution provides similar protections.

402. At all relevant times, Plaintiff possessed a clearly established right to be free from arrest absent lawful probable cause.

403. At all relevant times, Plaintiff possessed a clearly established right to be free from objectively unreasonable force during an arrest or detention.

404. Prior to September 29, 2021, Monroe and Lovero received or had access to substantial information concerning Plaintiff's position, his evidence, his allegations of fraud, the disputed custody history, unresolved jurisdictional issues, and the circumstances surrounding the California proceedings.

405. Prior to September 29, 2021, Monroe and Lovero personally discussed the underlying dispute with Plaintiff and received complaints, correspondence, recordings, reports, and supporting materials from him.

406. Monroe and Lovero knew, or deliberately ignored, information demonstrating that the underlying matter involved disputed facts, competing evidence, unresolved jurisdictional issues, allegations of fraud, and substantial constitutional concerns.

407. Plaintiff alleges that material information concerning the underlying dispute was omitted from the process used to obtain the September 2021 warrant.

408. Plaintiff further alleges that Monroe and Lovero knew, or reasonably should have known, that the warrant process was tainted by false statements, material omissions, fraud, unlawful conduct, or combinations thereof.

409. On September 29, 2021, Monroe and Lovero participated in, directed, approved, facilitated, or substantially contributed to Plaintiff's arrest.

410. Plaintiff was seized, detained, handcuffed, transported, and deprived of his liberty.

411. Plaintiff was removed from his vehicle at gunpoint.

412. Plaintiff complied with commands and did not resist.

413. Plaintiff did not threaten officers.

414. Plaintiff did not attempt to flee.

415. Plaintiff's children witnessed the stop, detention, and arrest.

416. Plaintiff alleges that the display of firearms and use of force were objectively unreasonable under the circumstances.

417. Plaintiff further alleges that the level of force employed was excessive in light of the information known to Defendants at the time.

418. Plaintiff alleges that the arrest was undertaken without constitutionally sufficient probable cause.

419. Plaintiff further alleges that the arrest was based upon a warrant procured through false statements, material omissions, fraud, unlawful conduct, or combinations thereof.

420. Plaintiff alleges that Monroe and Lovero intentionally, recklessly, maliciously, oppressively, or with deliberate indifference to Plaintiff's constitutional rights participated in the arrest despite possessing extensive notice concerning facts that undermined the basis for enforcement.

421. Defendant Scott, Monroe & Lovero's supervisor, received notice concerning Plaintiff's allegations before and after the arrest and ratified, approved, tolerated, condoned, or failed to prevent the conduct described herein.

**COUNT II**

**42 U.S.C. § 1983 – FOURTH AMENDMENT UNREASONABLE SEIZURE AND RETENTION OF PROPERTY,**

**SECOND AMENDMENT,**

**AND**

**ARTICLE 1, SECTIONS 11 AND 18 OF THE NEVADA CONSTITUTION**

**(Against Defendants Monroe, Lovero, Foster, Scott, Bowen, Brady, Ford, Thomas, Ulloa, and Doe Defendants)**

422. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

423. The Fourth Amendment protects individuals against unreasonable seizures of property.

424. The Second Amendment protects the right of law-abiding citizens to keep and bear arms.

425. Article 1, Sections 11 and 18 of the Nevada Constitution provide similar protections.

426. At all relevant times, Plaintiff possessed a clearly established right to be free from unreasonable seizure and prolonged retention of personal property.

427. At all relevant times, Plaintiff possessed a clearly established right to lawfully possess firearms and to be free from unconstitutional restrictions upon that right.

428. On September 29, 2021, Defendants seized Plaintiff's personal property, including a firearm and related items.

429. Following the seizure, Plaintiff repeatedly demanded return of his property.

430. Plaintiff repeatedly informed government officials that continued retention of the property was unlawful.

431. Plaintiff repeatedly informed government officials that the underlying arrest and warrant were unlawful.

432. Plaintiff further informed government officials that the California proceedings underlying the warrant were tainted by fraud, material omissions, jurisdictional defects, and constitutional violations.

433. Foster received actual notice of Plaintiff's allegations and demands for return of the property.

434. Foster acknowledged that Plaintiff's firearm remained in government custody and advised Plaintiff that it would be returned once a process could be established for doing so.

435. Ulloa, Thomas, Scott, Bowen, Brady, Ford, and other supervisory personnel received notice concerning Plaintiff's allegations through complaints, correspondence, reports, meetings, recordings, and related communications.

436. Plaintiff alleges that these Defendants possessed sufficient information to investigate, intervene, facilitate return of the property, or otherwise prevent continuing constitutional violations.

437. Despite repeated notice and repeated demands, Plaintiff's firearm remained in government custody for approximately one year.

438. Plaintiff alleges that no lawful basis existed for the prolonged retention of the property.

439. Plaintiff further alleges that Defendants intentionally, recklessly, maliciously, oppressively, or with deliberate indifference continued to retain the property after they knew, or reasonably should have known, that the retention was unlawful.

440. Defendants ratified, approved, tolerated, condoned, or failed to correct the continued deprivation of Plaintiff's property despite repeated notice.

441. Following the California criminal proceedings, Plaintiff was designated a prohibited possessor by LVMPD personnel.

442. Plaintiff's concealed firearm permit was revoked and his renewal application denied.

443. Plaintiff repeatedly challenged the legal basis for that designation.

444. Plaintiff repeatedly informed government officials that the underlying California proceedings were tainted by fraud, material omissions, jurisdictional defects, and constitutional violations.

445. Plaintiff further informed government officials that he had not been convicted of any felony offense and remained legally entitled to possess firearms.

446. Plaintiff alleges that government officials continued to rely upon unlawful interpretations of law and unlawful reliance upon defective California proceedings to justify restrictions on his firearm rights.

447. Plaintiff alleges that the seizure, prolonged retention, prohibited-possessor designation, permit revocation, and related conduct substantially burdened his constitutional rights under the Second Amendment and the Nevada Constitution.

448. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of use of his property, loss of firearm rights, financial damages, emotional distress, deprivation of constitutional rights, and other damages according to proof.

449. The conduct of the individual Defendants supports an award of punitive damages.

450. Defendant Scott received notice concerning Plaintiff's allegations before and after the arrest and ratified, approved, tolerated, condoned, or failed to prevent the conduct described herein.

451. Plaintiff alleges that gun stores refused to sell him a firearm, because he was flagged in the State of Nevada background system after his arrest. Plaintiff further alleges that the background system was unable to clear Plaintiff for purchases, because the NV AG & LVMPD Defendants refused to respond to their inquiries, as did the NV & CA courts.

452. Plaintiff alleges that because the Nevada AG Defendants had seized his firearm, and because he had been labeled a prohibited possessor and had his concealed carry permit revoked, Plaintiff's Second Amendment rights were substantially impaired for over a year.

453. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, financial damages, reputational damages, deprivation of

constitutional rights, deprivation of parental rights, and other damages according to proof.

454. The conduct of the individual Defendants supports an award of punitive damages.

**COUNT III**

**42 U.S.C. § 1983 – FOURTEENTH AMENDMENT INTERFERENCE WITH FAMILIAL ASSOCIATION**

**AND**

**ARTICLE 1, SECTIONS 1 AND 8 OF THE NEVADA CONSTITUTION**

**(Against Defendants Monroe, Lovero, Ford, Brady, Bowen, Thomas, Scott, and Doe Defendants)**

455. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

456. The Fourteenth Amendment protects the fundamental liberty interest of parents in the care, custody, companionship, management, and control of their children.

457. Article 1, Sections 1 and 8 of the Nevada Constitution provide similar protections.

458. At all relevant times, Plaintiff possessed a clearly established constitutional right to the care, custody, companionship, and control of his children.

459. Prior to September 29, 2021, Monroe and Lovero possessed substantial information concerning Plaintiff's relationship with his children.

460. Prior to September 29, 2021, Monroe and Lovero knew that Plaintiff had been actively involved in his children's lives.

461. Monroe and Lovero further knew that Plaintiff disputed the validity of the California proceedings and repeatedly asserted that the underlying custody matters had been procured through fraud, material omissions, jurisdictional defects, and constitutional violations.

462. Plaintiff alleges that Monroe and Lovero knew, or deliberately ignored, information demonstrating that the underlying custody dispute involved unresolved jurisdictional issues, disputed facts, competing evidence, and allegations of fraud.

463. On September 29, 2021, Monroe and Lovero participated in, directed, approved, facilitated, or substantially contributed to Plaintiff's arrest.

464. Plaintiff's children witnessed the arrest.

465. Plaintiff was removed from his children's presence and deprived of his liberty.

466. Plaintiff's children were removed from his custody.

467. Plaintiff alleges that the removal of his children was a direct and foreseeable consequence of Defendants' conduct.

468. Plaintiff further alleges that Defendants knew, or reasonably should have known, that their conduct would interfere with Plaintiff's relationship with his children.

469. Plaintiff alleges that Defendants acted intentionally, recklessly, maliciously, oppressively, or with deliberate indifference to Plaintiff's parental rights.

470. Plaintiff has not seen his children since September 29, 2021.

471. Plaintiff alleges that the arrest, removal of the children, and related conduct substantially contributed to the continuing deprivation of his relationship with them.

472. Defendants Ford, Brady, Bowen, Thomas, and Scott received notice concerning Plaintiff's allegations before and after the arrest and ratified, approved, tolerated, condoned, or failed to prevent the conduct described herein.

473. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of companionship with his children, emotional distress, financial damages, deprivation of parental rights, deprivation of constitutional rights, and other damages according to proof.

474. The conduct of the individual Defendants supports an award of punitive damages.

**COUNT IV**

**42 U.S.C. § 1983 – FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS**

**AND**

**ARTICLE 1, SECTION 8 OF THE NEVADA CONSTITUTION**

**(Against Defendants Ford, Brady, Monroe, Lovero, Thomas, Bowen, Scott, Morales, Wolfson, LVMPD Defendants, CCSDPD Defendants, and Doe Defendants)**

475. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

476. The Fourteenth Amendment prohibits the deprivation of liberty and property without due process of law.

477. Article 1, Section 8 of the Nevada Constitution provides similar protections.

478. At all relevant times, Plaintiff possessed clearly established rights to notice, an opportunity to be heard, meaningful access to courts, the care and custody of his children, liberty, and property.

479. Plaintiff further possessed a clearly established right not to be subjected to government action based upon proceedings procured through fraud, material omissions, or fundamentally unfair procedures.

480. Plaintiff alleges that the California proceedings described in this complaint were procured, maintained, or exercised through fraud, material omissions, ex parte communications, misleading declarations, jurisdictional defects, violations of California Family Code § 215, violations of California Family Code §§ 3408, 3425, and 3428, and other procedural irregularities.

481. Plaintiff alleges that he was denied constitutionally adequate notice and opportunity to be heard during critical stages of the California proceedings.

482. Plaintiff further alleges that orders were issued and enforced despite those procedural defects.

483. Monroe and Lovero received substantial notice concerning Plaintiff's allegations of fraud, jurisdictional defects, competing evidence, and procedural irregularities.

484. Despite that notice, Monroe and Lovero participated in, facilitated, approved, or substantially contributed to enforcement actions arising from the challenged proceedings.

485. Plaintiff alleges that Ford, Brady, Scott, Thomas, and Bowen ratified, approved, tolerated, condoned, or failed to prevent such conduct despite receiving notice.

486. Morales executed a criminal complaint under penalty of perjury that Plaintiff alleges contained false statements, misleading statements, material omissions, or combinations thereof.

487. Plaintiff alleges that Morales knew, or deliberately ignored, information undermining the factual basis of the complaint.

488. Plaintiff further alleges that Morales's conduct deprived Plaintiff of liberty without constitutionally adequate process.

489. Wolfson received notice concerning Plaintiff's allegations of fraud, false arrest, false imprisonment, prosecutorial misconduct, and due-process violations.

490. Plaintiff alleges that Wolfson failed to conduct meaningful investigations, failed to report misconduct, and ratified, approved, tolerated, condoned, or failed to prevent unconstitutional conduct despite receiving notice.

491. Plaintiff repeatedly attempted to report crimes, submit evidence, and seek investigations through LVMPD.

492. Plaintiff alleges that LVMPD personnel repeatedly impeded, delayed, discouraged, obstructed, or refused his efforts to report crimes and submit evidence.

493. Plaintiff further alleges that LVMPD personnel repeatedly failed to follow written policies governing investigations and reporting.

494. Plaintiff alleges that LVMPD personnel thereby deprived him of meaningful access to investigative processes and procedural protections available to similarly situated citizens.

495. Plaintiff repeatedly supplied evidence, reports, recordings, correspondence, public-records responses, and supporting materials to LVMPD personnel.

496. Plaintiff alleges that numerous LVMPD personnel possessed notice of constitutional violations and nevertheless ratified, approved, tolerated, condoned, or failed to correct unlawful conduct.

497. Plaintiff repeatedly informed CCSDPD personnel that his arrest had been procured through fraud, material omissions, jurisdictional defects, and constitutional violations.

498. Plaintiff repeatedly requested investigations into those matters.

499. Plaintiff alleges that CCSDPD personnel refused to conduct meaningful investigations despite substantial evidence and repeated requests.

500. Plaintiff further alleges that CCSDPD personnel ratified, approved, tolerated, condoned, or failed to correct unconstitutional conduct despite possessing actual notice.

501. Plaintiff alleges that Defendants collectively deprived him of constitutionally adequate notice, meaningful opportunity to be heard, fair procedures, meaningful access to investigative processes, liberty, parental rights, and property.

502. Plaintiff further alleges that Defendants intentionally, recklessly, maliciously, oppressively, or with deliberate indifference violated clearly established constitutional rights.

503. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, loss of parental rights, loss of companionship with his children, financial damages, emotional distress, deprivation of constitutional rights, and other damages according to proof.

504. The conduct of the individual Defendants supports an award of punitive damages.

**COUNT V**

**42 U.S.C. § 1983 CONSPIRACY TO CAUSE FALSE ARREST**

**(Against Defendants Warneck, Aeschleman, Adames & Ash LLP, Monroe, Lovero, Scott, Morales, and Doe Defendants)**

505. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

506. At all relevant times, Plaintiff possessed a clearly established constitutional right to be free from arrest without probable cause.

507. Plaintiff alleges that Warneck and Aeschleman knowingly advanced false statements, concealed material facts, submitted misleading information, omitted material information, or combinations thereof concerning custody, jurisdiction, residency, notice, service, and related matters.

508. Plaintiff alleges that Warneck and Aeschleman knowingly pursued California proceedings that were procured, maintained, or exercised through fraud, material omissions, jurisdictional defects, and due-process violations.

509. Plaintiff alleges that Warneck and Aeschleman knowingly caused, encouraged, facilitated, or sought criminal enforcement actions against Plaintiff arising from those proceedings.

510. Plaintiff alleges that Adames & Ash LLP participated in and benefited from the conduct of Aeschleman undertaken within the course and scope of his representation and ownership interest in the firm.

511. Plaintiff alleges that Morales executed a criminal complaint under penalty of perjury containing false statements, misleading statements, material omissions, or combinations thereof.

512. Plaintiff alleges that the criminal complaint advanced the objective of securing Plaintiff's incarceration and criminal prosecution.

513. Plaintiff alleges that Monroe and Lovero knew, or deliberately ignored, substantial information demonstrating that the underlying dispute involved unresolved jurisdictional issues, competing evidence, allegations of fraud, and material factual disputes.

514. Despite that knowledge, Monroe and Lovero participated in, facilitated, approved, or substantially contributed to Plaintiff's arrest.

515. Plaintiff alleges that the Defendants shared a common objective of causing, facilitating, preserving, legitimizing, or defending Plaintiff's arrest and incarceration.

516. Plaintiff further alleges that Defendants knowingly relied upon information supplied by one another in furtherance of that objective.

517. Plaintiff alleges that overt acts in furtherance of the conspiracy included, but were not limited to:

518. a. Entering into and breaching the May 2019 visitation agreement;

519. b. Withholding the children from Nevada;

520. c. Advancing allegedly false or misleading jurisdictional claims;

521. d. Concealing material facts concerning residency, notice, service, and jurisdiction;

522. e. Procuring and maintaining allegedly void California proceedings;

523. f. Executing the October 5, 2021 criminal complaint;

524. g. Procuring, maintaining, relying upon, or enforcing the September 2021 warrant;

525. h. Participating in Plaintiff's arrest and incarceration.

526. Plaintiff alleges that Defendants acted intentionally, recklessly, maliciously, oppressively, or with deliberate indifference to Plaintiff's constitutional rights.

527. As a direct and proximate result of the conspiracy described herein, Plaintiff suffered arrest, incarceration, loss of liberty, emotional distress, financial damages, deprivation of constitutional rights, deprivation of parental rights, and other damages according to proof.

528. The conduct of the individual Defendants supports an award of punitive damages.

**COUNT VI**

**42 U.S.C. § 1983 CONSPIRACY TO INTERFERE WITH FAMILIAL ASSOCIATION**

**(Against Defendants Warneck, Aeschleman, Adames & Ash LLP, Monroe, Lovero, Scott, and Doe Defendants)**

529. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

530. At all relevant times, Plaintiff possessed a clearly established constitutional right to the care, custody, companionship, management, and control of his children.

531. Plaintiff alleges that Warneck and Aeschleman knowingly entered into, participated in, encouraged, facilitated, or furthered a course of conduct intended to interfere with Plaintiff's relationship with his children.

532. Plaintiff alleges that Warneck entered into the May 2019 visitation agreement while already intending not to honor it.

533. Plaintiff alleges that before entering into that agreement, Warneck had already consulted with Aeschleman concerning retaining the children in California and invoking California court proceedings.

534. Plaintiff alleges that Warneck obtained possession of the children through false pretenses and then refused to return them to Nevada as agreed.

535. Plaintiff alleges that Warneck and Aeschleman thereafter relied upon allegedly fraudulent, misleading, unconstitutional, void, or improperly obtained proceedings to prevent the children's return.

536. Plaintiff alleges that Adames & Ash LLP participated in and benefited from the conduct of Aeschleman undertaken within the course and scope of his representation and ownership interest in the firm.

537. Plaintiff alleges that Monroe and Lovero knew, or deliberately ignored, substantial information demonstrating that the underlying custody dispute involved unresolved jurisdictional issues, competing evidence, allegations of fraud, and material factual disputes.

538. Despite that knowledge, Monroe and Lovero participated in, facilitated, approved, or substantially contributed to Plaintiff's arrest and the resulting separation from his children.

539. Plaintiff alleges that Defendants shared a common objective of preserving, legitimizing, facilitating, or benefiting from the continued separation of Plaintiff from his children.

540. Plaintiff further alleges that Defendants knowingly relied upon information supplied by one another in furtherance of that objective.

541. Plaintiff alleges that overt acts in furtherance of the conspiracy included, but were not limited to:

542. a. Entering into and breaching the May 2019 visitation agreement;

543. b. Retaining the children outside Nevada;

544. c. Advancing allegedly false or misleading jurisdictional claims;

545. d. Concealing material facts concerning residency, notice, service, and jurisdiction;

546. e. Procuring, maintaining, or relying upon allegedly void California proceedings;

547. f. Procuring, maintaining, relying upon, or enforcing the September 2021 warrant;

548. g. Arresting Plaintiff in the presence of his children;

549. h. Removing the children from Plaintiff's custody;

550. i. Continuing to rely upon proceedings and enforcement actions despite repeated notice of fraud, jurisdictional defects, and constitutional violations.

551. Plaintiff alleges that Defendants acted intentionally, recklessly, maliciously, oppressively, or with deliberate indifference to Plaintiff's parental rights.

552. Plaintiff has not seen his children since September 29, 2021.

553. Plaintiff alleges that the conspiracy described herein substantially contributed to the continuing deprivation of his relationship with his children.

554. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of companionship with his children, emotional distress, financial damages, deprivation of parental rights, deprivation of constitutional rights, and other damages according to proof.

555. The conduct of the individual Defendants supports an award of punitive damages.

**COUNT VII**

**42 U.S.C. § 1983 CONSPIRACY TO DEPRIVE PROCEDURAL DUE PROCESS**

**(Against Defendants Warneck, Aeschleman, Adames & Ash LLP, Monroe, Lovero, Ford, Brady, Thomas, Bowen, Scott, Morales, Wolfson, and Doe Defendants)**

556. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

557. At all relevant times, Plaintiff possessed clearly established constitutional rights to notice, an opportunity to be heard, meaningful access to courts, liberty, property, and the care and custody of his children.

558. Plaintiff alleges that Defendants knowingly entered into, participated in, facilitated, encouraged, ratified, or furthered a course of conduct intended to deprive Plaintiff of procedural due process.

559. Plaintiff alleges that Warneck and Aeschleman knowingly advanced false statements, concealed material facts, submitted misleading information, omitted material information, relied upon false information, or combinations thereof concerning residency, jurisdiction, custody, notice, service, and related matters.

560. Plaintiff alleges that Warneck knowingly concealed the parties' agreement to dismiss the California proceedings and knowingly concealed facts concerning the purported stipulated judgment.

561. Plaintiff alleges that Aeschleman knowingly advanced, submitted, transmitted, relied upon, or benefited from documents, declarations, representations, service practices, or notice practices that were false, misleading, materially incomplete, or combinations thereof.

562. Plaintiff alleges that Warneck and Aeschleman knowingly participated in proceedings procured, maintained, or exercised through fraud, material omissions, ex parte communications, jurisdictional defects, and due-process violations.

563. Plaintiff alleges that Adames & Ash LLP participated in and benefited from the conduct of Aeschleman undertaken within the course and scope of his representation and ownership interest in the firm.

564. Plaintiff alleges that Morales executed a criminal complaint under penalty of perjury that contained false statements, misleading statements, material omissions, or combinations thereof.

565. Plaintiff alleges that Monroe and Lovero received substantial notice concerning Plaintiff's allegations of fraud, jurisdictional defects, competing evidence, and procedural irregularities.

566. Despite that notice, Monroe and Lovero participated in, facilitated, approved, or substantially contributed to enforcement actions arising from the challenged proceedings.

567. Plaintiff alleges that Ford, Brady, Thomas, Bowen, Scott and Wolfson received notice concerning Plaintiff's allegations and thereafter ratified, approved, tolerated, condoned, or failed to prevent unconstitutional conduct.

568. Plaintiff alleges that Defendants shared a common objective of preserving, legitimizing, enforcing, or benefiting from proceedings and enforcement actions despite substantial notice of fraud, jurisdictional defects, and constitutional violations.

569. Plaintiff further alleges that Defendants knowingly relied upon information supplied by one another in furtherance of that objective.

570. Plaintiff alleges that overt acts in furtherance of the conspiracy included, but were not limited to:

571. a. Concealing the parties' agreement to dismiss the California proceedings;

572. b. Concealing facts concerning the purported stipulated judgment;

573. c. Advancing allegedly false or misleading jurisdictional claims;

574. d. Concealing material facts concerning residency, notice, service, and jurisdiction;

575. e. Participating in ex parte proceedings or reliance upon ex parte materials;

576. f. Procuring, maintaining, or relying upon allegedly void California proceedings;

577.g. Executing the October 5, 2021 criminal complaint;

578.h. Procuring, maintaining, relying upon, or enforcing the September 2021 warrant;

579.i. Arresting Plaintiff and incarcerating him;

580.j. Continuing to rely upon proceedings and enforcement actions despite repeated notice of fraud, jurisdictional defects, and constitutional violations.

581. Plaintiff alleges that Defendants acted intentionally, recklessly, maliciously, oppressively, or with deliberate indifference to Plaintiff's constitutional rights.

582. As a direct and proximate result of the conspiracy described herein, Plaintiff suffered loss of liberty, loss of parental rights, deprivation of property, emotional distress, financial damages, deprivation of constitutional rights, and other damages according to proof.

583. The conduct of the individual Defendants supports an award of punitive damages.

**COUNT VIII**

**TORTIOUS INTERFERENCE WITH PARENTAL RIGHTS**

**(Against Defendants Warneck, Aeschleman, and Adames & Ash LLP)**

584. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

585. At all relevant times, Plaintiff possessed lawful parental rights concerning E.W. and N.W.

586. Plaintiff possessed rights to the care, custody, companionship, management, and control of his children.

587. Defendants Warneck and Aeschleman knew of Plaintiff's parental rights.

588. Warneck and Aeschleman knew that Plaintiff maintained an active relationship with his children.

589. Warneck and Aeschleman knew that Plaintiff expected the children to be returned to Nevada on July 7, 2019 pursuant to the parties' agreement.

590. Plaintiff alleges that before entering into the May 2019 agreement, Warneck had already consulted with Aeschleman concerning retaining the children in California and seeking California court intervention.

591. Plaintiff alleges that Warneck entered into the agreement knowing that she did not intend to honor it.

592. Plaintiff further alleges that Warneck obtained possession of the children through false pretenses by representing that she intended to comply with the agreement.

593. Plaintiff alleges that Warneck refused to return the children on July 7, 2019 pursuant to a plan formulated before the agreed return date.

594. Plaintiff alleges that Aeschleman knowingly assisted, encouraged, facilitated, advised, or participated in that conduct.

595. Plaintiff alleges that Warneck and Aeschleman thereafter took actions intended to prevent the children's return to Nevada.

596. Plaintiff alleges that Warneck and Aeschleman knowingly advanced, relied upon, or benefited from proceedings procured through fraud, material omissions, jurisdictional defects, or combinations thereof in furtherance of that objective.

597. Plaintiff alleges that Adames & Ash LLP participated in and benefited from the conduct of Aeschleman undertaken within the course and scope of his representation and ownership interest in the firm.

598. Defendants' conduct was intentional.

599. Defendants knew, or reasonably should have known, that their conduct would interfere with Plaintiff's relationship with his children.

600. Defendants' conduct was a substantial factor in depriving Plaintiff of the care, custody, companionship, and society of his children.

601. Plaintiff has been deprived of significant time, companionship, communication, and parental involvement with his children.

602. Plaintiff has not seen his children since September 29, 2021.

603. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of companionship with his children, emotional distress, financial damages, loss of parental rights, and other damages according to proof.

604. Defendants acted intentionally, maliciously, fraudulently, oppressively, or with conscious disregard for Plaintiff's rights.

605. Plaintiff is entitled to compensatory damages, punitive damages, and all other relief allowed by law.

**COUNT IX**

**CONSPIRACY TO INTERFERE WITH PARENTAL RIGHTS**

**(Against All Defendants)**

606. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

607. At all relevant times, Plaintiff possessed lawful parental rights concerning E.W. and N.W.

608. Plaintiff possessed rights to the care, custody, companionship, management, and control of his children.

609. Defendants knew of Plaintiff's parental rights.

610. Defendants further knew that Plaintiff maintained an active relationship with his children.

611. Plaintiff alleges that Warneck and Aeschleman knowingly entered into, participated in, encouraged, facilitated, or furthered a course of conduct intended to interfere with Plaintiff's relationship with his children.

612. Plaintiff alleges that before entering into the May 2019 visitation agreement, Warneck had already consulted with Aeschleman concerning retaining the children in California and seeking California court intervention.

613. Plaintiff alleges that Warneck entered into the agreement knowing that she did not intend to honor it.

614. Plaintiff alleges that Warneck obtained possession of the children through false pretenses by representing that she intended to comply with the agreement.

615. Plaintiff alleges that Warneck and Aeschleman thereafter acted together to prevent the children's return to Nevada.

616. Plaintiff alleges that Adames & Ash LLP participated in and benefited from the conduct of Aeschleman undertaken within the course and scope of his representation and ownership interest in the firm.

617. Plaintiff alleges that Monroe and Lovero later received substantial notice concerning Plaintiff's allegations of fraud, jurisdictional defects, competing evidence, and constitutional violations.

618. Despite that notice, Monroe and Lovero participated in, facilitated, approved, or substantially contributed to Plaintiff's arrest and the resulting separation from his children.

619. Plaintiff all Defendants ratified, approved, tolerated, condoned, or failed to prevent conduct that furthered the separation of Plaintiff from his children.

620. Plaintiff alleges that Defendants shared a common objective of preserving, legitimizing, facilitating, benefiting from, or refusing to correct the continuing separation of Plaintiff from his children.

621. Plaintiff further alleges that Defendants knowingly relied upon information supplied by one another in furtherance of that objective.

622. Plaintiff alleges that overt acts in furtherance of the conspiracy included, but were not limited to:

623. a. Entering into and breaching the May 2019 visitation agreement;

624. b. Retaining the children outside Nevada;

625. c. Concealing material facts concerning residency, notice, service, and jurisdiction;

626. d. Advancing allegedly false or misleading jurisdictional claims;

627. e. Procuring, maintaining, or relying upon allegedly void California proceedings;

628. f. Procuring, maintaining, relying upon, or enforcing the September 2021 warrant;

629. g. Arresting Plaintiff in the presence of his children;

630. h. Removing the children from Plaintiff's custody;

631. i. Continuing to rely upon proceedings and enforcement actions despite repeated notice of fraud, jurisdictional defects, and constitutional violations.

632. Plaintiff alleges that Defendants acted intentionally, recklessly, maliciously, oppressively, fraudulently, or with conscious disregard for Plaintiff's parental rights.

633. Plaintiff has been deprived of significant time, companionship, communication, and parental involvement with his children.

634. Plaintiff has not seen his children since September 29, 2021.

635. As a direct and proximate result of the conspiracy described herein, Plaintiff suffered loss of companionship with his children, emotional distress, financial damages, loss of parental rights, deprivation of constitutional rights, and other damages according to proof.

636. The conduct of the individual Defendants supports an award of punitive damages.

**COUNT X**

**ABUSE OF PROCESS**

**(Against Defendants Warneck, Aeschleman, and Adames & Ash LLP)**

637. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

638. At all relevant times, judicial proceedings and legal process existed.

639. Defendants Warneck and Aeschleman knowingly invoked, maintained, utilized, or benefited from judicial processes affecting Plaintiff.

640. Plaintiff alleges that Defendants used legal process for purposes other than those for which the process was designed.

641. Plaintiff alleges that Defendants used judicial proceedings, jurisdictional proceedings, custody proceedings, declarations, motions, requests for orders, warrants, criminal

processes, or combinations thereof to obtain objectives unrelated to the legitimate purposes of those proceedings.

642. Plaintiff alleges that Defendants used legal process to retain the children outside Nevada, interfere with Plaintiff's parental rights, deprive Plaintiff of constitutional rights, and gain litigation advantages to which they were not lawfully entitled.

643. Plaintiff alleges that Defendants knowingly relied upon allegedly void proceedings, fraudulent proceedings, misleading representations, material omissions, or combinations thereof in furtherance of those objectives.

644. Plaintiff alleges that Defendants concealed material facts concerning residency, notice, service, jurisdiction, dismissal of the California proceedings, and the purported stipulated judgment.

645. Plaintiff further alleges that Defendants used legal processes arising from those facts despite knowing that the underlying factual and legal foundations were disputed, defective, fraudulent, or combinations thereof.

646. Plaintiff alleges that Defendants' objective was not merely to obtain lawful judicial relief but to prevent the return of the children, preserve improperly obtained advantages, and interfere with Plaintiff's rights.

647. Plaintiff alleges that Aeschleman knowingly participated in, advised, facilitated, encouraged, directed, or benefited from the conduct described herein.

648. Plaintiff alleges that Adames & Ash LLP participated in and benefited from the conduct of Aeschleman undertaken within the course and scope of his representation and ownership interest in the firm.

649. Plaintiff alleges that Defendants acted intentionally, maliciously, fraudulently, oppressively, or with conscious disregard for Plaintiff's rights.

650. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of parental rights, loss of companionship with his children, emotional distress, financial damages, litigation expenses, deprivation of constitutional rights, and other damages according to proof.

651. Defendants' conduct supports an award of punitive damages.

**COUNT XI**

**CONSPIRACY TO COMMIT ABUSE OF PROCESS**

**(Against All Defendants)**

652. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

653. Plaintiff alleges that Defendants knowingly entered into, participated in, encouraged, facilitated, or furthered an agreement to misuse legal process for purposes other than those for which the process was designed.

654. Plaintiff alleges that Defendants shared a common objective of preserving, facilitating, legitimizing, benefiting from, or refusing to correct proceedings that interfered with Plaintiff's parental rights and constitutional rights.

655. Plaintiff alleges that Warneck and Aeschleman knowingly worked together to invoke, maintain, or benefit from judicial processes that were procured, maintained, or exercised through fraud, material omissions, jurisdictional defects, due-process violations, or combinations thereof.

656. Plaintiff alleges that Adames & Ash LLP participated in and benefited from the conduct of Aeschleman undertaken within the course and scope of his representation and ownership interest in the firm.

657. Plaintiff alleges that all Defendants later participated in, facilitated, approved, or substantially contributed to enforcement actions arising from those proceedings despite receiving substantial notice concerning fraud, jurisdictional defects, competing evidence, and constitutional concerns.

658. Plaintiff alleges that all Defendants ratified, approved, tolerated, condoned, or failed to prevent conduct that furthered the misuse of legal process.

659. Plaintiff alleges that Defendants knowingly relied upon information supplied by one another in furtherance of the conspiracy.

660. Plaintiff alleges that overt acts in furtherance of the conspiracy included, but were not limited to:

661. a. Concealing the parties' agreement to dismiss the California proceedings;

662. b. Concealing facts concerning the purported stipulated judgment;

663. c. Advancing allegedly false or misleading jurisdictional claims;

664. d. Concealing material facts concerning residency, notice, service, and jurisdiction;

665. e. Procuring, maintaining, or relying upon allegedly void California proceedings;

666. f. Procuring, maintaining, relying upon, or enforcing the September 2021 warrant;

667. g. Arresting Plaintiff and separating him from his children;

668. h. Continuing to rely upon proceedings and enforcement actions despite repeated notice of fraud, jurisdictional defects, and constitutional violations.

669. Plaintiff alleges that Defendants acted intentionally, maliciously, fraudulently, oppressively, or with conscious disregard for Plaintiff's rights.

670. As a direct and proximate result of the conspiracy described herein, Plaintiff suffered loss of parental rights, loss of companionship with his children, emotional distress, financial damages, litigation expenses, deprivation of constitutional rights, and other damages according to proof.

671. The conduct of the individual Defendants supports an award of punitive damages.

## COUNT XII
## 42 U.S.C. § 1983; SECOND AMENDMENT, FOURTEENTH AMENDMENT DUE PROCESS, FOURTEENTH AMENDMENT EQUAL PROTECTION, & ARTICLE 1, SECTION 8 & 11 OF THE NEVADA CONSTITUTION

**(Against Defendants Ashley Shenk, Bradley Gallup, Jorge Marty-Pagan, LVMPD, and Doe Defendants)**

672. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

673. The Second Amendment protects the right of law-abiding citizens to keep and bear arms.

674. The Fourteenth Amendment protects individuals from deprivation of liberty without due process of law and guarantees equal protection of the laws.

675. Article 1, Sections 8 & 11 of the Nevada Constitution provides similar protections.

676. At all relevant times, Plaintiff was a law-abiding citizen who had not been convicted of a felony offense.

677. Plaintiff possessed a Nevada concealed firearm permit.

678. Plaintiff applied for renewal of that permit.

679. Following the California criminal proceedings, LVMPD personnel classified Plaintiff as a prohibited possessor.

680. Plaintiff's concealed firearm permit was revoked.

681. Plaintiff's renewal application was denied.

682. Plaintiff alleges that LVMPD personnel relied upon 18 U.S.C. § 922(n) as authority for the revocation, denial, and prohibited-possessor designation.

683. Plaintiff repeatedly challenged that interpretation.

684. Plaintiff repeatedly requested legal authority supporting the position that a person merely under information for a felony offense was prohibited from possessing firearms under Nevada law.

685. Plaintiff communicated those concerns to Shenk, Gallup, Marty-Pagan, LVMPD personnel, and others.

686. Plaintiff further submitted public-records requests seeking authority supporting the interpretation.

687. Plaintiff alleges that no responsive authority was produced supporting the interpretation advanced by LVMPD personnel.

688. Gallup maintained that Plaintiff was prohibited from obtaining renewal of his permit because of the California criminal case.

689. Plaintiff disputed that interpretation and repeatedly explained his position.

690. Plaintiff further informed LVMPD personnel that the underlying California proceedings were tainted by fraud, false statements, jurisdictional defects, and constitutional violations.

691. Plaintiff alleges that Shenk participated in, approved, facilitated, or substantially contributed to the revocation of Plaintiff's permit.

692. Plaintiff alleges that Gallup ratified, approved, defended, enforced, or failed to correct the revocation and prohibited-possessor designation after receiving notice of Plaintiff's objections.

693. Plaintiff alleges that Marty-Pagan received extensive notice concerning Plaintiff's legal and factual objections and nevertheless failed to correct the constitutional violations described herein.

694. Plaintiff alleges that LVMPD maintained policies, customs, practices, failures of supervision, failures of training, ratification, deliberate indifference, or combinations thereof that contributed to the constitutional violations described herein.

695. Plaintiff alleges that Defendants deprived Plaintiff of constitutionally protected firearm rights without constitutionally adequate process.

696. Plaintiff further alleges that Defendants treated Plaintiff differently from similarly situated individuals without a sufficient legal basis.

697. Plaintiff alleges that the revocation, denial, prohibited-possessor designation, and related actions substantially burdened Plaintiff's rights under the United States Constitution and Nevada Constitution.

698. Plaintiff alleges that gun stores refused to sell him a firearm, because he was flagged in the State of Nevada background system after his arrest. Plaintiff further alleges that the background system was unable to clear Plaintiff for purchases, because the NV AG & LVMPD Defendants refused to respond to their inquiries, as did the NV & CA courts.

699. Plaintiff alleges that because the Nevada AG Defendants had seized his firearm, and because he had been labeled a prohibited possessor and had his concealed carry permit

revoked, Plaintiff's Second Amendment rights were substantially impaired for over a year.

700. Plaintiff ultimately regained his permit only after being required to proceed through the application process again.

701. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of firearm rights, financial damages, emotional distress, deprivation of constitutional rights, and other damages according to proof.

702. The conduct of the individual Defendants supports an award of punitive damages.

**COUNT XIII**

**CONVERSION**

**(Against Defendants Monroe, Lovero, Foster, Scott, Brady, Ford, Thomas, Ulloa, and Doe Defendants)**

703. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

704. Plaintiff owned, possessed, or had the immediate right to possess the personal property described in this complaint, including his firearm and related items.

705. Defendants seized Plaintiff's property on September 29, 2021.

706. Plaintiff repeatedly demanded return of the property.

707. Plaintiff repeatedly informed Defendants that continued retention of the property was unlawful.

708. Plaintiff repeatedly informed Defendants that the underlying arrest and warrant were unlawful.

709. Plaintiff further informed Defendants that the California proceedings underlying the warrant were tainted by fraud, material omissions, jurisdictional defects, and constitutional violations.

710. Foster received actual notice of Plaintiff's demands for return of the property.

711. Foster acknowledged that Plaintiff's firearm remained in government custody and advised Plaintiff that it would be returned once a process could be established for doing so.

712. Scott, Brady, Ford, Thomas, Ulloa, and other supervisory personnel received notice concerning Plaintiff's allegations through complaints, correspondence, reports, recordings, meetings, and related communications.

713. Plaintiff alleges that these Defendants possessed sufficient information to investigate, intervene, facilitate return of the property, or otherwise prevent continuing wrongful retention.

714. Despite repeated demands and repeated notice, Defendants intentionally exercised dominion and control over Plaintiff's property in a manner inconsistent with Plaintiff's ownership rights.

715. Plaintiff alleges that Defendants wrongfully retained the property for approximately one year.

716. Plaintiff alleges that Defendants deprived him of possession, use, enjoyment, and control of the property.

717. Defendants' conduct was intentional, malicious, oppressive, fraudulent, reckless, or undertaken with conscious disregard of Plaintiff's rights.

718. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of use of the property, financial damages, emotional distress, and other damages according to proof.

719. Defendants' conduct supports an award of punitive damages.

**COUNT XIV**

**CALIFORNIA CIVIL CODE § 49(a)**

**(Against Defendants Warneck, Aeschleman, and Adames & Ash LLP)**

720. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

721. California Civil Code § 49(a) protects the rights of personal relations and forbids the abduction or enticement of a child from a parent entitled to custody.

722. At all relevant times, Plaintiff possessed lawful parental rights concerning E.W. and N.W.

723. Plaintiff possessed rights to the care, custody, companionship, management, and control of his children.

724. Defendants Warneck and Aeschleman knew of Plaintiff's parental rights.

725. Defendants knew that Plaintiff maintained an active relationship with his children.

726. On May 7, 2019, Warneck entered into an agreement requiring return of the children to Plaintiff in Nevada on July 7, 2019.

727. Plaintiff alleges that before entering into that agreement, Warneck had already consulted with Aeschleman regarding retaining the children in California and seeking California court intervention.

728. Plaintiff alleges that Warneck entered into the agreement knowing that she did not intend to honor it.

729. Plaintiff further alleges that Warneck obtained possession of the children through false pretenses by representing that she intended to comply with the agreement.

730. Plaintiff alleges that Warneck refused to return the children on July 7, 2019 pursuant to a plan formulated before the agreed return date.

731. Plaintiff alleges that Aeschleman knowingly advised, encouraged, facilitated, assisted, participated in, or benefited from that conduct.

732. Plaintiff further alleges that Defendants thereafter took actions intended to prevent the children's return to Nevada.

733. Plaintiff alleges that Defendants knowingly relied upon, advanced, benefited from, or enforced proceedings procured through fraud, material omissions, jurisdictional defects, or combinations thereof in furtherance of that objective.

734. Plaintiff alleges that Adames & Ash LLP participated in and benefited from the conduct of Aeschleman undertaken within the course and scope of his representation and ownership interest in the firm.

735. Defendants' conduct substantially interfered with Plaintiff's relationship with his children.

736. Defendants' conduct was intentional.

737. Defendants knew, or reasonably should have known, that their actions would deprive Plaintiff of the care, custody, companionship, and society of his children.

738. Plaintiff has been deprived of significant time, companionship, communication, and parental involvement with his children.

739. Plaintiff has not seen his children since September 29, 2021.

740. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of companionship with his children, emotional distress, financial damages, loss of parental rights, and other damages according to proof.

741. Defendants acted intentionally, maliciously, fraudulently, oppressively, or with conscious disregard for Plaintiff's rights.

742. Plaintiff is entitled to compensatory damages, punitive damages, and all other relief allowed by law.

**COUNT XV**

**CONSPIRACY TO VIOLATE CALIFORNIA CIVIL CODE § 49(a)**

**(Against All Defendants)**

743. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

744. At all relevant times, Plaintiff possessed lawful parental rights concerning E.W. and N.W.

745. Plaintiff possessed rights to the care, custody, companionship, management, and control of his children.

746. Defendants knew of Plaintiff's parental rights.

747. Defendants further knew that Plaintiff maintained an active relationship with his children.

748. Plaintiff alleges that Warneck and Aeschleman knowingly entered into, participated in, encouraged, facilitated, or furthered a course of conduct intended to deprive Plaintiff of the care, custody, companionship, and society of his children.

749. Plaintiff alleges that before entering into the May 2019 visitation agreement, Warneck had already consulted with Aeschleman concerning retaining the children in California and seeking California court intervention.

750. Plaintiff alleges that Warneck entered into the agreement knowing that she did not intend to honor it.

751. Plaintiff alleges that Warneck obtained possession of the children through false pretenses by representing that she intended to comply with the agreement.

752. Plaintiff alleges that Warneck refused to return the children on July 7, 2019 pursuant to a plan formulated before the agreed return date.

753. Plaintiff alleges that Aeschleman knowingly advised, encouraged, facilitated, assisted, participated in, or benefited from that conduct.

754. Plaintiff alleges that Adames & Ash LLP participated in and benefited from the conduct of Aeschleman undertaken within the course and scope of his representation and ownership interest in the firm.

755. Plaintiff alleges that all Defendants later participated in, facilitated, approved, or substantially contributed to enforcement actions that furthered the continued separation of Plaintiff from his children despite substantial notice concerning fraud, jurisdictional defects, competing evidence, and constitutional concerns.

756. Plaintiff alleges that all Defendants ratified, approved, tolerated, condoned, or failed to prevent conduct that furthered the continued deprivation of Plaintiff's relationship with his children.

757. Plaintiff alleges that Defendants shared a common objective of preserving, legitimizing, facilitating, benefiting from, or refusing to correct the continued separation of Plaintiff from his children.

758. Plaintiff further alleges that Defendants knowingly relied upon information supplied by one another in furtherance of that objective.

759. Plaintiff alleges that overt acts in furtherance of the conspiracy included, but were not limited to:

760. a. Entering into and breaching the May 2019 visitation agreement;

761. b. Retaining the children outside Nevada;

762. c. Concealing material facts concerning residency, notice, service, and jurisdiction;

763. d. Advancing allegedly false or misleading jurisdictional claims;

764. e. Procuring, maintaining, or relying upon allegedly void California proceedings;

765. f. Procuring, maintaining, relying upon, or enforcing the September 2021 warrant;

766. g. Arresting Plaintiff in the presence of his children;

767. h. Removing the children from Plaintiff’s custody;

768. i. Continuing to rely upon proceedings and enforcement actions despite repeated notice of fraud, jurisdictional defects, and constitutional violations.

769. Plaintiff alleges that Defendants acted intentionally, maliciously, fraudulently, oppressively, or with conscious disregard for Plaintiff’s parental rights.

770. Plaintiff has been deprived of significant time, companionship, communication, and parental involvement with his children.

771. Plaintiff has not seen his children since September 29, 2021.

772. As a direct and proximate result of the conspiracy described herein, Plaintiff suffered loss of companionship with his children, emotional distress, financial damages, loss of parental rights, deprivation of constitutional rights, and other damages according to proof.

773. The conduct of the individual Defendants supports an award of punitive damages.

**COUNT XVI**

**42 USC § 1983; MONELL LIABILITY – LAS VEGAS METROPOLITAN POLICE DEPARTMENT**

**(Against Defendant LVMPD)**

774. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

775. At all relevant times, LVMPD acted under color of state law.

776. Plaintiff alleges that LVMPD's policies, customs, practices, failures of supervision, failures of training, failures of discipline, ratification, deliberate indifference, or combinations thereof caused violations of Plaintiff's rights under the First Amendment, Second Amendment, Fourteenth Amendment, and corresponding provisions of the Nevada Constitution.

777. Plaintiff alleges that LVMPD's policies, customs, practices, failures of supervision, failures of training, failures of discipline, ratification, deliberate indifference, or combinations thereof caused violations of Plaintiff's right to procedural due process under the Fourteenth Amendment and Article 1, Section 8 of the Nevada Constitution.

778. Plaintiff alleges that LVMPD's policies, customs, practices, failures of supervision, failures of training, failures of discipline, ratification, deliberate indifference, or combinations thereof caused violations of Plaintiff's right to familial association under the Fourteenth Amendment and Article 1, Sections 1 and 8 of the Nevada Constitution.

779. Plaintiff alleges that LVMPD's policies, customs, practices, failures of supervision, failures of training, failures of discipline, ratification, deliberate indifference, or combinations thereof caused violations of Plaintiff's rights under the Second Amendment and Article 1, Section 11 of the Nevada Constitution.

780. Plaintiff alleges that LVMPD personnel repeatedly impeded, delayed, discouraged, obstructed, or refused Plaintiff's efforts to report parental abduction and related crimes.

781. Plaintiff alleges that these actions occurred at multiple LVMPD facilities and involved multiple employees over a period of years.

782. Plaintiff alleges that Eleanor Hoskins refused to permit reporting of parental-abduction allegations despite Plaintiff's requests.

783. Plaintiff alleges that Richard Tennant refused to conduct a meaningful investigation after reports were accepted.

784. Plaintiff alleges that Joshua Stark later received substantial evidence concerning the matter and acknowledged concerns regarding prior handling of the case.

785. Plaintiff alleges that despite repeated notice, LVMPD personnel continued refusing reports, rejecting evidence, discouraging investigations, or combinations thereof.

786. Plaintiff alleges that Deana Lopez, Deanna Ohr, Brad Johnson, Ryan Boyl, Adam Seely, Esmeralda Boveda, Joshua Martinez, Jorge Marty-Pagan, and other personnel received notice concerning Plaintiff's allegations and supporting evidence.

787. Plaintiff alleges that these personnel nevertheless approved, tolerated, condoned, ratified, or failed to correct unconstitutional conduct.

788. Plaintiff alleges that LVMPD maintained Policy 4.158 and related procedures governing parental-abduction investigations.

789. Plaintiff alleges that LVMPD personnel repeatedly failed to follow those policies despite repeated notice.

790. Plaintiff repeatedly supplied recordings, correspondence, reports, public-records responses, policies, court filings, and supporting evidence demonstrating those failures.

791. Plaintiff alleges that supervisory personnel possessed actual notice concerning recurring constitutional violations and recurring failures to comply with written policy.

792. Plaintiff further alleges that supervisory personnel repeatedly failed to take corrective action.

793. Plaintiff alleges that LVMPD also maintained customs, practices, policies, failures of supervision, failures of training, failures of discipline, ratification, deliberate indifference, or combinations thereof concerning concealed-firearm-permit administration and prohibited-possessor determinations.

794. Plaintiff repeatedly informed LVMPD personnel that the prohibited-possessor designation and permit revocation were unlawful.

795. Plaintiff alleges that LVMPD personnel nevertheless continued to maintain those restrictions despite repeated notice.

796. Plaintiff alleges that the constitutional violations described in this complaint were foreseeable consequences of LVMPD's customs, practices, failures of supervision, failures of training, ratification, deliberate indifference, or combinations thereof.

797. Plaintiff further alleges that those customs, practices, failures of supervision, failures of training, ratification, deliberate indifference, or combinations thereof were moving forces behind the constitutional injuries suffered by Plaintiff.

798. As a direct and proximate result of LVMPD's conduct, Plaintiff suffered loss of parental rights, loss of companionship with his children, deprivation of constitutional rights, emotional distress, financial damages, and other damages according to proof.

**COUNT XVII**

**42 USC § 1983; MONELL LIABILITY – CLARK COUNTY**

**(Against Defendant Clark County)**

799. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

800. At all relevant times, Clark County acted under color of state law.

801. Plaintiff alleges that Clark County's policies, customs, practices, failures of supervision, failures of training, failures of discipline, ratification, deliberate indifference, or combinations thereof caused violations of Plaintiff's rights under the Fourteenth Amendment and corresponding provisions of the Nevada Constitution.

802. Plaintiff alleges that Clark County's policies, customs, practices, failures of supervision, failures of training, failures of discipline, ratification, deliberate indifference, or combinations thereof caused violations of Plaintiff's right to due process under the Fourteenth Amendment and Article 1, Section 8 of the Nevada Constitution.

803. Plaintiff alleges that Clark County's policies, customs, practices, failures of supervision, failures of training, failures of discipline, ratification, deliberate indifference, or combinations thereof caused unconstitutional conditions of confinement in violation of the Fourteenth Amendment.

804. Following his September 29, 2021 arrest, Plaintiff was incarcerated at the Clark County Detention Center.

805. Plaintiff remained incarcerated for approximately two weeks.

806. During the initial portion of his incarceration, Plaintiff was housed in an overcrowded holding area.

807. Plaintiff alleges that the holding area contained more inmates than available sleeping accommodations.

808. Plaintiff was forced to sleep on a concrete floor beneath a bench.

809. Plaintiff remained in those conditions for approximately five days.

810. Plaintiff alleges that detention personnel maintained extremely cold temperatures in the holding area.

811. Plaintiff was provided only limited clothing and no meaningful protection from the cold.

812. Plaintiff alleges that inmates attempted to block cold air vents using wet toilet paper because of the extreme temperatures.

813. Plaintiff further alleges that detention personnel knew, or should have known, that inmates were being exposed to prolonged cold conditions.

814. Plaintiff alleges that these conditions were not isolated incidents but were recurring conditions known to detention personnel and supervisors.

815. Plaintiff further alleges that supervisory personnel knew, or should have known, of the overcrowding, environmental conditions, and resulting risks to detainees.

816. Upon release, Plaintiff was escorted to retrieve his property.

817. Plaintiff alleges that detention personnel threatened inmates with return to custody if they did not immediately leave the facility.

818. Plaintiff alleges that he was not given a meaningful opportunity to inventory his property before release.

819. Plaintiff further alleges that he was forced outside before he could adequately prepare for release. He was forced outside, barefoot, in the freezing cold.

820. Plaintiff alleges that he was required to leave the facility without first verifying that all of his property had been returned.

821. Plaintiff alleges that Clark County maintained customs, practices, policies, failures of supervision, failures of training, ratification, deliberate indifference, or combinations thereof concerning housing conditions, detainee treatment, release procedures, or combinations thereof.

822. Plaintiff alleges that supervisory personnel possessed actual or constructive notice concerning these conditions and practices.

823. Plaintiff further alleges that Clark County failed to take reasonable corrective measures despite foreseeable risks to detainees.

824. Plaintiff alleges that the constitutional violations described herein were foreseeable consequences of Clark County's customs, practices, failures of supervision, failures of training, ratification, deliberate indifference, or combinations thereof.

825. Plaintiff further alleges that those customs, practices, failures of supervision, failures of training, ratification, deliberate indifference, or combinations thereof were moving forces behind the constitutional injuries suffered by Plaintiff.

826. As a direct and proximate result of Clark County's conduct, Plaintiff suffered physical discomfort, emotional distress, loss of liberty, deprivation of constitutional rights, financial damages, and other damages according to proof.

**COUNT XVIII**

**42 USC §1983; MONELL LIABILITY – CLARK COUNTY SCHOOL DISTRICT POLICE DEPARTMENT**

**(Against Defendant Clark County School District Police Department)**

827. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

828. At all relevant times, CCSDPD acted under color of state law.

829. Plaintiff alleges that CCSDPD's policies, customs, practices, failures of supervision, failures of training, failures of discipline, ratification, deliberate indifference, or combinations thereof caused violations of Plaintiff's rights under the Fourth Amendment, Fourteenth Amendment, and corresponding provisions of the Nevada Constitution.

830. Plaintiff alleges that CCSDPD's policies, customs, practices, failures of supervision, failures of training, failures of discipline, ratification, deliberate indifference, or combinations thereof caused violations of Plaintiff's rights to procedural due process under the Fourteenth Amendment and Article 1, Section 8 of the Nevada Constitution.

831. Plaintiff alleges that CCSDPD's policies, customs, practices, failures of supervision, failures of training, failures of discipline, ratification, deliberate indifference, or combinations thereof caused violations of Plaintiff's right to familial association under the Fourteenth Amendment and Article 1, Sections 1 and 8 of the Nevada Constitution.

832. Plaintiff alleges that CCSDPD personnel became involved in matters relating to Plaintiff before, during, and after his September 29, 2021 arrest.

833. Plaintiff repeatedly informed CCSDPD personnel that the arrest had been procured through fraud, material omissions, jurisdictional defects, and constitutional violations.

834. Plaintiff repeatedly supplied documents, reports, recordings, public-records responses, court filings, and supporting materials.

835. Plaintiff repeatedly requested investigations into the conduct of Nevada Attorney General personnel and others involved in the arrest and related events.

836. Plaintiff alleges that CCSDPD personnel repeatedly refused to conduct meaningful investigations despite substantial evidence and repeated requests.

837. Plaintiff alleges that Detective Cheryl Jones advised Plaintiff that CCSDPD would not investigate Nevada Attorney General personnel.

838. Plaintiff challenged that position and requested supporting authority.

839. Plaintiff alleges that no policy or law was identified that prevented such an investigation.

840. Plaintiff further alleges that CCSDPD public-records responses confirmed the absence of any such authority.

841. Plaintiff repeatedly communicated with Sergeant Jason Elfberg concerning the same issues.

842. Plaintiff informed Elfberg that Nevada Attorney General personnel had participated in false arrest, unlawful property retention, parental-rights violations, and related misconduct.

843. Plaintiff supplied supporting evidence to Elfberg and other CCSDPD personnel.

844. Plaintiff alleges that Elfberg nevertheless declined to initiate meaningful investigations.

845. Plaintiff further alleges that Elfberg restricted communications and required that future contact proceed through him.

846. Plaintiff filed Internal Affairs complaints concerning the conduct of CCSDPD personnel.

847. Plaintiff identified specific employees and supplied supporting evidence.

848. Plaintiff alleged that CCSDPD personnel improperly refused to investigate crimes and improperly refused to investigate Nevada Attorney General personnel.

849. Plaintiff further alleged that supervisory personnel ratified unlawful conduct.

850. Plaintiff alleges that Henry Blackeye received notice concerning Plaintiff's allegations through Internal Affairs processes, complaints, reports, correspondence, and supporting materials.

851. Plaintiff further alleges that Blackeye approved, tolerated, condoned, ratified, or failed to correct unconstitutional conduct despite receiving notice and supporting evidence.

852. Plaintiff alleges that CCSDPD repeatedly possessed actual notice concerning Plaintiff's allegations of false arrest, unlawful incarceration, deprivation of parental rights, unlawful property retention, fraud, and related misconduct.

853. Plaintiff further alleges that CCSDPD repeatedly failed to conduct meaningful investigations despite substantial evidence and repeated requests for action.

854. Plaintiff alleges that these failures were not isolated incidents but reflected customs, practices, failures of supervision, failures of training, ratification, deliberate indifference, or combinations thereof.

855. Plaintiff alleges that supervisory personnel possessed actual or constructive notice concerning recurring constitutional violations and recurring investigative failures.

856. Plaintiff further alleges that supervisory personnel repeatedly failed to take corrective action.

857. Plaintiff alleges that the constitutional violations described herein were foreseeable consequences of CCSDPD's customs, practices, failures of supervision, failures of training, ratification, deliberate indifference, or combinations thereof.

858. Plaintiff further alleges that those customs, practices, failures of supervision, failures of training, ratification, deliberate indifference, or combinations thereof were moving forces behind the constitutional injuries suffered by Plaintiff.

859. As a direct and proximate result of CCSDPD's conduct, Plaintiff suffered loss of liberty, loss of parental rights, deprivation of constitutional rights, emotional distress, financial damages, and other damages according to proof.

**COUNT XIX**

**FOURTEENTH AMENDMENT CONDITIONS OF CONFINEMENT**

**AND**

**ARTICLE 1, SECTION 8 OF THE NEVADA CONSTITUTION**

**(Against Doe Clark County Detention Center Defendants)**

860. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

861. At all relevant times, Plaintiff was a pretrial detainee.

862. As a pretrial detainee, Plaintiff possessed clearly established rights under the Fourteenth Amendment to be free from objectively unreasonable conditions of confinement.

863. Article 1, Section 8 of the Nevada Constitution provides similar protections.

864. Following his September 29, 2021 arrest, Plaintiff was incarcerated at the Clark County Detention Center.

865. Plaintiff remained incarcerated for approximately two weeks.

866. During the initial portion of his incarceration, Plaintiff was housed in an overcrowded holding area.

867. Plaintiff alleges that the holding area contained more inmates than available sleeping accommodations.

868. Plaintiff was forced to sleep on a concrete floor beneath a bench.

869. Plaintiff remained in those conditions for approximately five days.

870. Plaintiff alleges that detention personnel maintained extremely cold temperatures in the holding area.

871. Plaintiff was provided only limited clothing and no meaningful protection from the cold.

872. Plaintiff alleges that inmates attempted to block cold air vents using wet toilet paper because of the extreme temperatures.

873. Plaintiff further alleges that detention personnel knew, or should have known, that detainees were being exposed to prolonged cold conditions.

874. Plaintiff alleges that he was denied meaningful sleep and subjected to unnecessary physical discomfort.

875. Plaintiff further alleges that the conditions served no legitimate governmental purpose or were excessive in relation to any legitimate governmental purpose.

876. Upon release, Plaintiff was escorted to retrieve his property.

877. Plaintiff alleges that detention personnel threatened inmates with return to custody if they did not immediately leave the facility.

878. Plaintiff alleges that he was not given a meaningful opportunity to inventory his property before release.

879. Plaintiff further alleges that he was forced outside before he could adequately prepare for release. He was forced outside in the cold barefoot.

880. Plaintiff alleges that he was required to leave the facility without first verifying that all of his property had been returned.

881. Plaintiff alleges that these release procedures were objectively unreasonable.

882. Plaintiff alleges that Doe Defendants knew, or reasonably should have known, that the conditions and practices described herein created an unreasonable risk of harm to detainees.

883. Plaintiff further alleges that Doe Defendants failed to take reasonable measures to correct those conditions and practices.

884. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical discomfort, emotional distress, deprivation of constitutional rights, financial damages, and other damages according to proof.

885. Plaintiff seeks compensatory damages, punitive damages against the responsible individual Defendants once identified, and all other relief allowed by law.

## COUNT XX

## 42 USC §1983; 14th AMENDMENT; DECLARATORY AND INJUNCTIVE RELIEF – CALIFORNIA ORDERS VOID FOR FAILURE OF NOTICE, EXTRINSIC FRAUD, INTRINSIC FRAUD, LACK OF JURISDICTION, AND DENIAL OF DUE PROCESS

**(Against Defendants Warneck, Aeschleman, Adames & Ash LLP, Ford, Wolfson, Monroe, Lovero, Scott, LVMPD, and Doe Defendants)**

886. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

887. An actual and present controversy exists concerning the validity of California orders that Defendants continue to rely upon, enforce, recognize, defend, or otherwise treat as valid.

888. Plaintiff alleges that the August 7, 2019 jurisdictional proceedings were conducted without the notice required by California law.

889. Plaintiff alleges that California Family Code § 215 was violated because orders were issued without proper notice.

890. Plaintiff alleges that California Family Code §§ 3408 and 3425 were violated because custody determinations were made without the notice and opportunity to be heard required by the UCCJEA.

891. Plaintiff alleges that California Family Code § 3428 was violated because jurisdiction was exercised despite unjustifiable conduct.

892. Plaintiff alleges that he was denied a meaningful opportunity to review and respond to materials considered during the jurisdictional proceedings.

893. Plaintiff alleges that ex parte communications, ex parte submissions, non-noticed materials, misleading declarations, material omissions, or combinations thereof influenced the jurisdictional proceedings.

894. Plaintiff alleges that Warneck concealed the parties' agreement to dismiss the California proceedings.

895. Plaintiff alleges that Warneck concealed facts concerning the purported 2012 stipulated judgment.

896. Plaintiff alleges that Plaintiff never stipulated to the purported 2012 stipulated judgment.

897. Plaintiff alleges that the purported stipulated judgment was submitted without Plaintiff's knowledge or consent.

898. Plaintiff alleges that the purported stipulated judgment became the sole stated basis upon which California courts exercised continuing jurisdiction over Plaintiff and the children.

899. Plaintiff alleges that California jurisdiction was procured, maintained, or exercised through extrinsic fraud, intrinsic fraud, material omissions, concealment of material facts, misleading representations, or combinations thereof.

900. Plaintiff alleges that the resulting jurisdictional transfer order is void.

901. Plaintiff further alleges that subsequent California orders are either independently void or derive their validity from void proceedings.

902. Plaintiff alleges that all orders subsequent to the 2019 jurisdictional order are void pursuant to California Family Code 215.

903. Plaintiff alleges that various Nevada actors have relied upon, enforced, recognized, defended, or otherwise treated those orders as valid.

904. Plaintiff further alleges that Nevada actors have relied upon those orders in connection with custody matters, law-enforcement actions, criminal proceedings, firearm restrictions, permit decisions, investigations, or combinations thereof.

905. Plaintiff alleges that continued reliance upon void orders continues to injure Plaintiff.

906. Plaintiff seeks a declaration that the August 7, 2019 jurisdictional proceedings were void.

907. Plaintiff seeks a declaration that the resulting jurisdictional transfer order was void.

908. Plaintiff seeks a declaration that the resulting findings and orders were void.

909. Plaintiff seeks a declaration that California Family Code §§ 215, 3408, 3425, and 3428 were violated.

910. Plaintiff seeks a declaration that the resulting proceedings violated the Due Process Clause of the Fourteenth Amendment.

911. Plaintiff seeks a declaration that subsequent California orders derived from the void jurisdictional proceedings are likewise void.

912. Plaintiff seeks a temporary restraining order, preliminary, permanent, and other appropriate injunctive relief prohibiting Defendants from enforcing, recognizing, relying upon, or assisting enforcement of California orders determined to be void.

913. Plaintiff seeks preliminary, permanent, and other appropriate injunctive relief prohibiting Defendants from using such orders as authority for arrests, prosecutions, firearm restrictions, custody determinations, extradition proceedings, investigations, or other governmental actions.

914. Unless restrained by this Court, Plaintiff alleges that Defendants will continue relying upon proceedings and orders that were procured through fraud, material omissions, jurisdictional defects, and violations of due process.

**COUNT XXI**

**DECLARATORY AND INJUNCTIVE RELIEF –**

**NEVADA FUGITIVE / EXTRADITION PROCESS,**

**NRS 179.209,**

**EQUAL PROTECTION,**

**DUE PROCESS,**

**AND RIGHT TO BAIL**

**(Against Defendants Goodman, Morales, Wolfson, and Doe Defendants)**

915. Plaintiff incorporates by reference all preceding paragraphs.

916. An actual controversy exists concerning the constitutionality of NRS 179.209 as applied to Plaintiff.

917. Plaintiff alleges that Nevada citizens arrested on Nevada warrants are generally entitled to bail except under limited circumstances established by law.

918. Plaintiff alleges that he was denied equivalent treatment because the warrant originated from California.

919. Plaintiff remained incarcerated for approximately two weeks.

920. Plaintiff alleges that NRS 179.209, as applied, deprived him of due process and equal protection under the Fourteenth Amendment.

921. Plaintiff alleges that the statute is unconstitutional on its face in that it treats NV citizens differently if they have been arrested on a foreign warrant vs. a domestic one.

922. Plaintiff further alleges that he was effectively forced to choose between continued incarceration and waiver of rights associated with the extradition process.

923. Plaintiff seeks a declaration that NRS 179.209 was unconstitutional as applied.

924. Plaintiff seeks a declaration that the fugitive-court process employed against him violated due process and equal protection.

925. Plaintiff seeks preliminary and permanent injunctive relief.

**COUNT XXII**

**42 U.S.C. § 1983 – FOURTH AMENDMENT UNREASONABLE SEIZURE**

**MALICIOUS PROSECUTION**

**FALSE SWORN CRIMINAL COMPLAINT,**

**RATIFICATION,**

**AND FAILURE TO INVESTIGATE**

**(Against Defendants Morales, Wolfson, Ford, and Doe Defendants)**

926. Plaintiff incorporates by reference all preceding paragraphs.

927. Plaintiff alleges that at all relevant times, Morales & Wolfson acted under color of state law.

928. The Fourth Amendment to the United States Constitution protects individuals against unreasonable seizures and provides for the right to due process.

929. Morales executed a criminal complaint under penalty of perjury concerning Plaintiff.

930. Plaintiff alleges that the complaint contained false statements, misleading statements, material omissions, or combinations thereof.

931. Plaintiff alleges that Morales falsely represented that Plaintiff was a fugitive from justice.

932. Plaintiff alleges that material information concerning jurisdictional disputes, fraud allegations, custody issues, and exculpatory facts was omitted.

933. Plaintiff alleges that Morales knew, or deliberately ignored, information undermining the factual basis of the complaint.

934. Plaintiff alleges that the complaint became a substantial factor in Plaintiff's continued incarceration.

935. Wolfson received notice concerning Plaintiff's allegations against Morales.

936. Plaintiff repeatedly requested investigation of Morales.

937. Plaintiff alleges that Wolfson failed to conduct a meaningful investigation and failed to take corrective action.

938. Plaintiff alleges that Wolfson ratified, approved, tolerated, condoned, or failed to prevent unconstitutional conduct despite actual notice.

939. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, financial damages, deprivation of constitutional rights, and other damages according to proof.

**COUNT XXIII**

**FIRST AMENDMENT –**

**RIGHT TO PETITION GOVERNMENT**

**(Against LVMPD Defendants, CCSDPD Defendants, Nevada AG Defendants, Wolfson, and Doe Defendants)**

940. Plaintiff incorporates by reference all preceding paragraphs.

941. The First Amendment protects the right to petition government for redress of grievances.

942. At all times, Defendants acted under color of state law.

943. Plaintiff repeatedly reported crimes, requested investigations, filed complaints, submitted evidence, made public-records requests, and petitioned government officials for relief.

944. Plaintiff repeatedly attempted to report parental abduction, fraud, false arrest, unlawful property retention, and related misconduct.

945. Plaintiff alleges that various defendants impeded, discouraged, obstructed, ignored, rejected, or refused those efforts.

946. Plaintiff further alleges that defendants repeatedly refused to investigate despite substantial notice and supporting evidence.

947. Plaintiff alleges that these actions burdened Plaintiff's right to petition government and seek redress of grievances.

948. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, financial damages, deprivation of constitutional rights, and other damages according to proof.

**COUNT XXIV**

**CALIFORNIA FAMILY CODE § 7643**

**FACIAL CHALLENGE,**

**AS-APPLIED CHALLENGE,**

**DECLARATORY RELIEF,**

**AND INJUNCTIVE RELIEF**

**(Against LVMPD Defendants, CCSDPD Defendants, Nevada AG Defendants, Wolfson, and Doe Defendants)**

949. Plaintiff incorporates by reference all preceding paragraphs.

950. Plaintiff resides in Nevada.

951. Plaintiff's family-court file remains in California.

952. Plaintiff alleges that California Family Code § 7643 and related practices prevent him from obtaining the same level of access to court records and proceedings available to opposing parties.

953. Plaintiff alleges that he must travel to California, appear in person, and incur substantial costs to obtain records relating to ongoing proceedings.

954. Plaintiff alleges that Warneck and Aeschleman possess free, remote access to records and proceedings unavailable to Plaintiff.

955. Plaintiff alleges that he has not had access to his family court file for years, despite reporting Aeschleman's frauds to various presiding judges of that court, and notwithstanding his federal lawsuit against several of the presiding judges and the court CEO.

956. Plaintiff alleges that § 7643, as applied, substantially burdens his access to courts, parental rights, and due-process rights.

957. Plaintiff seeks a declaration that California Family Code § 7643 is unconstitutional as applied.

958. Plaintiff further seeks a declaration that California Family Code § 7643 is unconstitutional on its face.

959. Plaintiff seeks temporary, preliminary, and permanent injunctive relief prohibiting these defendants from relying upon, recognizing, enforcing, or taking any action based upon Santa Clara County, California family court orders.

**COUNT XXV**

**18 U.S.C. § 922(n); FACIAL CHALLENGE, AS-APPLIED CHALLENGE, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**

**(Against LVMPD, Shenk, Gallup, Marty-Pagan, and Doe Defendants)**

960. Plaintiff incorporates by reference all preceding paragraphs.

961. Defendants relied upon 18 U.S.C. § 922(n) to classify Plaintiff as a prohibited possessor, revoke his concealed firearm permit, and deny renewal.

962. Plaintiff had not been convicted of a felony offense.

963. Plaintiff repeatedly challenged Defendants' interpretation of § 922(n).

964. Plaintiff repeatedly requested legal authority supporting that interpretation.

965. Plaintiff alleges that no responsive authority was produced.

966. Plaintiff alleges that Defendants' interpretation and application of § 922(n) violated his rights under the Second Amendment and Article 1, Section 11 of the Nevada Constitution.

967. Plaintiff alleges that § 922(n), as applied, violated his constitutional rights.

968. Plaintiff further alleges that § 922(n) is unconstitutional on its face.

969. Plaintiff seeks a declaration that § 922(n) is unconstitutional as applied.

970. Plaintiff seeks a declaration that § 922(n) is unconstitutional on its face.

971. Plaintiff seeks a declaration that the revocation of his concealed firearm permit and prohibited-possessor designation were unlawful.

972. Plaintiff seeks preliminary and permanent injunctive relief prohibiting future enforcement against Plaintiff.

## PRAYER FOR RELIEF

A. Declaratory relief as requested throughout this Complaint.

B. Temporary restraining orders as requested throughout this Complaint.

C. Preliminary injunctions as requested throughout this Complaint.

D. Permanent injunctions as requested throughout this Complaint.

E. Declarations that the California jurisdictional proceedings and resulting orders identified in this Complaint are void.

F. Declarations that California Family Code §§ 215, 3408, 3425, and 3428 were violated.

G. Declarations that California Family Code § 7643 is unconstitutional on its face and as applied.

H. Declarations that 18 U.S.C. § 922(n) is unconstitutional on its face and as applied.

I. Declarations that NRS 179.209 is unconstitutional on its face and as applied.

J. Compensatory damages according to proof.

K. Punitive damages against all individual defendants for whom punitive damages are legally available.

L. Nominal damages.

M. Costs of suit and all allowable fees.

N. Certification of appropriate Nevada state-law questions to the Nevada Supreme Court.

O. Trial by jury on all issues so triable.

P. Such other and further relief as the Court deems just and proper.

Dated: June 5, 2026

By: */s/ Michael C. Sternberg*

Michael C. Sternberg
Plaintiff, Self Represented